E-FILED
Tuesday, 17 April, 2018  03:19:38 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT C

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:18-cv-02201

Gerena v. Facebook, Inc.                      Date Filed: 04/12/2018
Assigned to:                                  Jury Demand: Plaintiff
Cause: 28:1132 E.R.I.S.A.                      Nature of Suit: 190 Contract: Other
                                              Jurisdiction: Diversity

**Plaintiff**

**Lucy Gerena**                    represented by   **Gayle Meryl Blatt**
                                                    Casey Gerry Schenk Francavilla Blatt
                                                    & Penfield LLP
                                                    110 Laurel Street
                                                    San Diego, CA 92101
                                                    619-238-1811
                                                    Fax: 619-544-9232
                                                    Email: gmb@cglaw.com
                                                    *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Facebook, Inc.**


| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2018 | 1 | COMPLAINT against Facebook, Inc. ( Filing fee $ 400, receipt number 0971-12268583.). Filed byLucy Gerena. (Attachments: # 1 Civil Cover Sheet)(Blatt, Gayle) (Filed on 4/12/2018) (Entered: 04/12/2018) |
| 04/12/2018 | 2 | Proposed Summons. (Blatt, Gayle) (Filed on 4/12/2018) (Entered: 04/12/2018) |


| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/13/2018 07:43:48 | | | |
| **PACER Login:** | gd0021DA:2553423:4036719 | **Client Code:** | 30993-00083 |
| **Description:** | Docket Report | **Search Criteria:** | 4:18-cv-02201 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
Jeremy Robinson (SBN 188325)
jrobinson@cglaw.com
Angela Jae Chun (SBN 248571)
ajc@cglaw.com
Alyssa Williams (SBN 310987)
awilliams@cglaw.com
**Casey Gerry Schenk**
**Francavilla Blatt & Penfield, LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Attorneys for Plaintiff and
the proposed Class

## United States District Court

## Northern District of California

## Oakland Division

| | |
|---|---|
| **Lucy Gerena**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Facebook, Inc.,** a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**Class Action Complaint and Complaint for Damages**<br><br>**Demand for Jury Trial** |

CLASS ACTION COMPLAINT

1    Plaintiff Lucy Gerena, on behalf of herself and all others similarly situated, allege the

2  following against Defendant Facebook, Inc. ("Facebook"), based on personal knowledge as

3  to Plaintiff and Plaintiff's own acts and on information and belief as to all other matters

4  based upon, *inter alia*, the investigation conducted by and through Plaintiff's undersigned

5  counsel:

### SUMMARY

7    1.    Facebook—the social network—is in reality an advertising behemoth. While it

8  markets itself as being driven by connecting as many people as possible, it has made a

9  fortune off of the personal information of its users. Last year, Facebook reaped "more than

10  one in five US digital ad dollars," and it controls more than a quarter of the US mobile ad

11  market.[1] As the saying goes, "[i]f you are not paying for it, you're not the customer; you're

12  the product being sold."[2]

13    2.    While Facebook claims it does not sell user information directly to

14  advertisers—and cannot, under a 2011 FTC consent decree[3]—it has routinely provided

15  such information to app developers, with little or no oversight.[4] Until recently, anyone

16  with a computer was encouraged to develop an app on Facebook. More apps mean more

17  user engagement, which increases the value of its ad network. True to its old motto of

18  "move fast and break things," Facebook gave developers carte blanche access to user data

19  for many years. According to one developer, "Facebook rammed their data down our

20  throats. On the whole, none of us asked for your data. But we have it anyway, and

21  forever."[5]

---

[1] "Google and Facebook Tighten Grip on US Digital Ad Market," EMARKETER (Sept. 21, 2017), https://www.emarketer.com/Article/Google-Facebook-Tighten-Grip-on-US-Digital-Ad-Market/1016494.
[2] Ian Bogost, "My Cow Game Extracted Your Facebook Data," THE ATLANTIC (2018), https://www.theatlantic.com/technology/archive/2018/03/my-cow-game-extracted-your-facebook-data/556214/?utm_source=feed.
[3] Press Release, "Facebook Settles FTC Charges That It Deceived Consumers By Failing To Keep Privacy Promises," FEDERAL TRADE COMMISSION (Nov. 29, 2011), https://www.ftc.gov/news-events/press-releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep.
[4] Bogost, *supra* note 2.
[5] *Id.*

CLASS ACTION COMPLAINT

3.      These features of Facebook's business model landed it in hot water with users, regulators, and the general public when, on March 17, 2018, the New York Times and the Observer reported that Cambridge Analytica, a data firm retained to help the Trump election campaign, had accessed and retained 50 million Facebook user profiles without their permission and informed consent. Since then, Facebook has confirmed that approximately 87 million Facebook users have been affected.

