E-FILED
Tuesday, 17 April, 2018  03:19:38 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT D

COLE

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6.2.1 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:18-cv-02667

| | |
|---|---|
| People of the State of Illinois, ex rel. Kimberly M. Foxx v. Facebook, Inc. et al | Date Filed: 04/12/2018 |
| Assigned to: Honorable Robert M. Dow, Jr | Jury Demand: Plaintiff |
| Case in other court: Circuit Court of Cook County, Illinois, 2018-CH-03868 | Nature of Suit: 370 Other Fraud |
| Cause: 28:1332 Diversity-(Citizenship) | Jurisdiction: Diversity |

**Plaintiff**

**People of the State of Illinois, ex rel. Kimberly M. Foxx**          represented by          **People of the State of Illinois, ex rel. Kimberly M. Foxx**
PRO SE

V.

**Defendant**

**Facebook, Inc.**          represented by          **Nathan P. Eimer**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
Email: neimer@eimerstahl.com
*ATTORNEY TO BE NOTICED*

**Susan M. Razzano**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604-2516
312 660-7600
Email: srazzano@eimerstahl.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCL Group Limited**

**Defendant**

**Cambridge Analytica LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2018 | 1 | NOTICE of Removal from Circuit Court of Cook County, Illinois, case number (2018-CH-03868) filed by Facebook, Inc. Filing fee $ 400, receipt number 0752-14348138. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Eimer, Nathan) (Entered: 04/12/2018) |
| 04/12/2018 | 2 | CIVIL Cover Sheet (Eimer, Nathan) (Entered: 04/12/2018) |
| 04/12/2018 | 3 | ATTORNEY Appearance for Defendant Facebook, Inc. by Nathan P. Eimer (Eimer, Nathan) (Entered: 04/12/2018) |
| 04/12/2018 | 4 | ATTORNEY Appearance for Defendant Facebook, Inc. by Susan M. Razzano (Razzano, Susan) (Entered: 04/12/2018) |
| 04/12/2018 | 5 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-14348207. *for Orin Snyder* (Attachments: # 1 Attachment A)(Snyder, Orin) (Entered: 04/12/2018) |
| 04/12/2018 | 6 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-14348217. *for Joshua Lipshutz* (Attachments: # 1 Attachment A)(Lipshutz, Joshua) (Entered: 04/12/2018) |
| 04/12/2018 | 7 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-14348228. *for Kristin Linsley* (Attachments: # 1 Attachment A)(Linsley, Kristin) (Entered: 04/12/2018) |
| 04/13/2018 | | CASE ASSIGNED to the Honorable Robert M. Dow, Jr. Designated as Magistrate Judge the Honorable Jeffrey Cole. (kb, ) (Entered: 04/13/2018) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/13/2018 09:47:22 | | |
| PACER Login: | gd0021DA:2553423:4036719 | Client Code: | 30993-00083 |
| Description: | Docket Report | Search Criteria: | 1:18-cv-02667 |
| Billable Pages: | 1 | Cost: | 0.10 |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex. Rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois,<br><br>   *Plaintiff,*<br><br>v.<br><br>FACEBOOK, INC., SCL GROUP LIMITED, and CAMBRIDGE ANALYTICA LLC,<br><br>   *Defendants.* | **Removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division No. 2018-CH-03868**<br><br><br>**Civil Action No. _____** |

---

## NOTICE OF REMOVAL

---

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Facebook, Inc. ("Facebook"), with the written consent of the other Defendants, SCL Group Limited ("SCL"), and Cambridge Analytica, LLC ("Cambridge Analytica"), as indicated by the signature of its counsel for SCL and Cambridge Analytica below, hereby removes the state court action described below. By filing this Notice of Removal, Facebook does not intend to waive, and hereby reserves, any and all objections as to venue, personal jurisdiction, or the legal sufficiency of the claims alleged in the Action, and all other objections and defenses. Facebook reserves the right to supplement and/or amend this Notice. As grounds for removal, Facebook states as follows:

### A. BACKGROUND

1. Plaintiff Cook County ("Cook County" or "Plaintiff"), through its County State's Attorney, Kimberly M. Foxx, on March 23, 2018, filed the instant action in the Circuit Court of

Cook County, Illinois, County Department, Chancery Division, with the caption *People of the State of Illinois v. Facebook, Inc., SGL Group Limited, and Cambridge Analytica LLC*, 2018-CH-03868 (the "Action").

2.       The Complaint alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq ("ICFA") and seeks monetary fines and declaratory and injunctive relief.

3.       A copy of the as-served Complaint and Summons is attached hereto as Exhibit A.

4.       Plaintiff served Facebook with the Summons and Complaint on March 27, 2018. Exhibit A.

5.       Following this removal, Facebook intends to seek a stay of this action pending a decision from the Judicial Panel on Multidistrict Litigation (JPML) on whether to establish a multidistrict litigation for pretrial proceedings in this and other cases. *See In re: Facebook User Profile Litigation*, MDL No. 2843. Facebook filed a response in support of transfer by the JPML to the Northern District of California on April 6, 2018. *See* MDL No. 2843, Dkt. 19.[1]

## B.       GROUNDS FOR REMOVAL

6.       This case is removable pursuant to 28 U.S.C. §§ 1332(a)(1), (a)(2), and (c)(1) and 28 U.S.C. §§ 1441(a) and (b).

7.       This Court has original jurisdiction under 28 U.S.C. § 1332(a) and (c)(1) because there is complete diversity between the parties and the amount in controversy requirement is

---

[1]    Facebook is headquartered in the Northern District of California and many relevant witnesses are likely to be located there. In addition, all Facebook accountholders, by signing the Statement of Rights and Responsibilities, agreed that any claims, causes of actions, or disputes with Facebook would be resolved exclusively in the Northern District of California or in a state court located in San Mateo County. Facebook's Statement of Rights and Responsibilities is available at https://www.facebook.com/terms.php.

satisfied. Plaintiff is a citizen of Illinois, and none of the Defendants is a citizen of Illinois. Defendant Facebook is a citizen of Delaware (its state of incorporation) and California (its principal place of business). Defendant SCL is a citizen of the United Kingdom. Defendant Cambridge Analytica is a limited liability company, so its citizenship status follows that of its owners, each of which is a citizen of the United Kingdom. And, as set forth more fully below, the amount in controversy exceeds $75,000, exclusive of interest and costs.

### The Parties Are Diverse

8. The Plaintiff and real party in interest in this case is Cook County, Illinois, which is a citizen of the State of Illinois.

9. The State's Attorney for Cook County, Kimberly M. Foxx, filed this action under a provision of the ICFA that allows counties, by and through their county State's Attorneys, to bring *parens patriae* lawsuits for violations of the ICFA. *See* 815 ILCS 505/7; *Ashton v. Cook Cty.*, 384 Ill. 287, 297 (1943) (The "State's Attorney is ... a county officer.").

10. For diversity purposes, counties are citizens of the state in which they are located. *Moor v. County of Alameda*, 411 U.S. 693, 717–718 (1973); *Goros v. Cty. of Cook*, 489 F.3d 857, 859 (7th Cir. 2007) (noting that, under *Moor*, "a county is a 'citizen' of its state for purposes of diversity jurisdiction"); *see also See* Ill. Const. art. VII, § 1, *et seq.* (setting out independent status of counties and municipalities). Accordingly, Cook County is a citizen of Illinois. Cook County is regularly treated as a citizen of Illinois. *See, e.g., Blackmon-Mooring Steamatic Catastrophe, Inc. v. County of Cook, Ill.*, 04-CV-3517, 2004 WL 1794936, at *3 (N.D. Ill. Aug. 5, 2004); *County of Cook v. Philip Morris, Inc.*, 97-CV-3295, 1997 WL 667777, at *1 (N.D. Ill. Oct. 17, 1997); *County of Cook v. Mellon Stuart Co.*, 812 F. Supp. 793, 796 (N.D. Ill. 1992).

11.     This conclusion is unaffected by the nature of this action as having been brought by the Cook County State's Attorney on behalf of the People of the State of Illinois.  When a governmental entity in Illinois brings a *parens patriae* suit under the ICFA, the real party in interest is the governmental entity itself, not the group whose interests it seeks to protect.  *See Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1049 (C.D. Ill. 2009); *People of State of Illinois v. LiveDeal, Inc.*, 2009 WL 383434, at *1 (C.D. Ill. Feb. 12, 2009).  Thus, although Cook County has brought this action, pursuant to statute, in the name of the People of the State of Illinois, *see* 815 Ill. Comp. Stat. Ann. 505/7, the County itself is the real party in interest: it purports to be vindicating its own interest in the wellbeing of the citizens and marketplace of Illinois.  *See SDS West Corp.*, 640 F. Supp. 2d at 1050.

12.     None of the Defendants is a citizen of the State of Illinois and all are citizens of other states or of a foreign nation, or take the citizenship of entities that are citizens of a foreign nation.  As the Complaint alleges, Defendant Facebook is incorporated in the State of Delaware, with its principal place of business in California.  Facebook is not a citizen of Illinois.  Defendant SCL, a Private Limited Company, is a corporation organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom, and therefore is a citizen of the United Kingdom.  *See* 28 U.S.C. §1332(c)(1); *Simon Holdings PLC Group of Companies U.K. v. Klenz*, 878 F. Supp. 210, 211, 213 (M.D. Fla. 1995); *Chok v. S&W Berisford, PLC*, 624 F. Supp. 440, 441 (S.D.N.Y. 1985).  SCL is not a citizen of Illinois.  Defendant Cambridge Analytica is a limited liability company that is 100% owned by SCL Elections Limited and Emerdata Limited, each of which is a Private Limited Company that is a corporation organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom.  Each owner of Cambridge Analytica, therefore, is a citizen of the United Kingdom.  *See Carden v. Arkoma*

Case 1:18-cv-02682-JdcDument 4-6 Filed 04/04/P3ge35 Page Page80 #:5

*Associates*, 494 U.S. 185 (1990); *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350

F.3d 691, 692 (7th Cir. 2003). Neither of the owners of Cambridge Analytica is a citizen of Illinois;

thus, Cambridge Analytica is not a citizen of Illinois.

13.     Based on these facts, there is complete diversity between the parties. 28 U.S.C.

§§ 1332(a)(1), (a)(2) & (c)(1).