4.      The Cambridge Analytica scandal may be of particular interest today, but this is not the first time that Facebook has allowed third party apps to steal personal information without permission or informed consent.

5.      Other companies such as Cubeyou and Aggregate IQ have been collecting this data and selling it for years. These companies have been operating on Facebook for many years and boast on their websites about how much data they have collected from people.[6] Only recently has Facebook acted by suspending these companies. However, the improperly obtained data is gone and the damage has already been done. Even when companies had no use for the data, Facebook sent it to them. Facebook was aware of this problem and did nothing about the problem until it was caught red handed. As a result, Plaintiff and members of the proposed Class have suffered harm including a higher risk of identity theft because their personal information was taken.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class Members, a majority of Class Members are citizens of states that are diverse from Facebook, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Facebook because Facebook maintains its principal place of business in this District, is registered to conduct business in

---

[6] Michelle Castillo, "Facebook suspends another data analytics firm after CNBC discovers tactics like Cambridge Analytica" CNBC (2018), https://www.cnbc.com/2018/04/08/Cubeyou-cambridge-like-app-collected-data-on-millions-from-facebook.html.

Case MDL No. 2843 Document 49-5 Filed 04/23/18 Page 6 of 26

1  California, and has sufficient minimum contacts with California, including by employing

2  more than 10,000 California residents.

3        8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because

4  Facebook resides in this District and a substantial part of the events or omissions giving

5  rise to Plaintiff's claims occurred in this District.

6  **INTRADISTRICT ASSIGNMENT**

7        9.     Pursuant to Northern District of California Local Rule 3-2(c) and 3-2(d),

8  assignment to the Oakland Division of this District is proper because a substantial part of

9  the events or omissions giving rise to Plaintiff's and the proposed Class's claims originated

10  from Facebook's headquarters, located in one of the counties served by the Oakland

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Division.

## PARTIES

10.    Plaintiff Lucy Gerena is a resident of Lemon Grove, California. She has been a Facebook user since approximately August 2008. She uses the platform to connect with friends and share content, including personal photos. She also uses the "check in" feature, sharing her visits to certain locations with Facebook.

11.    Plaintiff Gerena never consented to her information being shared with the app called "This Is Your Digital Life"—and never heard of the app prior to this year. Nonetheless, Facebook's website indicated that her information was shared with the app because one of her Facebook friends used the app:

12.    Defendant Facebook is a business incorporated under the laws of the State of Delaware. Its principal place of business is located in Menlo Park, California.

## FACTUAL ALLEGATIONS

### Facebook's business model: mining user information to sell targeted ads

13.    Facebook's 40 billion dollar a year business model is built on its users' personal information, which it uses to target advertisements. Without the users' personal information, the company's flagship platform—as well as the other social media platforms it has acquired, like Instagram—would be worthless.

14.    This has been true since the founding of Facebook. As a free-to-use social network, the only way it was going to be profitable was through advertisements. However,

Page 5

the real value of Facebook is that it uses personal information to target ads.[7] A targeted advertisement using personal information can be more effective than an advertisement that is not targeted.[8]

15.     Users' personal information is the backbone for Facebook's entire business model. Despite this, Facebook still allowed companies to violate their terms of service and steal personal information from unsuspecting users.

**The world learns about Facebook's practices through the Cambridge Analytica scandal**

16.     This breach was first reported December 4, 2015, when the Guardian published an article detailing how this stolen data had been used in support of Ted Cruz's Presidential campaign.[9] However, this scandal did not gain worldwide attention until the Observer published an in-depth article several years later, on March 17, 2018.

17.     Cambridge Analytica's parent company, SCL Elections, was founded by Steve Bannon and Robert Mercer to influence elections.