### The Amount in Controversy Exceeds Seventy-Five Thousand Dollars

14.     The amount in controversy exceeds $75,000, exclusive of interests and costs.

28 U.S.C. § 1332(a).

15.     In determining whether the amount in controversy requirement is satisfied, courts

"consider the pecuniary result to either party which the judgment would directly produce." *Smith*

*Prod. Co. v. Baldwin*, 106 F.3d 403 (7th Cir. 1997). Claims for civil penalties count toward the

amount in controversy. *ABM Sec. Services, Inc. v. Davis*, 646 F.3d 475, 477 (7th Cir. 2011)

(statutory penalties calculated as part of the amount in controversy); *Tremback v. MONY Life Ins.*

*Co.*, 12-cv-5901, 2013 WL 1849517, at *4 (N.D. Ill. May 1, 2013) ("[w]hen a statutory penalty is

sought … it is properly considered part of the amount in controversy"). Claims for enhanced civil

penalties also count if the enhancement is recoverable under governing law, and unless it is certain

that the plaintiff cannot recover them. *See LM Ins. Corp. v. Spaulding Ent. Inc.*, 533 F.3d 542,

551 (7th Cir. 2008).

16.     Count I of the Complaint asserts claims against Cambridge Analytica and SCL[2] for

civil fines that exceed $75,000. The Complaint asserts that "the penalty for violating the [ICFA]

is a sum not to exceed $50,000," but that, "if the Court finds that [Cambridge Analytica's and

---

[2]     Plaintiff pleads Count I as against both Cambridge Analytica and SCL. Although the
allegations in the Count refer to "Cambridge Analytica," Plaintiff defines that term to include
both Cambridge Analytica LLC and SCL Group Limited." (Compl. at 1).

SCL's] ... practices were intended to defraud Illinois residents, $50,000 per violation." Compl. ¶ 75. As Plaintiff alleges in its Complaint, this enhancement is authorized by the Illinois statute. *Id.* ¶ 87, citing 815 ILCS 505/7(b). And Plaintiff's Prayer for Relief specifically demands that Cambridge Analytica and SCL be fined "$50,000 for violating the ICFA or, if the Court finds that Defendants engaged in the above-described conduct with intent to defraud, $50,000 for each such violation" (Compl. at 24 ¶ B), as well as "an additional $10,000 for each of the alleged violations that involves an Illinois resident 65 years of age or older "for each day such violation has existed and continues to exist" (*id.* at 24 ¶ C).

17.     The Complaint also asserts that Cambridge Analytica and SCL acted with the intent to defraud. It alleges that defendants Cambridge Analytica and SCL engaged in a "fraudulent scheme to harvest the data of millions of U.S. voters" (Compl. at 7), and "engineered a deceptive scheme to surreptitiously siphon that data from Facebook" (*id.* ¶ 24). The scheme, it alleges, involved the use of "false pretenses" to deceive an initial group of 270,000 Facebook users to provide their own personal data, and then used that deception to access the data of some "50 million Facebook users in the United States, including millions of users in Illinois." (*Id.* ¶ 33; *see also* ¶¶ 40, 67). The Complaint further alleges that Cambridge Analytica and SCL "intended that Facebook and the public, including Illinois residents, rely on [their] deceptive representations and communications." (*Id.* ¶ 68).

18.     The Complaint asserts multiple violations of the ICFA by Cambridge Analytica and SCL: it alleges that the conduct of these defendants "violated the personal privacy rights of millions of Illinois residents" (Compl. at ¶ 71), and that Cambridge Analytica and SCL committed multiple wrongful acts, including at least two distinct acts of fraud: "posing as an academic researcher" (*id.* ¶ 70), and making "false representations about the ... purposes for which the data

was being collected and would be used" (*id.* ¶ 67).  The Complaint also alleges other wrongful practices by Cambridge Analytica and SCL, including "using such data for psychographic analysis and electioneering, harvesting users' friend lists for psychographic analysis and electioneering, disclosing all collected and harvested user data to its affiliates and clients, and reaping substantial profits therefrom." (*Id.*).

      19.    Based on these allegations, the Complaint asserts, for purposes of Section 1332(a), that Cambridge Analytica and SCL are liable for statutory fines in the amount of at least $50,000 per violation, that Cambridge Analytica and SCL have committed multiple violations, and that the predicate exists for the "per violation" multiplier under the ILCS.  (815 ILCS 505/7(b)).  As for the initial 270,000 individuals whose data the Complaint alleges was obtained by Cambridge Analytica and SCL under "false pretenses," the Complaint does not indicate the number of those individuals who reside in Illinois.  But it does allege that "millions" of Illinois residents were in the second group, whose data was obtained through the access granted by the first group. Assuming that a "violation" would occur when the data of each such resident was improperly obtained or accessed, the requested fine calculated by reference to even two million residents would be billions of dollars.[3]  And even if the "per violation" provision means only separate acts, not separate individual injuries, Plaintiff had pled multiple acts of deception, as set out above, so the amount in controversy would be in excess of $100,000.

---

[3]    As noted above, the Complaint further alleges that the Court may impose additional fines of "$10,000 per violation" if "the violation was committed against a person 65 years of age or older," (Compl. ¶ 76), and it seeks damages on this basis against Cambridge Analytica and SCL in the Prayer for Relief. The Complaint does not state how many Illinois residents within the referenced groups would fall within this category, so Facebook has not included this enhancement in the above calculations, but it reserves the right to reference this allegation and prayer in the event that information on this point becomes available.

20.     The same conclusion applies to Count II, asserted against Facebook.  In that Count, the Complaint again recites that the "penalty for violating [the ICFA] is a sum not to exceed $50,000," and that "if the Court finds that Facebook's ... practices were intended to defraud Illinois residents, $50,000 per violation" (Compl. ¶ 76), and the corresponding demand in the Prayer for Relief seeks recovery against Facebook on that basis (*id.* at 24 ¶ B).  The Complaint alleges that Facebook made "representations to consumers that were knowingly false" (*id.* ¶ 79) and "concealed the breach from its users" (*id.* ¶ 82).  Indeed, the Complaint alleges that Facebook's entire operation is intended to manipulate consumers:  according to Plaintiff, Facebook purports to be a social media website, but is in fact "the largest data mining operation in existence," a "data aggregation machine disguised as a social network—to manipulate users into making the decisions that Facebook and its business partners want them to make."  (*Id.* ¶¶ 5, 8).  Plaintiff also asserts multiple violations of the ICFA by Facebook, including multiple "misrepresentations" and false "representations" such as representing "that [users'] personal data would be protected in accordance with its user and development agreements" and "conceal[ing] the [Cambridge Analytica] breach from its users and do[ing] nothing more than quietly (and unsuccessfully) asking Cambridge Analytica to delete the data."  (*Id.* ¶¶ 79, 82; *see also id.* ¶ 80, 83).  Plaintiff further alleges that "millions of [Facebook] users in Illinois" were affected.  (*Id.* ¶ 1).

21.     Based on these allegations, Plaintiff asserts, for purposes of Section 1332(a), that Facebook is liable for statutory fines in the amount of at least $50,000 per violation, that Facebook has committed multiple violations, and that the predicate exists for the "per violation" multiplier under the ILCS.  (815 ILCS 505/7(b)).  Although Facebook denies all of these allegations—and fully reserves its right to contest their adequacy for pleading purposes or otherwise—the value of Plaintiff's claims against Facebook as pled in the Complaint would again be well in excess of

$75,000.  And, again, even if the "per violation" calculation is performed by reference to acts, not persons affected, the Complaint asserts multiple violations, so the amount in controversy would be $100,000 or more.

22.     That the amount in controversy requirement is satisfied is confirmed by the claim for injunctive relief in Count III.  *See* 28 U.S.C. § 1446(c)(2)(A)(i).  Where a complaint seeks injunctive relief, the value of that relief counts toward the amount in controversy requirement.  *See also Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003); *see also City of Milwaukee v. Saxbe*, 546 F.2d 693, 702 (7th Cir. 1976) ("where the complaint seeks injunctive or declaratory relief … the amount in controversy is … the value of the right to be protected or the extent of the injury to be prevented.").

23.     Under Section 1446(c)(2)(A)(i), a Notice of Removal may assert the amount in controversy with respect to a claim for nonmonetary relief.  Generally, the value of a claim for injunctive relief may be calculated by measuring either the benefit to the plaintiff or the cost to the defendant.  *Golin v. Neptune Mgt. Corp.*, 704 Fed. App'x 591, 595 (7th Cir. 2017).

24.     Here, the Complaint asserts as its principal basis for injunctive relief that "Defendants remain in possession of the highly personal Facebook user data that it [sic] unlawfully obtained," and that "[m]illions of Illinois residents will continue to suffer or be vulnerable to injury, unless this is rectified through injunctive relief." (Compl. ¶ 93).  Plaintiff requests that the Court order Defendants "to address, remedy, and prevent harm to Illinois residents." (*Id.* at ¶ 10). Assuming the truth of these allegations, the value of an injunction from Plaintiff's viewpoint clearly would be greater $75,000.  *See generally Midland Mgt. Co. v. Am. Alt. Ins. Corp.*, 132 F. Supp. 3d 1014, 1019–20 (N.D. Ill. 2015) (denying motion to remand where value of harm alleged "could easily exceed $75,000").  Again, "millions" necessarily means at least two million, so that

even a minimal alleged "benefit" per individual would yield a value of well over $75,000. Although Facebook denies these allegations and also denies the assertion of harm to Illinois residents, Plaintiff's own allegations make clear that, viewed from its perspective, the request for injunctive relief is worth well in excess of the jurisdictional amount.

25.      Alternatively, the value of the injunctive relief Plaintiff seeks can be calculated, for purposes of Section 1441, by considering the "cost" of the injunction from the defendant's viewpoint. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997) ("Looked at from the defendants' standpoint, the minimum amount in controversy would be present if the injunction sought by the plaintiffs would require some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum amount"); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996) ("the amount in controversy requirement may be satisfied ... if either party can gain or lose the jurisdictional amount" based on the relief sought).   The cost to Facebook of implementing a statewide injunction to "address, remedy, and prevent harm to Illinois residents" (*id.* ¶ 10)—whatever that vaguely worded demand may mean—unquestionably would clear the amount-in-controversy threshold.

### C.      CONSENT OF OTHER DEFENDANTS

26.      All Defendants who have been properly served join in or consent to the removal of this case to federal court.  Attached hereto as <u>Exhibit B</u> is a written consent to removal of this action signed by counsel for SCL and Cambridge Analytica—which, together with Facebook, constitute all of the Defendants in this action.  *See* 28 U.S.C. § 1446(b)(2)(A).  By joining in or consenting to this removal of this case to federal court, as indicated by the signature of their counsel below, the joining Defendants do not intend to waive, and hereby reserve, any and all objections

as to venue, personal jurisdiction, or the legal sufficiency of the claims alleged in the Action, and all other objections and defenses.

### D.    PROCEDURAL REQUIREMENTS AND NOTICE

27.    In accordance with 28 U.S.C. § 1446(a), copies of the Complaint and all other process, pleadings, and other papers served on Facebook in the state court action are attached hereto as Exhibit A.