18.     Cambridge Analytica's purpose is to create a data driven targeting system to influence voters. It hired Christopher Wylie in 2013, an up and coming data scientist who was interested in figuring out why people voted for certain parties.

19.     SCL and Robert Mercer promised Wylie that they would allow him to "come and test out all [his] crazy ideas."[10]

20.     In order for Christopher Wylie to begin his project he needed data—a lot of it. The data he ended up using was taken via a Facebook app called "This Is Your Digital Life," a personality quiz that collected personal information from users and their friends.

---

[7] "Facebook's business model" BUSINESS INSIDER (2012), http://www.businessinsider.com/facebooks-business-model-2012-5.

[8] Rebecca Walker Reczek et. al, "Targeted Ads Don't Just Make You More Likely to Buy - They Can Change How You Think About Yourself" HARVARD BUSINESS REVIEW (2016), https://hbr.org/2016/04/targeted-ads-dont-just-make-you-more-likely-to-buy-they-can-change-how-you-think-about-yourself.

[9] Harry Davies, "Ted Cruz campaign using firm that harvested data on millions of unwitting Facebook users" THE GUARDIAN (2015), https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data.

[10] Carole Cadwalladr, "I made Steve Bannon's psychological warfare tool': meet the data war whistleblower" THE GUARDIAN (2018), https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.

CLASS ACTION COMPLAINT

21.     Cambridge Analytica first contacted Michal Kosinski, a researcher with access to the data from the *This Is Your Digital Life* app. Michal Kosinski was asking $500,000 for the stolen data. However, the negotiations fell through and Cambridge Analytica contacted Aleksandr Kogan, who had helped create *This Is Your Digital Life.*

22.     *This Is Your Digital Life* had about 320,000 users who signed up to use it. However, because Facebook allowed it, the application collected data on the friends of these users who did not consent to—or even necessarily know about—the app. This led to the data of at least 87 million Facebook users' information being misappropriated by Cambridge Analytica.

23.     The friends of the app users did not consent to the application taking their data and using it. Nor were they even aware of it, until this scandal broke. And, even if the app users knew what of their own information they were giving this for-profit company, they did not know that their friends' data would also be taken.

24.     While Cambridge Analytica had obtained the data, it did not have the infrastructure to turn that data into a useable system.

25.     Cambridge Analytica turned to Aggregate IQ, a company owned by SCL Elections and based in Canada. Aggregate IQ provided support and created the code that allowed Facebook's data to be turned into a powerful cyberwarfare tool.

26.     Facebook has recently suspended Aggregate IQ from its platform, well after Facebook should have known that Aggregate IQ conspired with Cambridge Analytica to steal personal information.

27.     Facebook initially denied that this problem was occurring. Since then, it has only responded by banning companies that are mentioned in the reporting. Facebook does not have the infrastructure to monitor these companies or the data they are taking.

**As more of Facebook's apps are investigated, more problems come to light**

28.     The Cambridge Analytica breach was far from the first time that Facebook had allowed a company to steal personal information from its users and their friends. As an example, Cubeyou has been taking this information from users and their friends for

CLASS ACTION COMPLAINT

Case 4:18-cv-02301 Document 4-5 Filed 04/18/18 Page 10 of 26

1  many years and was only recently banned, after Cubeyou's actions were publicized by

2  CNBC.

3      29.     Cubeyou is a company that specializes in "Fast, Easy & Accurate Consumer

4  Insights". It's business model relies on misappropriating Facebook's users' data in order to

5  gain consumer insights. It uses personality tests similar to Cambridge Analytica. Cubeyou

6  had two primary sources for their data: an app called "You are what you like" and another

7  titled "Apply Magic Sauce."

8      30.     Cubeyou told Facebook and their users that the applications were for "non-

9  profit academic research." However, it did not intend to use this data for an academic

10  purpose and instead sold it to marketers. Facebook had and has no process to ensure that

11  its data is being used for an academic purpose, nor any mechanism to claw back the data if

12  it suspects misuse.