28.    This removal to the Northern District of Illinois, Eastern Division is proper under 28 U.S.C. § 1441(a) because the state court action is pending in the Circuit Court of Cook County, Illinois, which is located in this district and division.

29.    Pursuant to 28 U.S.C. § 1446(d), written notice of removal is being promptly provided to Plaintiff and a Notice of Removal, together with a copy of this Notice of Removal, is being filed with the Clerk of the Circuit Court of Cook County, Illinois, Chancery Division. Copies of these documents are attached hereto as Exhibits C and D, respectively.

### E.    TIMELINESS

30.    Plaintiff served Facebook with a copy of the Summons and Complaint on March 27, 2018, and Facebook is seeking removal within 30 days of that date. Accordingly, this Notice of Removal is timely filed. 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, though service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based").

### F.    JURY DEMAND

31.    Plaintiff's Complaint in the state court action demands a trial by jury. (Compl. at 24.).

DATED:  April 12, 2018.

Respectfully submitted,

**EIMER STAHL LLP**

By:  /s/ Nathan P. Eimer
Nathan P. Eimer
Susan M. Razzano
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
SRazzano@eimerstahl.com

**GIBSON, DUNN & CRUTCHER, LLP**

By:  /s/ Orin Snyder
Orin Snyder (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
Osnyder@gibsondunn.com

Joshua S. Lipshutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
Jlipshutz@gibsondunn.com

Kristin A. Linsley (*pro hac vice* forthcoming)
Brian M. Lutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
Blutz@gibsondunn.com
Klinsley@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2018, the foregoing Notice of Removal was sent by electronic mail and filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Kent S. Ray
Assistant State's Attorney
kent.ray@cookcountyil.gov
COOK COUNTY STATE 'S
ATTORNEY'S OFFICE
69 West Washington Street, Suite 3130
Chicago, Illinois 60602
Tel: 312.603.8600

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
David I. Mindell
dmindell@edelson.com
Alfred K. Murray II
amurray@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

*/s/ Nathan P. Eimer*

# Exhibit A



### Cook County
### Clerk of the Circuit Court
**Electronic Docket Search**
Chancery, Domestic/Child Support, Civil and Law Divisions

| Case Information Summary for Case Number |
|:---:|
| 2018-CH-03868 |

Filing Date: 03/23/2018

Division: Chancery Division

Ad Damnum: $0.00

Case Type: GENERAL CHANCERY

District: First Municipal

Calendar: 07

## Party Information

**Plaintiff(s)**

PEOPLE OF THE STATE ILLIN

**Attorney(s)**

EDELSON PC

350 N LASALLE 13TH F
CHICAGO IL, 60654
(312) 589-6370

**Defendant(s)**

CAMBRIDGE ANALYTICA

FACEBOOK, INC.

SCL GROUP LIMITED

**Defendant Date of Service**

**Attorney(s)**

## Case Activity

Activity Date: 03/23/2018

Participant: PEOPLE OF THE STATE ILLIN

GENERAL CHANCERY FILED (JURY DEMAND)

Court Fee: 598.00

Attorney: EDELSON PC

Activity Date: 03/23/2018

Participant: FACEBOOK, INC.

SUMMONS ISSUED AND RETURNABLE

Activity Date: 03/23/2018

Participant: SCL GROUP LIMITED

SUMMONS ISSUED AND RETURNABLE

Activity Date: 03/23/2018

Participant: CAMBRIDGE ANALYTICA

SUMMONS ISSUED AND RETURNABLE

Activity Date: 03/23/2018                              Participant: PEOPLE OF THE STATE ILLIN

CASE ELECTRONICALLY FILED

Attorney: EDELSON PC

Activity Date: 03/26/2018                              Participant: PEOPLE OF THE STATE ILLIN

CASE SET ON CASE MANAGEMENT CALL

Date: 07/24/2018                          Judge: MEYERSON, PAMELA
Court Time: 0930                                 MCLEAN
Court Room: 2305                          Attorney: EDELSON PC

Activity Date: 04/05/2018                              Participant: PEOPLE OF THE STATE ILLIN

TRANSFERRED TO PRESIDING JUDGE

Judge: MEYERSON, PAMELA
MCLEAN

Activity Date: 04/05/2018                              Participant: PEOPLE OF THE STATE ILLIN

CASE SET ON CASE MANAGEMENT CALL

Date: 08/03/2018                          Judge: LARSEN, DIANE J.
Court Time: 1000                          Attorney: EDELSON PC
Court Room: 2405

Activity Date: 04/05/2018                              Participant: PEOPLE OF THE STATE ILLIN

RETURN FOR RANDOM ASSIGNMENT

Judge: JACOBIUS, MOSHE

Activity Date: 04/05/2018                              Participant: PEOPLE OF THE STATE ILLIN

RECUSAL - ALLOWED

Judge: MEYERSON, PAMELA
MCLEAN

Activity Date: 04/05/2018                              Participant: PEOPLE OF THE STATE ILLIN

ASSIGN TO JUDGE WITHIN DIVISION

Judge: LARSEN, DIANE J.

Back to Top

Please note: Neither the Circuit Court of Cook County nor the Clerk of the Circuit Court of Cook County warrants the accuracy, completeness, or the currency of this data. This data is not an official record of the Court or the Clerk and may not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data in our master database.

Start a New Search

Chancery Division Civil Cover Sheet - General Chancery Section          (Rev. 12/30/15) CCCH 0623

## IN THE CIRCUIT CIVIL COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, COUNTY DIVISION

PEOPLE OF THE STATE ILLINOIS EX REL. KIMBERLY M. FOXX, STATE'S
ATTORNEY OF COOK COUNTY, ILLINOIS          **Plaintiff**

v.

FACEBOOK, INC.

                                           **Defendant**

No. 

```
ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
CALENDAR: 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN
```

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be fi led with the initial complaint in all actions fi led in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005   ☐ Administrative Review
0001   ☐ Class Action
0002   ☐ Declaratory Judgment
0004   ☐ Injunction

0007   ☑ General Chancery
0010   ☐ Accounting
0011   ☐ Arbitration
0012   ☐ Certiorari
0013   ☐ Dissolution of Corporation
0014   ☐ Dissolution of Partnership
0015   ☐ Equitable Lien
0016   ☐ Interpleader
0017   ☐ Mandamus
0018   ☐ Ne Exeat

0019   ☐ Partition
0020   ☐ Quiet Title
0021   ☐ Quo Warranto
0022   ☐ Redemption Rights
0023   ☐ Reformation of a Contract
0024   ☐ Rescission of a Contract
0025   ☐ Specific Performance
0026   ☐ Trust Construction
0027   ☐ Foreign Transcript
0085   ☐ Petition to Register Foreign Judgment
        ☐ Other (specify) _____

By:  /s JAY EDELSON
☑ Atty. No.:  62075          ☐ Pro Se 99500
Name:  EDELSON PC
Atty. for:  PEOPLE OF THE STATE ILLINOIS EX REL. KIMBERLY
Address:  350 N LASALLE 13TH FL
City/State/Zip:  CHICAGO, IL 60654
Telephone:  (312) 589-6370
Primary Email Address:
jedelson@edelson.com
Secondary Email Address(es):
docket@edelson.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
CALENDAR: 11
PAGE 1 of 25
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois,<br><br>*Plaintiff,*<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation, SCL GROUP LIMITED, a United Kingdom private limited company, and CAMBRIDGE ANALYTICA LLC, a Delaware limited liability company,<br><br>*Defendants.* | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff People of the State of Illinois brings this Complaint and Demand for Jury Trial against Facebook, Inc. ("Facebook"), and SCL Group Limited and Cambridge Analytica LLC (collectively referred to as "Cambridge Analytica," unless otherwise specified), and alleges as follows:

### NATURE OF THE ACTION

1.  In 2014, Cambridge Analytica—a London-based electioneering firm—exfiltrated the personal data of more than 50 million Facebook users in the United States, including millions of users in Illinois. This data trove included Facebook users' ages, interests, pages they've liked, groups they belong to, physical locations, political affiliation, religious affiliation, relationships, and photos, as well as their full names, phone numbers, email addresses, and physical addresses.[1]

---

[1]   Craig Timberg, et al., *Bannon Oversaw Cambridge Analytica's Collection of Facebook Data, According to Former Employee*, WASH. POST (Mar. 20, 2018), https://wapo.st/2FYS1kE.

2.     Though this data was supposedly private and protected from disclosure by Facebook's user and developer policies, Cambridge Analytica knew that it could access this nearly unlimited trove of data using Facebook's existing developer tools, an open secret that was well known to developers.[2]

3.     Posing as an academic researcher, Cambridge Analytica identified American Facebook users on "Mechanical Turk"—an online marketplace where people around the world contract with others to perform various tasks—and offered to pay them to download and use a personality quiz app it developed on Facebook called *thisisyourdigitallife*.

4.     About 270,000 American voters installed the app and took the personality quiz in return for $1 to $2. But Cambridge Analytica wasn't interested in just the answers. What it really wanted—and what it got by virtue of being a developer on the Facebook platform—was the ability to collect Facebook data from each quiz taker and *all* of their Facebook friends. In this way, Cambridge Analytica parlayed 270,000 personality quiz submissions into a comprehensive dataset on more than *50 million* unwitting Facebook users.

5.     This kind of mass data collection was not only allowed but encouraged by Facebook, which sought to keep developers building on its platform and provide companies with all the tools they need to influence and manipulate user behavior. That's because Facebook is not a social media company; it is the largest data mining operation in existence.

6.     To be sure, Cambridge Analytica's data grab of 50 million users was eventually flagged and investigated by Facebook in 2014.[3] But when it learned that the harvesting of data

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 2 of 25

---

[2]     *See, e.g.*, Emil Protalinski, *Stalkbook: Stalk Anyone, Even If You're Not Facebook Friends*, CNET (July 23, 2012), https://www.cnet.com/news/stalkbook-stalk-anyone-even-if-youre-not-facebook-friends/.

[3]     Chloe Aiello, *Developer Behind The App At The Center Of Data Scandal Disputes Facebook's Story*, CNBC (Mar. 21, 2018), https://www.cnbc.com/2018/03/21/aleksander-kogan-

was intended to build personality profiles for academic uses, Facebook allowed the data

collection to resume. A year later, Facebook discovered that the data was being used for

electioneering purposes and discreetly asked Cambridge Analytica to delete the data. Notably, it

never confirmed that the data was actually deleted or notified its users of the privacy breach.