13      31.     On a version of Cubeyou's homepage dated March 19, 2018, it boasts that it

14  has data such as age, gender, location, work, education, family, and relationship

15  information. It also has likes, follows, shares, posts, likes to posts, comments to posts,

16  check-ins and mentions of brands/celebrities in a post. Interactions with companies are

17  tracked back to 2012 and are updated weekly, according to Cubeyou's site.[11]

18      32.     Cubeyou's site currently boasts that it has data on first names, last names,

19  emails, phone numbers, IP addresses, mobile IDs, and browser fingerprints.[12]

20      33.     Facebook apparently became aware of this misappropriation only because it

21  was reported by CNBC. Facebook has banned the company and claims that it will audit the

22  company; however, there is no way to know where the data has been sent or who is in

23  possession of it now.

24  **Facebook's API has routinely given away personal information without request or**

25  _____

26

27  [11] Michelle Castillo, "Facebook suspends another data analytics firm after CNBC discovers tactics like Cambridge Analytica" CNBC (Apr. 8, 2018), https://www.cnbc.com/2018/04/08/Cubeyou-cambridge-like-app-collected-data-on-millions-from-facebook.html.

28  [12] Id.

Case 4:18-cv-02431-DMR Document 4-1 Filed 04/23/18 Page 9 of 26

<u>verification</u>

34.    Facebook launched its Graph API (application programming interface) in April 2010. The API was a developer interface that allowed third parties to collect personal information from users through the Friends Data Scrape Feature, whether or not their profile was private.

35.    Facebook encourage the development of apps as it would lead to more engagement with the platform, therefore generating more advertising revenue. Further, they could use the apps that users were engaged with to further target Facebook's advertisements.

36.    Facebook's API v.1, which was in effect from April 2010 to April 2015, gave third party applications the access necessary to gather personal information on the friends and family of people who signed up for their application.

CLASS ACTION COMPLAINT

37.    The graphic at right shows how Facebook allows the data to be pulled from their platform and then stored on third party servers. Facebook has no control over the data once it is put on a third party server.[13]



38.    Facebook's API allowed the collection of users' friends' data without their permission. The API sent the following data to the third party applications servers[14]:

| Basic Info (default) | Extended Profile Properties (xP) | | Extended Permissions (xP) |
| --- | --- | --- | --- |
| | User Data | Friends Data | |
| uid | user_about_me | friends_about_me | ads_management |
| name | user_actions.books | friends_actions.books | ads_read |
| first_name | user_actions.music | friends_actions.music | create_event |
| last_name | user_actions.news | friends_actions.news | create_note |
| link | user_actions.video | friends_actions.video | email |
| username | user_activities | friends_activities | export_stream |
| gender | user_birthday | friends_birthday | manage_friendlists |
| locale | user_checkins | friends_checkins | manage_notifications |
| age_range | user_education_history | friends_education_history | manage_pages |
| | user_events | friends_events | photo_upload |
| | user_games_activity | friends_games_activity | publish_actions |
| | user_groups | friends_groups | publish_checkins |
| | user_hometown | friends_hometown | publish_stream |
| | user_interests | friends_interests | read_friendlists |
| | user_likes | friends_likes | read_insights |
| | user_location | friends_location | read_mailbox |
| | user_notes | friends_notes | read_page_mailboxes |
| | user_online_presence | friends_online_presence | read_requests |
| | user_photo_video_tags | friends_photo_video_tags | read_stream |
| | user_photos | friends_photos | rsvp_event |
| | user_questions | friends_questions | share_item |
| | user_relationship_details | friends_relationship_details | sms |
| | user_relationships | friends_relationships | status_update |
| | user_religion_politics | friends_religion_politics | video_upload |
| | user_status | friends_status | xmpp_login |
| | user_videos | friends_subscriptions | |
| | user_website | friends_website | |
| | user_work_history | friends_work_history | |

---

[13] Iraklis Symeonidis, et al., "Collateral damage of Facebook Apps", https://eprint.iacr.org/2015/456.pdf.
[14] Id.

**The scope of the misappropriation of user data facilitated by Facebook is not yet known**

39.     An example of the cavalier attitude Facebook has demonstrated towards its users' data comes from the social game "Cow Clicker," created for the Facebook platform in 2010. Annoyed by Farmville and similar apps, the developer wrote the whole game in three days, describing the process as "just a strange man making a strange game on a lark."[15]

40.     According to the developer, "if you played Cow Clicker, even just once, I got enough of your personal data that, for years, I could have assembled a reasonably sophisticated profile of your interests and behavior."[16]

41.     Apps were given access to data such as your true Facebook ID, which could be used to track your profile indefinitely, and your networks such as your work and school.