7.       In the meantime, Cambridge Analytica was mining the data it collected on 50

million Facebook users to create "psychographic profiles" for the 2016 American presidential

election. These profiles—which included each user's name, home address, phone number,

education, birthday, voter records, and political tendencies, alongside a *sophisticated personality

analysis*—allowed Cambridge Analytica to "identify the most persuadable voters" and target

them with so-called "fake news" on various platforms, including Facebook.[4] By its own

admission, this combination of misappropriated data, psychographic profiling, and fake news

enabled Cambridge Analytica—an overseas electioneering firm—to exert "significant influence

on the outcome of the 2016 presidential election."[5]

8.       While Facebook has, a full three years later, condemned Cambridge Analytica's

unauthorized data collection, its actions are far more consistent with Facebook's mission than

Facebook wants to let on. Though it may have started as a social network, Facebook's business

model has shifted over the years into what is now one of the biggest data mining companies in

the world. Facebook now uses its platform—which has essentially become a data aggregation

machine disguised as a social network—to manipulate users into making the decisions that

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 3 of 25

---

facebook-shouldve-known-how-app-data-was-being-used.html.

[4]       *How Facebook Could Profile Voters For Manipulation*, Associated Press (Mar. 20, 2018), https://bit.ly/2uhKp7v; Hilary Osborne, *What Is Cambridge Analytica? The Firm At The Centre Of Facebook's Data Breach*, Guardian (Mar. 18, 2018), https://bit.ly/2prhWXb.

[5]       Cambridge Analytica, *Make America Number 1*, https://ca-political.com/casestudies/casestudymakeamericanumber12016 (last visited Mar. 23, 2018).

3

Facebook and its business partners want them to make.[6]

9.      Facebook shifted its business model in this way because it recognized that it can be even more profitable if it could harness and sell the ability to dependably influence its users' behavior to third parties. Facebook therefore encouraged developers and researchers to collect and analyze Facebook user data so that it could better learn how to manipulate its own users' moods and influence what they purchase and even how they vote. Facebook even conducted experiments on its own users, including experiments aimed at influencing their moods and manipulating their voting habits.[7]

10.     This lawsuit seeks to right the wrongs created by Cambridge Analytica's and Facebook's blatant disregard and misuse of sensitive, personal data belonging to the People of the State of Illinois. Accordingly, the People of the State of Illinois, by and through Cook County State's Attorney Kimberly M. Foxx, seeks civil penalties and all appropriate injunctive relief to address, remedy, and prevent harm to Illinois residents resulting from Defendants' misconduct.

## PARTIES

11.     Plaintiff People of the State of Illinois, by and through Kimberly M. Foxx, State's Attorney of Cook County, Illinois, brings this action in the public interest for and on behalf of the People of the State of Illinois.

12.     Defendant Facebook, Inc. is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 1 Hacker Way, Menlo Park, California 94025.

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 4 of 25

---

[6]      *See, e.g.*, Sam Machkovech, *Report: Facebook Helped Advertisers Target Teens Who Feel "Worthless"*, ARSTECHNICA (last updated May 1, 2017.), https://bit.ly/2pBgf9G.

[7]      *See, e.g.*, Kasmir Hill, *10 Other Facebook Experiments On Users, Rated On A Highly-Scientific WTF Scale*, FORBES (July 10, 2014), https://www.forbes.com/sites/kashmirhill/2014/07/10/facebook-experiments-on-users/#254ffa9b1c3d.

13.     Defendant SCL Group Limited is a UK private limited company with offices located in London, England. Defendant SCL Group Limited is the parent company of Defendant Cambridge Analytica LLC.

14.     Defendant Cambridge Analytica LLC is a limited liability company organized under the laws of the State of Delaware, with offices located in New York City and Washington, D.C. Defendant Cambridge Analytica LLC is a subsidiary of Defendant SCL Group Limited.

## JURISDICTION AND VENUE

15.     Pursuant to the Illinois Constitution art. VI, §9, this Court has subject matter jurisdiction over Plaintiff's claims.

16.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, have committed tortious acts in Illinois, and have transacted substantial business in Illinois that caused harm in Illinois.

17.     Venue is proper in Cook County because Defendants conduct business transactions in Cook County and the causes of action arose, in part, in Cook County.

## COMMON FACTUAL ALLEGATIONS

### I.    An Overview of Cambridge Analytica.

18.     Cambridge Analytica is a political consulting firm that promises to provide its customers the ability to use big data to change voter behavior.[8]

19.     Unfortunately, until recently, Cambridge Analytica's business practices were largely a secret to the general public. On March 18, 2018, one of its senior programmers—Christopher Wylie—exposed the company's unlawful and deceptive business practices, including its role in "hijacking" the profiles of millions of Facebook users in order to influence

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 5 of 25

---

[8]     *See* Matthew Rosenberg, et al., *How Trump Consultants Exploited The Facebook Data Of Millions*, N.Y. TIMES (Mar. 17, 2018), https://nyti.ms/2HH74vA.

the 2016 United States Presidential election.[9]

20.    Cambridge Analytica's efforts to engage in mass data mining on behalf of American political campaigns began in 2013, when its now-suspended Chief Executive Officer Alexander Nix was still heading the elections division of SCL Group Limited.[10] At the time, Nix set out create a team of data analysts, psychologists, and political operatives that could successfully use data analytics to model U.S. voter behavior, and assess how American voters' inherent psychological traits affected their voting decisions. Using that data, the company would, in turn, sell it to political campaigns seeking to influence or change votes.[11]

21.    The group—not yet formally organized, but still an entity within SCL Group Limited—received significant initial funding from billionaire Robert Mercer, a well-known funder of conservative- and Republican-connected political causes throughout the United States.[12] Mercer helped the group finance a $1.5 million pilot test of their psychographic profiling-based messaging in the Commonwealth of Virginia's 2013 gubernatorial election on behalf of Republican candidate Ken Cuccinelli.[13]

22.    On December 31, 2013, this internal team at SCL Group formally organized in

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 6 of 25

---

[9]    Carole Cadwalladr, *'I Made Steve Bannon's Psychological Warfare Tool': Meet The Data War Whistleblower*, GUARDIAN (Mar. 18, 2018), https://bit.ly/2HGFvCD.

[10]    SCL Group similarly provides data, analytics and strategy-related consulting, but primarily offers its services to governments and military organizations throughout the world. SCL Group boasts having conducted "behavior change programs" in over 60 countries (*i.e.*, psychological warfare).

[11]    Rosenberg et al., *supra* note 8.

[12]    Sasha Issenberg, *Cruz-Connected Data Miner Aims To Get Inside Voters' Heads*, BLOOMBERG (Nov. 12, 2015), https://www.bloomberg.com/news/features/2015-11-12/is-the-republican-party-s-killer-data-app-for-real- (describing Robert Mercer as the "fourth-largest" individual political donor in the United States).

[13]    Rosenberg et al., *supra* note 8.

the United States as Cambridge Analytica.[14]

## II.    To Help Its Customers Influence U.S. Political Elections, Cambridge Analytica Developed A Fraudulent Scheme To Harvest The Data Of Millions of American Voters.

23.    In 2014, Cambridge Analytica sought out a relationship with U.S. Senator Ted Cruz's planned campaign for the Republican presidential nomination. At the time, the company realized it did not possess nearly enough data about American voters for a U.S. presidential campaign.[15]

24.    The company needed a vast amount of data on virtually every American voter and knew it could not simply purchase that information. As such, Cambridge Analytica engineered a deceptive scheme to surreptitiously siphon that data from Facebook.

### A.    *Defendants hire Cambridge University professor Aleksandr Kogan to deceptively harvest data on 50 million Facebook users under the guise of "Academic Research."*

25.    In June 2014, Defendants entered into an arrangement with Cambridge University researcher Aleksandr Kogan and his company Global Science Research to collect the data they needed to create "psychographic profiles" on American voters.[16]

26.    Kogan was the key to gathering the quantity and quality of data Defendants sought because he could do it through a Facebook application[17] he created called "*thisisyourdigitallife.*"[18]

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 7 of 25

---

[14]    Andy Kroll, *Cloak and Data: The Real Story Behind Cambridge Analytica's Rise and Fall*, MOTHER JONES (Mar. 2018), https://www.motherjones.com/politics/2018/03/cloak-and-data-cambridge-analytica-robert-mercer/.

[15]    Rosenberg et al., *supra* note 8.

[16]    *Id.*

[17]    A Facebook application is an interactive software application developed to run on and utilize the Facebook platform.

[18]    *Id.*

7

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 8 of 25

27.     Facebook being one of the largest data mining companies in the world, Cambridge Analytica knew it could take advantage of its developer platform—and, in particular, its Graph API[19]—to gather swaths of data about every user *and their friends* who took the *thisisyourdigitallife* quiz.

      *i.*     *Facebook's Developer Platform.*

28.     Although primarily recognized for its eponymous social network, Facebook is also one of the largest data mining companies in the world. With over 200 million users in the United States alone, Facebook has exclusive access to an exorbitant amount of personal consumer data.[20]

29.     Facebook is uniquely able to directly link the data it accumulates on individuals' digital behaviors with the additional personal data that it extracts from users' Facebook accounts. The result is that Facebook obtains a holistic look at specific consumers' online and offline behaviors.[21] Facebook, in turn, receives significant monetary gain by permitting targeted advertising to its users through its platform.[22] It is therefore in Facebook's interests to encourage third party developers to utilize its platform so that it can gather even more information about users' online activities.

---

[19]     Graph API refers to Facebook's application programming interface, which is what allows third party developers to interact with Facebook's servers in order to access Facebook user data.

[20]     Kurt Wagner & Rani Molla, *Facebook Is Not Getting Any Bigger In The United States*, RECODE (Mar. 1, 2018), https://www.recode.net/2018/3/1/17063208/facebook-us-growth-pew-research-users ("More than two-thirds of Americans" use Facebook).

[21]     Nathan Ingraham, *Facebook Buys Data On Users' Offline Habits For Better Ads*, ENDGAGET (Dec. 30, 2016), https://www.engadget.com/2016/12/30/facebook-buys-data-on-users-offline-habits-for-better-ads/; Cade Metz, *How Facebook Knows When Its Ads Influence Your Offline Purchases*, WIRED (Dec. 11, 2014), https://www.wired.com/2014/12/facebook-knows-ads-influence-offline-purchases/.

[22]     *Cf.* Lisa Lacy, *Facebook Lets Brands Target Ads Based On Offline Behavior*, THE DRUM (Sept. 21, 2017), http://www.thedrum.com/news/2017/09/21/facebook-lets-brands-target-ads-based-offline-behavior.

30.     That's where Facebook's Software Development Kit ("SDK")[23] comes in. Facebook's SDK allows third party developers to add Facebook-related features to their websites or services. These features permit the developer's service to interact with Facebook in various ways. Relevant here is the ability to include a "Facebook Login," which lets visitors login to a website using their Facebook credentials.

31.     When an individual visits or uses a service using Facebook's SDK (*e.g.*, an app that includes a Facebook Login), information about the individual's online activities are transmitted back to Facebook. Facebook benefits from the additional behavioral information it receives and the app developer, in the Facebook Login example, benefits because its users can quickly sign in using their Facebook account.