42.     Cow Clicker never requested any of this data; the developer noticed that it was just being sent to him and he decided to store it. Facebook asked developers not to store more data than necessary. Facebook never inquired about where the data was going or what was actually necessary. Many apps have saved user data; in some cases, going back years. Further, Facebook does not typically contact developers to inquire about what data they possess.

43.     Jason Keobler, a writer for Motherboard aptly described the problem: "If your data has already been taken, Facebook has no mechanism and no power to make people delete it. If your data was taken it has very likely been sold, laundered, and put back into Facebook."[17]

---

[15] Jason Tanz, "The Curse of Cow Clicker: How a Cheeky Satire Became a Videogame Hit" WIRED (2011), https://www.wired.com/2011/12/ff_cowclicker.
[16] Bogost, *supra* note 2.
[17] *Id.*

**Congress demands answers from Facebook as Facebook tries to save face**

44.     Mark Zuckerberg, Facebook's founder and CEO, testified before Congress to answer for this breach the same week this Complaint was filed.[18] He acknowledged that his company had "responsibility" that it had shirked, and emphatically stated the users, not Facebook, were the victims in this.

45.     Further, Mark Zuckerberg acknowledges in his opening remarks that Facebook owes a duty to do more and protect their customers, stating:

> It's not enough to just connect people, we have to make sure those connections are positive. It's not enough to just give people a voice, we have to make sure people aren't using it to hurt people or spread misinformation. It's not enough to give people control of their information, we have to make sure developers they've given it to are protecting it too. Across the board, we have a responsibility to not just build tools, but to make sure those tools are used for good.[19]

46.     During his testimony in front of Congress, Mark Zuckerberg said that he believed that "we rolled out this developer platform and that we explained to people how it worked and they did consent to it."[20] However, earlier in the hearing, he stated that he thought most users did not read and did not understand their term of service.[21] Further, if any disclosures were provided at all they were buried deep within the terms of service, while Facebook knew that their users were not likely to read it.

47.     Facebook further tries to distance itself from the companies operating on its platform and paints Cambridge Analytica as a bad apple. However, it is clear, as evidenced

---

[18] Sara Salinas, "Congress Releases Mark Zuckerberg's Prepared Testimony Ahead Of Wednesday's Hearing," CNBC (2018), https://www.cnbc.com/2018/04/09/congress-released-mark-zuckerbergs-prepared-testimony-ahead-of-wednesdays-hearing.html.
[19] Sara Salinas, "Congress Releases Mark Zuckerberg's Prepared Testimony Ahead of Wednesday's hearing," CNBC (2018), https://www.cnbc.com/2018/04/09/congress-released-mark-zuckerbergs-prepared-testimony-ahead-of-wednesdays-hearing.html.
[20] Rob Price, "LIVE: Facebook CEO Mark Zuckerberg testifies to Congress about Cambridge Analytica and Russia," BUSINESS INSIDER (Apr. 10, 2018, 1:32 p.m.), http://www.businessinsider.com/mark-zuckerberg-testifies-to-congress-watch-live-facebook-2018-4#450-pm-et-recap-10; Sheera Frenkel and Linda Qiu, "Fact Check: What Mark Zuckerberg Said About Facebook, Privacy and Russia," THE NEW YORK TIMES (Apr. 10, 2018), https://mobile.nytimes.com/2018/04/10/technology/zuckerberg-elections-russia-data-privacy.html.
[21] Frenkel & Qui, *supra* note 20.

by the Cow Clicker application and Cubeyou's actions, that this problem is not isolated. Facebook allowed nearly a decade's long raid on its users' data with no oversight or user notifications.

48.    Facebook users will never be able to get back the information they have lost. As mentioned above, once the information has been taken Facebook has no way to get it back. Users will continue to worry about how their information has been used or misused. They will be more at risk for identity theft now, as their profiles contain a treasure trove of personal information, including information that can be used answer security questions.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this case on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> ### Nationwide Class
>
> All U.S. residents whose Facebook data was accessed by and/or transmitted to a third party app developer without their consent.

50.    Plaintiff also brings claims on behalf of the following subclass:

> ### California Class
>
> All California residents whose Facebook data was accessed by and/or transmitted to a third party app developer without their consent.