32.     *thisisyourdigitallife* used Facebook's SDK Facebook Login, meaning that individuals seeking to take the personality quiz had to use their Facebook account credentials to access it.

ii.     <u>*Cambridge Analytica intentionally used Facebook Login to gather data on over 50,000,000 Facebook users.*</u>

33.     Under the false pretense of operating a personality test for academic research purposes, Kogan was able to get 270,000 Facebook users to take his personality quiz.

34.     To be clear, Cambridge Analytica, by way of Kogan, paid the majority of the 270,000 individuals to take his personality quiz. Kogan used a service called Amazon Mechanical Turk—which is an online platform that allows developers to hire people (sometimes called "turkers") to do simple tasks for small fees—to pay individuals $1 or $2 to complete the

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 9 of 25

---

[23]     An SDK generally refers to a set of software development tools that allow programmers to develop applications that interface with a specific software platform. Here, Facebook's SDK allows Facebook to release code for third party developers to use in order to interact with Facebook's platform.

test.

35.     There were two conditions: First, turkers had to be American. Second, turkers had

to use their Facebook account credentials to log into the quiz.

36.     By having turkers use Facebook Login to log into the personality quiz,

Defendants were able capitalize on the unguarded nature of Facebook's developer platform. That

meant developers were able to collect data on the Facebook user taking the test *and* information

about that user's friends.[24]

37.     That is, at that time, developers only needed permission from the user of the app

to access their friend's list. Once armed with this permission, a developer could then gather the

profile information of all the app user's Facebook friends[25] simply by querying the Graph API.[26]

38.     Kogan's academic research cover allowed him to gather the data at a rapid rate for

Cambridge Analytica.

39.     In fact, Cambridge Analytica's data grab of 50 million users was eventually

flagged and investigated by Facebook in 2014. But when it learned that the harvesting of this

data was to build personality profiles for academic purposes, Facebook allowed the data

collection to resume.[27]

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 10 of 25

---

[24]     Sue Halpern, *Cambridge Analytica, Facebook, and the Revelations of Open Secrets,* New Yorker, https://www.newyorker.com/news/news-desk/cambridge-analytica-facebook-and-the-revelations-of-open-secrets (last visited March 23, 2018).

[25]     Jonathan Albright, *The Graph API: Key Points in the Facebook and Cambridge Analytica Debacle,* Medium, https://medium.com/tow-center/the-graph-api-key-points-in-the-facebook-and-cambridge-analytica-debacle-b69fe692d747 (last visited March 23, 2018).

[26]     For this reason, it is also likely that Facebook's unrestricted developer tools were used by thousands of other companies to collect user data without consent. *See* Iraklis Symeonidis et al., *Collateral Damage of Facebook Apps: Friends, Providers, and Privacy Interdependence*, ICT Sys. Sec. & Privacy Prot. IFIP Advances in Info. & Commc'n Tech. 194–208 (2016), available at https://eprint.iacr.org/2015/456.pdf.

[27]     In 2015, Facebook learned the truth about why Cambridge Analytica was collecting the

10

40.    Through these unfair and deceptive practices, Defendants were able to eventually use the Facebook Login portal to gather the personal information of over 50 million Facebook users, including their ages, interests, pages they've liked, groups they belong to, physical locations, political affiliation, religious affiliation, relationships, and photos, as well as their full names, phone numbers, email addresses, and physical addresses. And for the 270,000 survey takers, Cambridge Analytica even had access to their private messages on Facebook.[28]

41.    This data was exactly what Defendants needed: rich personal data about users that was not only extremely valuable for "psychographic profiling" as explained in Section III below, but also detailed enough so that it could be matched to other records already in Cambridge Analytica's possession. With this information in hand, Cambridge Analytica could—and did—embark on its primary mission: creating a psychographic profile of every American adult in order to provide data analytics and messaging-related support for U.S. federal election campaigns.[29]

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 11 of 25

---

data—to influence and manipulate voters in the 2016 presidential election. In response, Facebook approached Cambridge Analytica requesting it delete the trove of data it had amassed. While Cambridge Analytica informed Facebook that it deleted the information, it never verified this fact and simply took the word of a company which had knowingly and intentionally violated Facebook's policies to steal 50 million users' information. And most importantly, Facebook *never* notified the 50 million affected Facebook users of the major privacy breach.

[28]    Greg Price, *Facebook Did Nothing To Stop Cambridge Analytica Data Breaches, New Class-Action Federal Lawsuit Claims,* Newsweek, http://www.newsweek.com/facebook-cambridge-analytica-data-lawsuit-855600(last visited March 23, 2018).

[29]    In many ways, Cambridge Analytica's use of the data aligned with Facebook's own intentions with its users' information. As noted, Facebook has a long history of performing experiments on its user base without their knowledge or consent. Facebook has sought to manipulate users' moods, actions on the website, interactions with Facebook "friends," and voting behaviors. *See, e.g.,* Robinson Meyer, *Everything We Know About Facebook's Secret Mood Manipulation Experiment,* THE ATLANTIC (June 28, 2014), http://theatln.tc/2l8BoZt; Robert M. Bond, et al., *A 61-Million-Person Experiment In Social Influence And Political Mobilization,* NATURE (Sept. 13, 2012), *available at* https://bit.ly/2G4c9hd.

## II.    Facebook Has A Rich History of Experimenting On Its Users.

42.    Facebook employs a "Core Data Science" team composed of programmers, statisticians, and psychologists to capitalize upon its access to vast amount of user data. Since as early as 2012, the Core Data Science team been conducting psychological experiments known as human subject research – actively intervening in people's (online) environments, measuring the behavioral impact of those interventions, and publishing the results in scientific journals.

43.    For example, over a one-week period in January 2012, Facebook manipulated the News Feeds[30] of nearly 700,000 Facebook users so that they contained proportionally fewer posts containing either positive or negative content, depending on which experimental group the participant was assigned to. This manipulation was, in some cases, drastic. Some participants, for example, had *ninety* percent of posts containing positive emotional content removed from their News Feed.

44.    To measure the effect of this experiment ("Emotional Manipulation Experiment"), Facebook then observed the corresponding emotional content of the participants' News Feed posts. The effects were described in an article published in a major, peer-reviewed academic journal ("the Kramer Article").[31] And they were, while small, statistically significant. Users exposed to proportionally fewer positive posts generated less positive content themselves, and vice versa. In other words, people exposed to more sad content were made sad, and people exposed to more happy content were made happy. And all of this occurred unbeknownst to the

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 12 of 25

---

[30]    The News Feed is the primary way that users consume content on Facebook. It is a scrollable series of "stories" generated by a user's friends, where "stories" may be anything from photos of friends to textual posts written by friends to linked news articles.

[31]    Adam D.I. Kramer, Jamie E. Guillory, and Jeffrey T. Hancock, Experimental Evidence of Massive-Scale Emotional Contagion Trough Social Networks, 111 Proc. Nat'l Acad. Sci. USA 8788 (2014), available at http://www.pnas.org/content/111/24/8788.full.html (last accessed October 1, 2014).

participants – the experiment showed "that emotional states can be transferred to others via emotional contagion, leading people to experience the same emotions *without their awareness*."[32]

45.     Highlighting the significance of the experiment, the Kramer Article noted that "given the massive scale of social networks such as Facebook, even small effects [like the manipulation of Facebook News Feeds] can have large aggregated consequences" and concluded that "the well-documented connection between emotions and physical well-being suggests the importance of these findings *for public health*."[33]

46.     This "Emotional Manipulation Experiment" is just the tip of the iceberg. Facebook has conducted and published scores of similar experiments in the past, and intends to continue conducting and publishing similar experiments in the future.

47.     Facebook has conducted and continues to conduct a wide array of human subject research experiments. For example, in one experiment conducted in 2010, Facebook tested how much of an effect it could have on a user's likelihood to vote.[34] For that experiment (the "Voting Manipulation Experiment"), every single American who signed onto Facebook on voting day— approximately 60 million people—was a participant.

48.     Other published Facebook experiments have tested things ranging from the effect of hiding links that friends shared with each other (approximately 253 million experiment subjects) (the "Link Manipulation Experiment"),[35] to the effect of automatically broadcasting

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 13 of 25

---

[32]     *Id.* (emphasis added).

[33]     *Id.* at 8790 (emphasis added).

[34]     Robert M. Bond et al., *A 61-Million-Person Experiment in Social Influence and Political Mobilization*, 489 NATURE 295 (2012), available at http://cameronmarlow.com/media/massive_turnout.pdf (last accessed October 1, 2014).

[35]     Eytan Bakshy, *The Role of Social Networks in Information Diffusion*, WWW: Int'l World

users' online shopping purchases (approximately 1.2 million experiment subjects),[36] to the effect of having user names and likenesses automatically "endorse" advertisements (approximately 29 million experiment subjects).[37]

49.    At one point, Facebook was running so many experiments on its users that "some [members of the Core Data Science Team] worried that the same users, who were anonymous, might be used in more than one experiment, tainting the results."[38]

50.    Facebook intends to continue conducting human subject research without obtaining informed consent. Sheryl Sandberg, for example, explained that the Emotional Manipulation Experiment as just "part of ongoing research companies do to test different products."[39] And Adam D. I. Kramer—lead author of the Emotional Manipulation Experiment— noted in a Facebook post defending his experiment that Facebook has "been working on improving [their] internal review policies" for experiments since 2012.

51.    In fact, Facebook issued a blog post defending their ongoing practice of conducting human subject research without obtaining informed consent.[40] In that post, Facebook

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 14 of 25

---

Wide Web Conf. 2012, available at http://cameronmarlow.com/media/bakshy-the_role-2012b.pdf (last accessed October 1, 2014).

[36]    *See* Sean J. Taylor, Eytan Bakshy, Sinan Aral, *Selection Effects in Online Sharing: Consequences for Peer Adoption*, available for download at https://www.facebook.com/publications/266725986806102/ (last accessed October 1, 2014).

[37]    Eytan Bakshy, Dean Eckles, Rong Yan, Itamar Rosenn, *Social Influence in Social Advertising: Evidence from Field Experiments,* available at http://arxiv.org/pdf/1206.4327v1.pdf (last accessed October 1, 2014).

[38]    *See* Reed Albergotti and Elizabeth Dwoskin, *Facebook Study Sparks Soul-Searching and Ethical Questions*, *Wall St. J.*, June 30, 2014, available at http://online.wsj.com/articles/facebook-study-sparks-ethicalquestions-1404172292.

[39]    R. Jai Krishna, *Sandberg: Facebook Study Was 'Poorly Communicated'*, available at http://blogs.wsj.com/digits/2014/07/02/facebooks-sandberg-apologizes-for-news-feed-experiment/ (last accessed October 1, 2014).