51.    Except where expressly distinguished, the Nationwide Class and California Class are collectively referred to as the "Class." Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

52.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same

claims.

53.     **Numerosity.**  The members of the Class are so numerous that joinder of all Class members would be impracticable. Class members number in the tens of millions based on current public information.

54.     **Commonality and Predominance.** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law and fact include:

   a.) Whether Facebook violated the Stored Communications Act by knowingly divulging Plaintiff's and Class members' Facebook communications to third parties;

   b.) Whether Facebook's disclosure of Plaintiff's and the other Class members' Facebook data constituted a violation of their right to privacy;

   c.) Whether Facebook failed to use reasonable care and commercially reasonable methods to secure and safeguard Plaintiff's and Class members' Facebook data;

   d.) Whether Facebook properly implemented its purported security measures to protect Plaintiff's and Class members' Facebook data from unauthorized capture, dissemination, and misuse;

   e.) Whether Facebook violated Plaintiff's and Class members' right to privacy under the California Constitution;

   f.) Whether Facebook violated the Invasion of Privacy Act by intercepting, accessing, and acquiring Plaintiff's and Class members' location and movement information without authorization; and

   g.) Whether Plaintiff and Class members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

55.     Facebook engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate in this action.

56.     **Typicality.** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured

CLASS ACTION COMPLAINT

through Facebook's uniform misconduct described above. Further, there are no defenses available to Facebook that are unique to Plaintiff.

57.     **Adequacy of Representation.** Plaintiff is an adequate Class representatives because her interests do not conflict with the interests of the other Class members she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

58.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate claims against Facebook, so it would be impracticable for Class members to individually seek redress for Facebook's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Violation of Stored Communications Act

### 18 U.S.C. § 2702, *et seq.*

### (On behalf of the Nationwide Class)

59.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.     Defendant Facebook is liable under the Stored Communications Act ("SCA") (18 U.S.C. § 2702(a)) for unlawfully divulging the contents of Plaintiff's and Class members'

communications to third parties.

61.   The SCA prohibits a "person or entity providing an electronic communication service to the public" from "knowingly divulging to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a).

62.   Facebook is a "person" within the meaning of the SCA.[22] It provides an "electronic communication service" as that term is defined in the code.[23] The user information stored by Facebook and compromised by Cambridge Analytica through the *This Is Your Digital Life* app and by other app developers is encompassed within the definition of "electronic storage" under the SCA.

63.   Facebook's transmission of user data to Cambridge Analytica, Cubeyou, Aggregate IQ, and other app developers exceeded any authorization by Plaintiff or Class members. Facebook was aware it divulged these communications as evidenced by its acknowledgment of the 2015 breach by Cambridge Analytica in response to questioning from Senator Ted Cruz. After Facebook had knowledge of the 2015 breach, it failed to ban Cambridge Analytica, Aggregate IQ or any entity from its platform, in violation of its own policy. Mark Zuckerberg stated before Congress that Facebook missed an earlier opportunity to ban Cambridge Analytica and related entities. Facebook did not ban Cambridge Analytica until after the story appeared in the Observer on March 17, 2018.

64.   As a result of Facebook's actions, Plaintiff and the Class are entitled to statutory damages of $1,000 per violation and preliminary and equitable relief from Facebook for violating Plaintiff's and Class members' privacy rights under the SCA, as well as costs and attorneys' fees pursuant to 18 U.S.C. § 2707.

---

[22] "Person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18. U.S.C. § 2510(6).
[23] "Electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications 18 U.S.C. § 2510.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### Negligence

### (On behalf of the Nationwide Class)

65.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

66.     Facebook provided services to Plaintiff and the Class. By being entrusted by Plaintiff and the Class to safeguard their user information, Facebook had a special relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's services and agreed to provide their information with the understanding that Facebook would take appropriate measures to protect it and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. But, Facebook did not. Instead, Facebook routinely provided user information to third party developers without user consent. Facebook is morally culpable for its utter disregard for Plaintiff's and the Class's right to privacy. Worse, there is no way to undo the harm caused by Facebook's neglect—Plaintiff's and the Class's information cannot be clawed back.

67.     Facebook owed a duty to Plaintiff and the other Class members to maintain reasonable safeguards and procedures to protect their data and to monitor the status and disposition of Plaintiff's and Class members' data. Facebook has acknowledged these duties as described herein. Facebook has stated that it has a responsibility to protect and secure user data, and that users reasonably expect them to adequately safeguard their data.