[40]    *See* "Research at Facebook," available at

explicitly acknowledges the problematic nature of the Emotional Manipulation Experiment. But instead of agreeing to abide by the same laws all other research organizations do (and obtain informed consent from its users), Facebook concludes that a few self-regulated changes to its research policies will remedy the situation.

52.     And Facebook's job postings reaffirm their commitment to the continuation of internal human subject research. One posting, for the position of "Data Scientist, Identity Research & Modeling" seeks a candidate with a Ph. D. and an expertise in "social psychology" to help "develop high-quality models of people's online identity."[41]

53.     The reason that Facebook is conducting these experiments and publishing the results is to demonstrate its influence over user behavior. Though selling ad space has generated enormous profits for Facebook already, Facebook knows that advertisers, political campaigns, and its business partners will pay exponentially more money for the ability to manipulate its users into making decisions that they want them to make.

54.     Facebook knows that this capability is especially attractive to political campaigns, which, as Facebook knows, are spending record amounts of money on political ads, even in non-election years.[42] It therefore began developing tools for campaigns that wanted to target certain segments with political ads, including by tracking users to determine their political leanings and tendencies. As proof of concept, Facebook demonstrated through its Voting Manipulation Experiment that it could influence whether its users voted or not.

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 15 of 25

---

http://newsroom.fb.com/news/2014/10/research-at-facebook/ (last accessed August 23, 2018).

[41]     Facebook Job Posting, available at https://www.facebook.com/careers/department?dept=data&req=a01A000000CzAeDMAV (last accessed October 1, 2014).

[42]     Megan Janetsky, *Low transparency, low regulation online political ads skyrocket*, OPENSECRET, https://www.opensecrets.org/news/2018/03/low-transparency-low-regulation-online-political-ads-skyrocket/ (last visited March 23, 2018).

55.     This demonstration sent a signal to the public at large that it has the ability to influence and manipulate the behavior of users on its platform, especially with respect to voting.

56.     By doing so, Facebook tacitly invited electioneering companies like Cambridge Analytica to harvest its data for purposes of profiling users and targeting them with tailored messaging that would dependably influence and manipulate their behavior. It is through this lens that the relationship between Facebook and Cambridge Analytica must be viewed.

**III.    Armed With Swaths of Misappropriated Data, Cambridge Analytica Created "Psychographic Profiles" On Every American Adult, Which It Claims Helped It Have Significant Influence On The Outcome Of The 2016 Presidential Election.**

57.     Armed with Facebook's own political targeting tools and a trove of sensitive data it was not supposed to have access to, Cambridge Analytica was able to create "psychographic profiles" on millions of American voters that it used to "significantly influence . . . the outcome of the 2016 presidential election."[43]

58.     Broadly speaking, psychographic profiling is a marketing tool that combines a detailed psychological analysis of an individual using various data points about their interests, activities, opinions, and motivations. These data points can then be layered on top of demographic information such as race, gender, and age.

59.     Psychographic profiling tools—including Cambridge Analytica's—can combine assessments of a person's innate personality characteristics with predictions of, for instance, their voting behavior, to create hyper-focused predictions about not only what people will do, but what will motivate them to do it.

60.     The personality traits that Cambridge Analytica has claimed can be predicted

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 16 of 25

---

[43]     *Make America Number 1*, CAMBRIDGE ANALYTICA
http://cambridgeanalytica.org/casestudies/casestudymakeamericanumber12016+&cd=1&hl=en&
ct=clnk&gl=us (last visited Mar. 23, 2018).

16

through psychographic profiling included, most importantly, a person's OCEAN ratings, a common personality type classification method that looks at five factors: Openness, Conscientiousness, Extraversion, Agreeableness, and Neuroticism.[44] In addition, Cambridge Analytica has claimed to be able to predict—based on the data it possesses—an individual's age, political views, religion, profession, whether they are fair-minded or suspicious of others, and even (ironically) whether they prefer to disclose facts about themselves to others or value their privacy.

61.     According to Cambridge Analytica, this allowed its clients to bypass individuals' cognitive defenses by appealing directly to their emotions, using increasingly segmented and sub-grouped personality type designations and precisely targeted messaging based on those designations.[45]

62.     Using these techniques, Cambridge Analytica claims to have "provided the Donald J. Trump for President campaign with the expertise and insight that helped win the White House."[46] Cambridge Analytica provided the Donald J. Trump for President campaign with its Facebook data-enabled psychographic profiling tool to help, on information and belief, with voter identification and outreach, advertising spending decisions, voter turnout modeling, and even helping to set then-candidate Trump's travel schedule based on where Cambridge Analytica believed he would be most likely to drum up support within the "swing states" crucial to his

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 17 of 25

---

[44]     Erin Brodwin, *Here's the personality test Cambridge Analytica had Facebook users take,* BUSINESS INSIDER, http://www.businessinsider.com/facebook-personality-test-cambridge-analytica-data-trump-election-2018-3

[45]     Nina Burleigh, *How Big Data Mines Personal Info To Craft Fake News And Manipulate Voters,* NEWSWEEK (June 8, 2017), http://www.newsweek.com/2017/06/16/big-data-mines-personal-info-manipulate-voters-623131.html.

[46]     *Donald J. Trump for President,* CAMBRIDGE ANALYTICA, https://political.production.k8s.e.cambridgeanalytica.org/casestudies (last visited March 23, 2018).

securing of the presidency.

63.     The data was not just used for purposes of motivating enthusiastic Trump

supporters, or even just to target and convince skeptical or undecided voters. Rather, Cambridge

Analytica used its data to also engage in a broad voter suppression campaign to discourage

supporters (or potential supporters) of Trump's opponent, Hillary Clinton, from voting. For

example, Cambridge Analytica used its psychographic profiling tool to help generate a brand of

negative "Defeat Crooked Hillary" advertisements that—through the promotional help of a

Trump-affiliated super PAC, Make America Number 1—was watched over 30 million times

during the campaign.[47]

64.     Broadly, this psychographic mapping tool was crucial to Trump's campaign

strategy, and thus, its ultimate success: Trump was elected president, and Cambridge Analytica

walked away millions of dollars richer, with a clear confirmation that its psychographic mapping

was working.

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 18 of 25

## FIRST CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505, et seq.**
**(On Behalf of Plaintiff People of the State of Illinois Against Cambridge Analytica)**

65.     Plaintiff People of the State of Illinois incorporates the foregoing allegations as if

fully set forth herein.

66.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act,

815 ILCS 505, *et seq.* ("ICFA"), provides:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use or employment of any deception fraud,
> false pretense, false promise, misrepresentation or the concealment,

---

[47]     *Exposed: Undercover Secrets Of Trump's Data Firm*, CHANNEL 4 (Mar. 20, 2018),
https://www.channel4.com/news/exposed-undercover-secrets-of-donald-trump-data-firm-
cambridge-analytica.

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 19 of 25

suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration should be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

67.     While conducting trade or commerce, Cambridge Analytica has engaged in conduct constituting a deceptive act or practice declared unlawful under Section 2 of the ICFA, inasmuch as it knowingly made deceptive and false representations about the nature of its survey-taking app, the nature of the data it was collecting, and the purposes for which the data was being collected and would be used.

68.     Cambridge Analytica intended that Facebook and the public, including Illinois residents, rely on its deceptive representations and communications regarding the supposedly "academic" purpose of its app and the reasons it was collecting troves of their personal Facebook data.

69.     Cambridge Analytica also engaged in deceptive and unlawful conduct by exfiltrating the Facebook data of 50 million users without their consent and in direct violation of the Facebook user and developer agreements, which expressly require developers to agree to the following terms:

II. Data Collection and Use

1.     You will only request the data you need to operate your application.

2.     You may cache data you receive through use of the Facebook API in order to improve your application's user experience, but you should try to keep the data up to date. This permission does not give you any rights to such data.

\*      \*      \*

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 20 of 25

4.   Until you display a conspicuous link to your privacy policy in your app, any data accessed by your app (including basic account information) may only be used in the context of the user's experience in that app. *A user's friends' data can only be used in the context of the user's experience on your application.*

5.   Subject to certain restrictions, including on use and transfer, users give you their basic account information when they connect with your application. *For all other data obtained through use of the Facebook API, you must obtain explicit consent from the user who provided the data to us before using it for any purpose other than displaying it back to the user on your application.*

6.   *You will not directly or indirectly transfer any data you receive from us, including user data or Facebook User IDs, to (or use such data in connection with) any ad network, ad exchange, data broker, or other advertising or monetization related toolset, even if a user consents to such transfer or use. By indirectly we mean you cannot, for example, transfer data to a third party who then transfers the data to an ad network. By any data we mean all data obtained through use of the Facebook Platform (API, Social Plugins, etc.), including aggregate, anonymous or derivative data.*

\*       \*       \*

9.   *You will not sell or purchase any data obtained from us by anyone.* If you are acquired by or merge with a third party, you can continue to use user data within your application, but you cannot transfer data outside your application.

\*       \*       \*

11.   *You cannot use a user's friend list outside of your application*, even if a user consents to such use, but you can use connections between users who have both connected to your application.

(Facebook's August 20, 2013 Platform Policies) (emphasis added).

70.   Cambridge Analytica violated these mandatory user privacy protections by posing as an academic researcher, gaining access to Facebook user data under false pretenses, using such data for psychographic analysis and electioneering, harvesting users' friend lists for psychographic analysis and electioneering, disclosing all collected and harvested user data to its

affiliates and clients, and reaping substantial profits therefrom.

71.    This conduct was unlawful because it violated the personal privacy rights of
millions of Illinois residents.

72.    This conduct was also deceptive and unfair. Many other consulting firms attempt
to do what Cambridge Analytica does, but without employing deception—typically by
purchasing and compiling readily-available consumer and voter file data to create detailed voter
profiles.

73.    Instead, Cambridge Analytica sought to gain a leg up on its competition by
illicitly collecting the Facebook data on millions of Illinois residents, through a false promise
that such data would only be used for academic purposes.

74.    Thus, Cambridge Analytica's conduct constitutes an unfair and deceptive act or
practice under the ICFA.

75.    Pursuant to 815 ILCS 505/7(b), the penalty for violating the ICFA is a sum not to
exceed $50,000, or, if the Court finds that Defendants' above-described practices were intended
to defraud Illinois residents, $50,000 per violation.

76.    In addition to any other civil penalty provided, if a person is found by the Court to
have engaged in any method, act, or practice declared unlawful under the ICFA, and the
violation was committed against a person 65 years of age or older, the Court may impose an
additional civil penalty in a sum not to exceed $10,000 per violation. 815 ILCS 505/7(c).