68.     Facebook violated these duties and failed to reasonably safeguard Plaintiff's and Class members' data. Facebook knowingly disclosed their information and communications to third-party apps in massive quantities without their consent.

69.     Facebook's violation of its duty caused Plaintiff and the other Class members actual harm and damages. Plaintiff's and the other Class members' actual damages include but are not limited to: (i) an increased risk of identity theft and identity fraud; (ii) improper disclosure of their private information, which is now in the hands of unknown app

developers; and (iii) the deprivation of the value of their personal information, for which there is a fair market value.

### THIRD CAUSE OF ACTION

**Unfair and Unlawful Business Acts and Practices**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On behalf of the Nationwide Class, or, in the alternative, the California Class)**

70.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

71.     Defendant's acts and practices, as alleged in this Complaint, constitute unfair and unlawful business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

72.     Facebook permitting companies to collect and distribute personal information from its users without their consent constitutes an unfair business act or practice.

73.     Facebook's conduct further constitutes "unfair" business acts and practices because the practices are "likely to cause substantial injury" to Plaintiff and Class members, which are not reasonably avoidable by Plaintiff and the Class and the injury is not outweighed by the practice's benefits to Plaintiff and the Class. Such conduct is ongoing and continues to this date.

74.     Facebook's acts, omissions, and misrepresentations as alleged herein also constitution a violation of the unlawful prong of the UCL as they failed to comport with a reasonable standard of care and public policy as reflected in statutes such as Cal. Pen Code § 637.7; California Civil Code § 1798.81(5)(b); the Stored Communications Act; and the California Customer Records Act.

75.     As a result of Defendant's unfair and unlawful business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

Case MDL No. 2843   Document 9-5   Filed 04/23/18   Page 21 of 26

## FOURTH CAUSE OF ACTION

### Violation of the California Customer Records Act

### Cal. Civ. Code § 1798.80, *et seq.*

### (On behalf of the California Class)

76. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

77. Plaintiff brings this cause of action on behalf of the California Class whose personal user information is maintained by Facebook and which was compromised.

78. "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b).

79. Facebook is a "business" within the meaning of Civil Code § 1798.80(a).

80. Plaintiff and members of the class are "individual[s]" within the meaning of the Civil Code § 1798.80(d). Pursuant to Civil Code § 1798.80(e), the user information is "personal information," which includes, but is not limited to, an individual's name, physical characteristics or description, address, telephone number, education, employment, employment history, and medical information.

81. The breach of the personal information of tens of millions of Facebook users constituted a "breach of the security system" of Facebook pursuant to Civil Code § 1798.82(g).

82. By failing to implement reasonable measures to protect its users' information, Facebook violated Civil Code § 1798.81.5.

83. In addition, by failing to promptly notify all affected California residents that their personal information had been acquired (or was reasonably believed to have been

acquired) by unauthorized persons, including Cambridge Analytica, among other companies, Facebook violated Civil Code § 1798.82. Facebook's failure to timely and adequately notify users of the breach leaves Class members vulnerable to continued misuse of their personal information and prevents Class members from taking adequate steps to protect their identities.

84.     Accordingly, Plaintiff requests that the Court enter an injunction requiring Facebook to implement and maintain reasonable security procedures to protect its users' personal information in compliance with the California Customer Records Act. Plaintiff requests that the Court require Facebook to identify and notify all members of the Class who have not yet been informed of the breach.

85.     As a result of Facebook's violations of California Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class have and will incur economic damages relating to time and money spend remedying the breach, such as monitoring their online presence to ensure that their identity has not been stolen or coopted for an illicit purpose.

86.     Plaintiff, for herself and on behalf of the members of the Class, seek all remedies available under California Civil Code § 1798.84, including, but not limited to damages suffered by members of the Class and equitable relief.

87.     Plaintiff, for herself and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure §1021.5 and Federal Rule of Civil Procedure 23.

## FIFTH CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 637.7, *et seq.*

### (On behalf of the California Class)

88.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

89.     Defendants used in California an electronic tracking device to determine the location or movement of Plaintiff and the other Class members by intercepting, accessing,

and acquiring location data on Plaintiff and the other Class members' Facebook profiles without authorization or consent.