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 21 of 25

## SECOND CAUSE OF ACTION
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505, et seq.
### (On Behalf of Plaintiff People of the State of Illinois Against Facebook)

77.    Plaintiff People of the State of Illinois incorporates the foregoing allegations as if
fully set forth herein.

78.     The ICFA prohibits conduct that is deceptive or unlawful.

79.     Facebook engaged in unfair and deceptive conduct by making representations to consumers that were knowingly false. Specifically, Facebook represented to its users that their personal data would be protected in accordance with its user and developer agreements.

80.     Despite these material representations, Facebook permitted third parties, including Cambridge Analytica, to collect and harvest its users' personal data, including such sensitive information as their private messages, for purposes of profiling and targeting them with tailored messaging that would dependably influence and manipulate their behavior.

81.     Facebook had actual knowledge that Cambridge Analytica gained unauthorized access to its users' personal data without their knowledge or consent and in express violation of its user and developer agreements, yet did not put a stop to it.

82.     The consequences of these false misrepresentations were further compounded by Facebook's decision, upon learning that Cambridge Analytica had misappropriated user data for political purposes, to conceal the breach from its users and do nothing more than quietly (and unsuccessfully) ask Cambridge Analytica to delete the data.

83.     By concealing this misconduct from its users, Facebook avoided backlash over its blatant misrepresentations from its users and preserved the strength of its data mining operation by avoiding a situation where its users reacted by deactivating their accounts.

84.     Facebook allowed Cambridge Analytica to secretly harvest its users' data and build psychographic profiles of each of them so that it could influence and manipulate their behavior in the 2016 presidential election.

85.     Facebook admits that it violated its users' privacy rights by allowing Cambridge Analytica to harvest their data. On March 21, 2018, Facebook's Chief Executive Officer Mark

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 22 of 25

22

Zuckerberg issued a public statement conceding that it breached the trust of "the people who share their data with us and expect us to protect it."[48] Facebook Chief Operating Officer Sheryl Sandberg likewise conceded that Facebook committed "a major violation of the people's trust" when it allowed Cambridge Analytica to collect user data and that she "deeply regret[s] that [Facebook] didn't do enough to deal with it."[49]

86.     Facebook's conduct constitutes an unfair and deceptive act or practice under the ICFA.

87.     Pursuant to 815 ILCS 505/7(b), the penalty for violating the ICFA is a sum not to exceed $50,000, or, if the Court finds that Facebook's above-described practices were intended to defraud Illinois residents, $50,000 per violation.

88.     In addition to any other civil penalty provided, if a person is found by the Court to have engaged in any method, act, or practice declared unlawful under the ICFA, and the violation was committed against a person 65 years of age or older, the Court may impose an additional civil penalty in a sum not to exceed $10,000 per violation. 815 ILCS 505/7(c).

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 23 of 25

### THIRD CAUSE OF ACTION
#### Declaratory and Injunctive Relief
#### (On Behalf of the People of the State of Illinois Against Defendants)

89.     Plaintiff People of the State of Illinois incorporates the foregoing allegations as if fully set forth herein.

90.     Pursuant to 735 ILCS 5/2-701, this Court "may make binding declarations of rights, having the force of final judgments . . . including the determination . . . of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a

---

[48]     Mark Zuckerberg Update on Cambridge Analytica Situation, FACEBOOK, INC. (March 21, 2018), https://www.facebook.com/zuck/posts/10104712037900071.

[49]     Sheryl Sandberg Post Addressing the Cambridge Analytica News, FACEBOOK, INC. (March 21, 2018), https://www.facebook.com/sheryl/posts/10160055807270177.

declaration of the rights of the parties interested."

91.     Such a declaration of rights "may be obtained . . . as incident to or part of a complaint . . . seeking other relief as well." 735 ILCS 5/2-701(b).

92.     Plaintiff People of the State of Illinois seeks a judgment declaring that Defendants have violated the ICFA.

93.     Upon information and belief, Defendants remain in possession of the highly personal Facebook user data that it unlawfully obtained. Millions of Illinois residents will continue to suffer or be vulnerable to injury, unless this is rectified through injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff People of the State of Illinois respectfully requests that the Court enter an Order granting the following relief:

A.     Declaring that Defendants' actions constitute violations of the ICFA;

B.     Fining Defendants $50,000 for violating the ICFA or, if the Court finds that Defendants engaged in the above-described conduct with intent to defraud, $50,000 for each such violation;

C.     Fining Cambridge Analytica an additional $10,000 for each violation described above involving an Illinois resident 65 years of age or older for each day such violation has existed and continues to exist;

D.     Awarding Plaintiff its reasonable attorneys' fees and costs;

E.     Awarding Plaintiff pre- and post-judgment interest, to the extent allowable;

F.     Awarding such and other injunctive and declaratory relief as is necessary; and

G.     Awarding such other and further relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all matters that can be so tried.

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 24 of 25

Dated: March 23, 2018

**KIMBERLY M. FOXX,**
**State's Attorney of Cook County**

By: /s/ Kent. S. Ray

Kent S. Ray
Assistant State's Attorney
kent.ray@cookcountyil.gov
COOK COUNTY STATE'S ATTORNEY'S OFFICE
69 W. Washington Street, Suite 3130
Chicago, Illinois 60602
Tel: 312.603.8600
Fax: 312.603.9830

Respectfully submitted,

**Special Assistant State's Attorneys\***

By: /s/ Jay Edelson

Jay Edelson*
jedelson@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Ari J. Scharg*
ascharg@edelson.com
David I. Mindell*
dmindell@edelson.com
Alfred K. Murray II*
amurray@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

*Petition for Appointment as Special
State's Attorney Pending*

ELECTRONICALLY FILED
3/23/2018 6:55 PM
2018-CH-03868
PAGE 25 of 25

Case:Case-1:1v-023867 28v3 mDocumenite1 File6: 04/42/048/12dge 3PageS9Page6iD #:44

**Summons - Alias Summons**                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE ILLINOIS EX REL.
KIMBERLY M. FOXX, STATE'S ATTORNEY OF
COOK COUNTY, ILLINOIS

No.  2018-CH-03868

v.

FACEBOOK, INC.; SCL GROUP LIMITED;
CAMBRIDGE ANALYTICA

Defendant Address:
FACEBOOK, INC.
R/A ILLINOIS CORPORATION SERVICE
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

☑ SUMMONS  ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room <u>802</u>                       ,Chicago, Illinois 60602

☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows           ☐ District 4 - Maywood
   5600 Old Orchard Rd.           2121 Euclid 1500                          Maybrook Ave.
   Skokie, IL 60077               Rolling Meadows, IL 60008                 Maywood, IL 60153

☐ District 5 - Bridgeview      ☐ District 6 - Markham                    ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                     50 W. Washington, LL-01
   Bridgeview, IL 60455          Markham, IL 60428                        Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE
RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: <u>62075</u>

Name: <u>EDELSON PC</u>

Atty. for:  PEOPLE OF THE STATE ILLINOIS EX REL. KIMBERLY
M. FOXX, STATE'S ATTORNEY OF COOK COUNTY,
ILLINOIS

Address:  <u>350 N LASALLE 13TH FL</u>

City/State/Zip Code:  <u>CHICAGO, IL 60654</u>

Telephone:  <u>(312) 589-6370</u>

Primary Email Address: <u>jedelson@edelson.com</u>

Secondary Email Address(es):

<u>docket@edelson.com</u>

Witness:            Friday, 23 March 2018

/s DOROTHY BROWN
DOROTHY BROWN, Clerk of Court

Date of Service: MARCH 27, 2018 M.L.
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

Summons - Alias Summons                                                    (12/31/15) CCG N001

---

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE ILLINOIS EX REL.
KIMBERLY M. FOXX, STATE'S ATTORNEY OF
COOK COUNTY, ILLINOIS

v.

FACEBOOK, INC.; SCL GROUP LIMITED;
CAMBRIDGE ANALYTICA

No. 2018-CH-03868

Defendant Address:
CAMBRIDGE ANALYTICA
R/A THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER 1209 ORANGE ST
WILMINGTON, DE 19801

☑ SUMMONS  ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 _____ ,Chicago, Illinois 60602
☐ District 2 - Skokie            ☐ District 3 - Rolling Meadows       ☐ District 4 - Maywood
   5600 Old Orchard Rd.            2121 Euclid 1500                      Maybrook Ave.
   Skokie, IL 60077                Rolling Meadows, IL 60008             Maywood, IL 60153
☐ District 5 - Bridgeview        ☐ District 6 - Markham               ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                 50 W. Washington, LL-01
   Bridgeview, IL 60455           Markham, IL 60428                     Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE
RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 62075

Name:  EDELSON PC

Atty. for:  PEOPLE OF THE STATE ILLINOIS EX REL. KIMBERLY
            M. FOXX, STATE'S ATTORNEY OF COOK COUNTY,
            ILLINOIS

Address:  350 N LASALLE 13TH FL

City/State/Zip Code:  CHICAGO, IL 60654

Telephone:  (312) 589-6370

Primary Email Address:  jedelson@edelson.com

Secondary Email Address(es):

docket@edelson.com

Witness:      Friday, 23 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)  (Facsimile Telephone Number)

---

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE ILLINOIS EX REL.
KIMBERLY M. FOXX, STATE'S ATTORNEY OF
COOK COUNTY, ILLINOIS

v.

FACEBOOK, INC.; SCL GROUP LIMITED;
CAMBRIDGE ANALYTICA

No. 2018-CH-03868

Defendant Address:
SCL GROUP LIMITED
1901 PENNSYLVANIA AVENUE NW  SUITE 902
WASHINGTON, DC 20006

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802                      ,Chicago, Illinois 60602

☐ District 2 - Skokie
   5600 Old Orchard Rd.
   Skokie, IL 60077

☐ District 3 - Rolling Meadows
   2121 Euclid 1500
   Rolling Meadows, IL 60008

☐ District 4 - Maywood
   Maybrook Ave.
   Maywood, IL 60153

☐ District 5 - Bridgeview
   10220 S. 76th Ave.
   Bridgeview, IL 60455

☐ District 6 - Markham
   16501 S. Kedzie Pkwy.
   Markham, IL 60428

☐ Richard J. Daley Center
   50 W. Washington, LL-01
   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 62075

Name: EDELSON PC

Atty. for: PEOPLE OF THE STATE ILLINOIS EX REL. KIMBERLY M. FOXX, STATE'S ATTORNEY OF COOK COUNTY, ILLINOIS

Address: 350 N LASALLE 13TH FL

City/State/Zip Code: CHICAGO, IL 60654

Telephone: (312) 589-6370

Primary Email Address: jedelson@edelson.com

Secondary Email Address(es):

docket@edelson.com

Witness: Friday, 23 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

*People of the State of Il.* )
*ex rel: Kimberley M. Foxx* )
      **Plaintiff(s),** )
               )
            **v.** )       **Case No.** *18 CH 03868*
*Facebook, Inc. et al.* )
               )
      **Defendant(s).** )

## ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL

THIS CAUSE being properly before the Court, and the Court being advised in the premises:

☐    IT IS ORDERED THAT: Pursuant to a Petition for Substitution of Judge as a matter of right timely filed by the ☐ Plaintiff _____ ☐ Defendant _____
☐ Other _____, which has been granted, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment.