90.    Plaintiff and the other Class members' Facebook profiles contained certain location data, including check-ins and friends' location data.

91.    Plaintiff and the other Class members' smartphones and other computers contain electronic tracking devices. Location and movement information of Plaintiff and the other Class members was contained on their Facebook profiles and which was divulged by Facebook in violation of Cal. Penal Code § 637.7.

92.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and the other Class members are persons injured by Defendants' violation of § 637.7. Plaintiff and the other Class members are entitled to monetary damages in the amount of either $5,000 or three times the amount of actual damages, if any; and an injunction on Defendants' violations of § 637.7.

## SIXTH CAUSE OF ACTION

### Violation of the Right to Privacy

### Cal. Const., Art. I, Sec. I

### (On behalf of the California Class)

93.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

94.    Plaintiff and Class members have a specific, legally protected interest in the expectations of privacy their Personal information.

95.    Facebook intentionally intruded upon Plaintiff's and Class members' seclusion and publicly disclosed private facts to unknown third parties without authorization or consent, as alleged herein.

96.    Facebook's invasion of privacy was highly offensive to a reasonable person. The sheer amount of information disclosed and the indiscriminate nature of the disclosure, as alleged herein, was highly offensive to a reasonable person. A reasonable person would be embarrassed and offended by the extent of the disclosure of such information to

1   unknown third parties.

2        97.    Plaintiff and the other Class members were harmed by Facebook's invasions

3   of privacy. As a result of Facebook's unlawful conduct, Plaintiff and the other Class

4   members suffered actual damages including, but not limited to: (i) an increased risk of

5   identity theft and identity fraud; (ii) improper disclosure of their private information,

6   which is now in the hands of unknown app developers; and (iii) the deprivation of the

7   value of their personal information, for which there is a fair market value.

8        98.    Plaintiff and the other Class members are entitled to actual damages and

9   nominal damages in an amount to be determined at trial.

10   **SEVENTH CAUSE OF ACTION**

11   **Unjust Enrichment**

12   **(On behalf of the California Class)**

13        99.    Plaintiff realleges and incorporates by reference the allegations contained in

14   the paragraphs above as if fully set forth herein.

15        100.   As a direct, proximate, and foreseeable result of Facebook's acts and

16   otherwise wrongful conduct, Plaintiff and Class Members suffered damages. Facebook

17   profited and benefitted from the unjust use of Plaintiff's and Class members' personal

18   information, which caused Plaintiff and Class members to incur losses and damages.

19        101.   Facebook has voluntarily accepted and retained these profits and benefits,

20   derived from its users' information, including Plaintiff and Class members, with full

21   knowledge and awareness that retention of such profits and benefits is wrong and

22   unlawful.

23        102.   By virtue of the conscious wrongdoing alleged in this Complaint, Facebook

24   has been unjustly enriched at the expense of Plaintiff and Class members, who are entitled

25   to, and hereby seek, the disgorgement and restitution of Facebook's wrongful profits,

26   revenue, and benefits, to the extent and in the amount, deemed appropriate by the Court,

27   and such other relief as the Court deems just and proper to remedy Facebook's unjust

28   enrichment.

103.    Unless successful on the other legal claims in this Complaint, Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

a.      Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b.      Ordering Facebook to pay actual damages to Plaintiff and the Class members;

c.      Ordering Facebook to pay statutory damages and nominal damages, as allowable by law to Plaintiff and the other members of the Classes;

d.      Ordering the following injunctive relief:

i.   Enjoin Facebook from using any opt-out privacy settings (all data shared must be affirmatively consented to by the user);

ii.  Facebook to implement and maintain reasonable security procedures to protect its users' personal information in compliance with the California Customer Records Act; and

iii. Facebook to provide corrective notice to all users explaining, in plain English, Facebook's data sharing practices;

e.      Ordering Facebook to pay attorneys' fees and litigation costs to Plaintiff;

f.      Ordering Facebook to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

Case MDL No. 2281 Document 19-5 Filed 04/13/18 Page 26 of 26

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Dated:  April 12, 2018

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP

By:  /s/ Gayle M. Blatt
GAYLE M. BLATT
gmb@cglaw.com

Attorneys for Plaintiff

CLASS ACTION COMPLAINT