☐    IT IS ORDERED THAT: Pursuant to a Petition for Substitution of Judge For Cause filed by ☐ Plaintiff _____ ☐ Defendant _____
☐ Other _____, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment for hearing on the motion.

☑    IT IS ORDERED THAT: The assigned judge having recused himself/herself pursuant to Supreme Court Rule 63(c) and having withdrawn from further proceedings in this cause, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment.

                       ENTERED:                      Judge Pamela McLean Meyerson

Dated: _____                                      APR 05 2018
                        Judge                   Judge's No. Circuit Court – 2097

## REASSIGNMENT ORDER (SUBSTITUTION OF JUDGE OR RECUSAL)

THIS CAUSE having been transferred to the Presiding Judge of the Chancery Division by Judge _____, Calendar _____, pursuant to the above order dated _____ for reassignment pursuant to a ☐ Petition for Substitution of Judge as of Right ☐ Petition for Substitution of Judge for Cause ☐ Recusal by the judge, and the Court having randomly reassigned the matter;

☐    IT IS ORDERED THAT: This case is transferred to Calendar _____, Judge _____ for hearing on all matters.

☐    IT IS ORDERED THAT: This case is transferred to Calendar _____, Judge _____ for the sole purpose of hearing the Petition for Substitution of Judge for Cause. Upon resolution of the Motion, the case shall be returned to the Presiding Judge for the appropriate assignment.

                       ENTERED:

Dated: _____

                       Judge Moshe Jacobius          No. 1556

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

*People of the State of Il.,*
*et rel: Kimberley M. Foxx*                     )
        **Plaintiff(s),**                           )
                      )       **Case No.** *18 CH 03868*
          **v.**                                    )
*Facebook, Inc. et al.*                        )
        **Defendant(s).**                          )

## ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL

THIS CAUSE being properly before the Court, and the Court being advised in the premises:

☐    IT IS ORDERED THAT:  Pursuant to a Petition for Substitution of Judge as a matter of right timely filed by the ☐ Plaintiff _____ ☐ Defendant _____
☐ Other _____, which has been granted, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment.

☐    IT IS ORDERED THAT:  Pursuant to a Petition for Substitution of Judge For Cause filed by ☐ Plaintiff _____ ☐ Defendant _____
☐ Other _____, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment for hearing on the motion.

☒    IT IS ORDERED THAT:  The assigned judge having recused himself/herself pursuant to Supreme Court Rule 63(c) and having withdrawn from further proceedings in this cause, the above entitled cause is hereby transferred to the Presiding Judge of the Chancery Division for reassignment.

ENTERED:                                              Judge Pamela McLean Meyerson

APR 05 2018

Dated: _____

Judge _____                               Judge's No. _____
                                             Circuit Court – 2097

## REASSIGNMENT ORDER (SUBSTITUTION OF JUDGE OR RECUSAL)

THIS CAUSE having been transferred to the Presiding Judge of the Chancery Division by Judge *Myerson*, Calendar 11, pursuant to the above order dated *4/5/18* for reassignment pursuant to a ☐ Petition for Substitution of Judge as of Right ☐ Petition for Substitution of Judge for Cause ☐ Recusal by the judge,  and the Court having randomly reassigned the matter;

☒    IT IS ORDERED THAT: This case is transferred to Calendar *7*, Judge *LARSEN* for hearing on all matters.

☐    IT IS ORDERED THAT:  This case is transferred to Calendar ____, Judge _____ for the sole purpose of hearing the Petition for Substitution of Judge for Cause.  Upon resolution of the Motion, the case shall be returned to the Presiding Judge for the appropriate assignment.

ENTERED
JUDGE DIANE J. LARSEN-1771

ENTERED: *Diane Joan Larsen*

Dated: APR 05 2018

DOROTHY BR___
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY IL
DEPUTY CLERK

Judge ~~Moshe Jacobius~~                          No. ~~1556~~
*Acting*

# Exhibit B

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PEOPLE OF THE STATE OF ILLINOIS,   §
ex. Rel. Kimberly M. Foxx, State's Attorney   §
of Cook County, Illinois,   §    **Removed from the Circuit Court of**
  §    **Cook County, Illinois, County**
    *Plaintiff,*   §    **Department, Chancery Division**
v.   §    **No. 2018-CH-03868**
  §
FACEBOOK, INC., SCL GROUP   §
LIMITED, and CAMBRIDGE   §
ANALYTICA LLC,   §
  §    **Civil Action No. _____**
    *Defendants.*   §

I and my firm are appearing in this matter on behalf of Defendants SCL Group Limited ("SCL") and Cambridge Analytica LLC ("Cambridge Analytica"). Pursuant to 28 U.S.C. § 1446(b)(2)(A), I hereby certify that SCL and Cambridge Analytica consent to and join in the removal of this action to the United States District Court for the Northern District of Illinois.

DATED: April 12, 2018

                MILBANK, TWEED, HADLEY & MCCLOY LLP

                By: _____
                Mark C. Scarsi
                 mscarsi@milbank.com
                Ashlee N. Lin
                 anlin@milbank.com
                2029 Century Park East, 33rd Floor
                Los Angeles, CA 90067
                Tel: 424.386.4580
                Fax: 213.892.4780

                *Counsel for Defendants SCL Group Limited and*
                *Cambridge Analytica LLC*

**Exhibit C**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | § | |
| ex. rel. Kimberly M. Foxx, State's Attorney | § | |
| of Cook County, Illinois, | § | |
| | § | Case No. 1:18-cv-_____ |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| FACEBOOK, INC., | § | |
| SCL GROUP LIMITED, and | § | |
| CAMBRIDGE ANALYTICA LLC, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## NOTICE OF REMOVAL TO ADVERSE PARTIES

To:

Kent S. Ray
Assistant State's Attorney
COOK COUNTY STATE 'S
ATTORNEY'S OFFICE
69 West Washington Street, Suite 3130
Chicago, Illinois 60602

Jay Edelson
Benjamin H. Richman
Ari J. Scharg
David I. Mindell
Alfred K. Murray II
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654

PLEASE TAKE NOTICE THAT, on April 12, 2018, Defendant Facebook, Inc. ("Facebook") filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, removing the above-captioned action to the United States District Court for the Northern District of Illinois, Eastern District. A true and correct copy of the Notice of Removal of this action to the United States District Court for the Northern District of Illinois is attached hereto, pursuant to the provisions of 28 U.S.C. § 1446(d).

This Notice is served upon you as counsel of record for Plaintiff in compliance with 28 U.S.C. § 1446.


DATED:  April 13, 2018                    Respectfully submitted,


                                          **EIMER STAHL LLP**

                                          By: /s/ Nathan P. Eimer
                                          Nathan P. Eimer
                                          Susan M. Razzano
                                          EIMER STAHL LLP
                                          224 South Michigan Avenue
                                          Suite 1100
                                          Chicago, IL 60604
                                          (312) 660-7600
                                          NEimer@eimerstahl.com
                                          SRazzano@eimerstahl.com
                                          Firm ID No. 49152

                                          **GIBSON, DUNN & CRUTCHER, LLP**

                                          By:  /s/  Orin Snyder
                                          Orin Snyder (*pro hac vice* forthcoming)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          200 Park Avenue
                                          New York, NY 10166-0193
                                          Telephone:  212.351.4000
                                          Facsimile:  212.351.4035
                                          Osnyder@gibsondunn.com

                                          Joshua S. Lipshutz (*pro hac vice* forthcoming)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, DC 20036-5306
                                          Telephone:  202.955.8500
                                          Facsimile:  202.467.0539
                                          Jlipshutz@gibsondunn.com

                                          Kristin A. Linsley (*pro hac vice* forthcoming)
                                          Brian M. Lutz (*pro hac vice* forthcoming)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          555 Mission Street, Suite 3000
                                          San Francisco, CA 94105-0921
                                          Telephone:  415.393.8200
                                          Facsimile:  415.393.8306

Klinsley@gibsondunn.com
Blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2018, the foregoing Notice to Adverse Parties was sent by electronic mail and filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Kent S. Ray
Assistant State's Attorney
kent.ray@cookcountyil.gov
COOK COUNTY STATE 'S
ATTORNEY'S OFFICE
69 West Washington Street, Suite 3130
Chicago, Illinois 60602
Tel: 312.603.8600

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
David I. Mindell
dmindell@edelson.com
Alfred K. Murray II
amurray@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

*/s/ Nathan P. Eimer*

# Exhibit D

Case Case:8:18-cv-03668 Document #: 4-9iled: Filed 124/13/48 Page Page 59 of 50 of #:56

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex. Rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| FACEBOOK, INC., SCL GROUP LIMITED, and CAMBRIDGE ANALYTICA LLC, | § § § § | Civil Action No. 2018-CH-03868 |
| *Defendants.* | § § § § | |

---

### NOTICE TO CIRCUIT COURT CLERK OF REMOVAL TO FEDERAL DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, and 1446

---

To:     Clerk of the Circuit Court of
        Cook County, Illinois
        Richard J. Daley Center, Room 802
        50 West Washington Street
        Chicago, Illinois 60602

PLEASE TAKE NOTICE THAT, on April 12, 2018, Defendant Facebook, Inc. ("Facebook") filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, removing the above-captioned action to the United States District Court for the Northern District of Illinois, Eastern District. A true and correct copy of the Notice of Removal is attached hereto as <u>Exhibit A</u>, and a true and correct copy of the Notice of Removal to All Adverse Parties is attached hereto as <u>Exhibit B</u>.

Upon the filing of the Notice of Removal with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, and filing copies thereof with the Clerk of

Case 3:18-cv-03643-VC   Document 4-5   Filed 04/17/18   Page 60 of 60 #:57

the Circuit Court of Cook County, Illinois, Facebook has effected removal, and the Circuit Court

shall proceed no further in this action unless and until the case is remanded pursuant to

28 U.S.C. § 1446(d).


DATED:  April 13, 2018                    Respectfully submitted,


                                          /s/ Nathan P. Eimer
                                          _____

                                          Nathan P. Eimer
                                          Susan M. Razzano
                                          EIMER STAHL LLP
                                          224 South Michigan Avenue
                                          Suite 1100
                                          Chicago, IL 60604
                                          (312) 660-7600
                                          NEimer@eimerstahl.com
                                          SRazzano@eimerstahl.com
                                          Firm ID No. 49152

                                          *Attorneys for Defendant Facebook, Inc.*