BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:  FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION | MDL DOCKET NO. 2843 |

## NOTICE OF ERRATA

Pursuant to the request of the Clerk's office, Facebook, Inc. ("Facebook") hereby submits this Notice of Errata to provide the current docket information regarding two actions identified in Facebook's April 13, 2018 Notice of Related Action (ECF 49):

1.    *Sanford Buckles v. Facebook, Inc.*, United States District Court for the Northern District of California (Oakland Division), No. 4:18-CV-02189; and

2.    *Lucy Gerena v. Facebook, Inc.*, United States District Court for the Northern District of California (San Francisco Division), No. 3:18-CV-02201.

This current case information has been updated in the attached Schedule of Actions and Proof of Service, which were originally filed on April 13, 2018.  Exhibits A and B provide updated docket sheets and complaints reflecting the current case numbers.

RECEIVED
18-2105
APR 19 2018

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Dated:  April 16, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:___/s/ *Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 300
San Francisco, CA 94105
Tel: 415.393.8379
Fax: 415.374.8474
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Facebook, Inc.*

**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION | MDL DOCKET NO. 2843 |

## SCHEDULE OF ACTIONS (TO BE ADDED TO EXISTING SCHEDULE)

| # | Case Name | District | Case No. / Filing Date | Assigned Judge |
|---|-----------|----------|------------------------|----------------|
| 1 | Sanford Buckles v. Facebook, Inc. | Northern District of California (Oakland Division) | Case No. 4:18-CV-02189 Filed: 04/12/2018 | Magistrate Judge Kandis A. Westmore |
| 2 | Timothy Scott Burton, Jr. v. Facebook, Inc., Mark Zuckerberg, and Sheryl Sandberg | Central District of Illinois (Urbana Division) | Case No.: 2:18-CV-02105 Filed: 04/12/2018 | District Judge Colin S. Bruce Magistrate Judge Eric I. Long |
| 3 | Lucy Gerena v. Facebook, Inc. | Northern District of California (San Francisco Division) | Case No. 3:18-CV-02201 Filed: 04/12/2018 | Magistrate Judge Maria-Elena James |
| 4 | People of the State of Illinois, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois v. Facebook, Inc., SCL Group Limited, and Cambridge Analytica, LLC | Northern District of Illinois (Eastern Division) | Case No. 1:18-CV-02667 Filed: 03/23/2018 (Complaint) 04/12/2018 (Removal) | District Judge Robert M. Dow, Jr. |

Dated:  April 16, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:___/s/ *Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 300
San Francisco, CA 94105
Tel: 415.393.8379
Fax: 415.374.8474
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Facebook, Inc.*

BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:  FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION | MDL DOCKET NO. 2843 |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States

Judicial Panel on Multidistrict Litigation, I hereby certify that on April 13, 2018, I caused the

foregoing documents to be filed with the Clerk of the Court using the Judicial Panel on

Multidistrict Litigation's CM/ECF system, which will serve notification of such filing to the email

of all counsel of record in this action.  I further certify that copies of the foregoing were served on

all counsel (or unrepresented parties, and on the Clerk of the Court of each proposed transferor

court, by U.S. First Class Mail, postage pre-paid, as follows:

**Court Clerks**

Susan Y. Soong, Clerk
Ronald V. Dellums Federal Building
   & United States Courthouse
Oakland Division
1301 Clay Street
Oakland, CA 94612

*Sanford Buckles v. Facebook, Inc.*; Case No. 4:18-CV-02189

Clerk of Court
United States District Court
   of Central Illinois
Urbana Division
218 U.S. Courthouse
201 S. Vine Street
Urbana, IL 61802

*Timothy Scott Barton, Jr. v. Facebook, Inc., Mark Zuckerberg, and Sheryl Sandberg;* Case No. 2:18-CV-02105

Everett McKinley Dirksen, Clerk
United States Courthouse
Northern District of Illinois
Eastern Division
219 South Dearborn Street
Chicago, IL 60604

*People of the State of Illinois, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois v. Facebook, Inc., a Delaware corporation, SCL Group Limited, a United Kingdom private limited company, and Cambridge Analytica, LLC, a Delaware limited liability company;* Case No. 1:18-CV-02667

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102

*Lucy Gerena v. Facebook, Inc., a Delaware Corporation*; Case No. 3:18-CV-02201

**Counsel / Parties**

Abbas Kazerounian
Matthew M. Loker
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Tel: 800.400.6808
Fax: 800.520.5523
Email: ak@kazlg.com
Email: ml@kazlg.com
*Counsel to Plaintiff Sanford Buckles*

David H. Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Ave. Ste. 350
Henderson, NV 89123
Tel: 702.880.5554
Fax: 702.385.5518
Email: dkrieger@hainesandkrieger.com
*Counsel to Plaintiff Sanford Buckles*

Joshua B. Swigart, Esq
Hyde & Swigart
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Tel: 619.233.7770
Fax: 619.297.1022
Email:  josh@westcoastlitigation.com
*Counsel to Plaintiff Sanford Buckles*

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
Knepper & Clark LLC
10040 W. Cheyenne Ave.
Ste. 170-109
Las Vegas, NV 89129
Tel: 702.825.6060
Fax: 702.447.8048
Email:  matthew.knepper@knepperclark.com
Email:  miles.clark@knepperclark.com
*Counsel to Plaintiff Sanford Buckles*

Timothy Scott Burton, Jr
115 Iowa Street
Danville, IL 61832
Tel:  217.799.8492
Email:  runnerforlife08@gmail.com
*Pro se Plaintiff*

David S. Casey, Jr.
Gayle M. Blatt
Jeremy Robinson
Angela Jae Chun
Alyssa Williams
Casey Gerry Schenk
Francavilla Blatt & Penfield, LLP
110 Laurel Street
San Diego, California 92101
Tel: 619.238.1811
Fax:  619.544.9232
Email:  dcasey@cglaw.com
Email:  gmb@cglaw.com
Email:  jrobinson@cglaw.com
Email:  ajc@cglaw.com
Email:  awilliams@cglaw.com
*Counsel to Plaintiff Lucy Gerener*

Jay Edelson
Benjamin H. Richman
Ari J. Scharg
David Mindell
Alfred K. Murray
Edelson PC
350 N LaSalle, 14th Floor
Chicago, IL, 60654
(312) 589-6370
Email: jedelson@edelson.com
Email: brichman@edelson.com
Email: ascharg@edelson.com
Email: dmindell@edelson.com
Email: amurray@edelson.com
*Counsel to Plaintiff People of the State of
Illinois, ex rel. Kimberly M. Fox*

Kent S. Ray
Cook County State's Attorney's Office
69 W. Washington Street
Suite 3130
Chicago, IL 60602
Tel: 312.603.8600
Fax: 312.603.9830
Email: kent.ray@cookcountyil.gov
*Counsel for Plaintiff People of the State of
Illinois, ex rel. Kimberly M. Foxx*

Mark Scarsi
Milbank, Tweed, Hadley & McCloy LLP
2029 Century Park East 33rd Fl.,
Los Angeles CA 90067
Tel: 424.386.4580
Fax: 213.892.4780
Email: mscarsi@milbank.com
*Counsel for SCL Group Ltd. and Cambridge
Analytica LLC*

Orin Snyder
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335
Email: osnyder@gibsondunn.com
*Counsel for Mark Zuckerberg and
Sheryl Sandberg*

Dated:  April 16, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:___/s/ *Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 300
San Francisco, CA 94105
Tel: 415.393.8379
Fax: 415.374.8474
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Facebook, Inc.*

# EXHIBIT A

ADRMOP

# U.S. District Court
# California Northern District (Oakland)
# CIVIL DOCKET FOR CASE #: 4:18-cv-02189-KAW

Buckles v. Facebook, Inc.                          Date Filed: 04/12/2018
Assigned to: Magistrate Judge Kandis A. Westmore   Jury Demand: Plaintiff
Cause: 15:1681 Fair Credit Reporting Act           Nature of Suit: 480 Consumer Credit
                                                   Jurisdiction: Federal Question

**Plaintiff**

**Sanford Buckles**                represented by   **Matthew Michael Loker**
*Individually and on Behalf of All Others*         Kazerouni Law Group, APC
*Similarly Situated*                               245 Fischer Avenue
                                                   Unit D1
                                                   Costa Mesa, CA 92626
                                                   800-400-6808
                                                   Fax: 800-520-5523
                                                   Email: ml@kazlg.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Seyed Abbas Kazerounian**
                                                   Kazerouni Law Group, APC
                                                   245 Fischer Avenue
                                                   Suite D1
                                                   Costa Mesa, CA 92626
                                                   (800) 400-6808
                                                   Fax: (800) 520-5523
                                                   Email: ak@kazlg.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Elizabeth Ann Wagner**
                                                   Kazerouni Law Group, APC
                                                   245 Fischer Ave. Unit D1
                                                   Costa Mesa, CA 92626
                                                   United Sta
                                                   800-400-6808
                                                   Email: elizabeth@kazlg.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Joshua B. Swigart**
                                                   Hyde & Swigart
                                                   2221 Camino Del Rio South, Suite 101
                                                   San Diego, CA 92108-3551

619-233-7770
Fax: 619-297-1022
Email: josh@westcoastlitigation.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Facebook, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2018 | 1 | COMPLAINT with jury demand against Facebook, Inc. ( Filing fee $ 400, receipt number 0971-12267683.). Filed by Sanford Buckles. (Attachments: # 1 Civil Cover Sheet)(Kazerounian, Seyed) (Filed on 4/12/2018) Modified on 4/13/2018 (jmlS, COURT STAFF). (Entered: 04/12/2018) |
| 04/12/2018 | 2 | Proposed Summons. (Kazerounian, Seyed) (Filed on 4/12/2018) (Entered: 04/12/2018) |
| 04/13/2018 | 3 | Case assigned to Magistrate Judge Kandis A. Westmore. <br><br> Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. <br><br> Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 4/27/2018. (srnS, COURT STAFF) (Filed on 4/13/2018) (Entered: 04/13/2018) |
| 04/13/2018 | 4 | Summons Issued as to Facebook, Inc. (jmlS, COURT STAFF) (Filed on 4/13/2018) (Entered: 04/13/2018) |
| 04/13/2018 | 5 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 7/10/2018. Initial Case Management Conference set for 7/17/2018 01:30 PM. (jmlS, COURT STAFF) (Filed on 4/13/2018) (Entered: 04/13/2018)** |
| 04/13/2018 | 6 | NOTICE of Appearance by Elizabeth Ann Wagner (Wagner, Elizabeth) (Filed on 4/13/2018) (Entered: 04/13/2018) |
| 04/13/2018 | 7 | NOTICE of Appearance by Matthew Michael Loker (Loker, Matthew) (Filed on 4/13/2018) (Entered: 04/13/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/16/2018 08:44:31 | | | |
| **PACER Login:** | gd0021DA:2553423:4036719 | **Client Code:** | 99999-00008 |
| **Description:** | Docket Report | **Search Criteria:** | 4:18-cv-02189-KAW |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HAINES & KRIEGER, LLC**
David H. Krieger, Esq. (*pro hac*)
dkrieger@hainesandkrieger.com
8985 S. Eastern Ave. Ste. 350
Henderson, NV 89123
Telephone: (702) 880-5554
Facsimile: (702) 385-5518

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**KNEPPER & CLARK LLC**
Matthew I. Knepper, Esq. (*pro hac*)
matthew.knepper@knepperclark.com
Miles N. Clark, Esq. (*pro hac*)
miles.clark@knepperclark.com
10040 W. Cheyenne Ave.
Ste. 170-109
Las Vegas, NV 89129
Telephone: (702) 825-6060
Facsimile: (702) 447-8048

*Attorneys for Plaintiff,*
Sanford Buckles

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SANFORD BUCKLES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | Case No.: |
| | **CLASS ACTION** |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.;** |
| v. | |
| **FACEBOOK, INC.** | **JURY TRIAL DEMANDED** |
| Defendant. | |

# INTRODUCTION

1. Plaintiff SANFORD BUCKLES ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant FACEBOOK, INC. ("Defendant"), for willfully violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ("FCRA").

2. Plaintiff alleges as follows upon personal knowledge as to himself and his acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

3. Defendant is a "consumer reporting agency" under the FCRA that provides consumers with their credit reports. The FCRA governs the content of these credit reports as well as subsequent interactions between consumers and Defendant.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction because this case arises out of violations of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA"). 15. U.S.C. § 1681p; 28 U.S.C. § 1331; *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

5. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Defendant does business there, and because Plaintiff consented to jurisdiction in the Northern District of California by agreeing to bring any lawsuit there as a result of Facebook's Terms and Conditions.

## PARTIES

6. Plaintiff Sanford Buckles ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Case 4:18-cv-02843-KAW   Document 1-1   Filed 04/16/18   Page 3 of 20

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

7.  Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

8.  Defendant Facebook, Inc. ("Facebook") is a corporation incorporated under the laws of Delaware Corporation with its principal place of business in California. Facebook also does business in the State of Nevada.

9.  Facebook is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

10. Unless otherwise indicated, the use of Facebook's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Facebook.

11. Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Facebook in the transparency, accessibility, protection and safekeeping of the Plaintiff's and Class members' personal information.

12. Facebook failed to properly provide complete, clear, and accurate disclosures to Plaintiff and the Class, as required under 15 U.S.C. § 1681g.

FACTUAL ALLEGATIONS

Facebook is a Consumer Reporting Agency that furnishes consumer reports under 15 U.S.C. § 1681b(a)(2)

13. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. Consumer reporting agencies ("CRAs") have assumed a vital role in assembling and evaluating consumer credit; and the FCRA seeks to ensure that CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. 15 U.S.C. § 1681. During an April 10, 2018 Senate hearing

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

which featured the testimony of Facebook's CEO, Mark Zuckerberg, both Republican and Democratic senators consistently and specifically remarked that consumers ought to have a clearer sense of what information Facebook was collecting about them and the level of "transparency" Facebook provides its users – the consumers.

14. The FCRA defines a "consumer reporting agency" to mean more than simply the "big three" national CRAs (i.e., Experian, Equifax, and Trans Union). Instead, the statutory definition encompasses "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. . . ."[1]

15. Facebook is a CRA because it regularly assembles and transmits information regarding consumers to third party advertisers, data brokers, researchers, and other third-parties, oftentimes for a fee.[2]

---

[1] 15 U.S.C. § 1681a(f). The Federal Trade Commission routinely prosecutes actions against entities other than the "big three." *See In re ACRANET, Inc.*, File No. 092-3088, 2011 WL 479886 (FTC. Feb. 3, 2011); *In re SettlementOne Credit Corp.*, File No. 82-3208, 2011 WL 479885 (FTC. Feb. 3, 2011); *In re Fajilan & Assocs., Inc.*, File No. 92-3089, 2011 WL 479887, at (FTC Feb. 3, 2011).

[2] *See* Facebook, Inc. Form 10-K filed with the United States Securities and Exchange Commission, Feb. 1, 2018, at 6, available at http://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/c826def3-c1dc-47b9-99d9-76c89d6f8e6d.pdf (last visited Apr. 10, 2018) ("Form 10-K") ("We generate substantially all of our revenue from selling advertising placements to marketers."). Facebook also previously purchased the intellectual property rights of a patent from another organization, Friendster, which would have developed a scoring model solely from information about a consumer's social network. *See* Kia Kokalitcheva, *Your Facebook friends could be the ticket to your next loan*, Fortune, Aug. 4, 2015, available at http://fortune.com/2015/08/04/facebook-loan-approval-network/ (last visited Apr. 10, 2018).

16. Facebook's reports include, but are not limited to, transmission of "reports" to its advertising partners regarding the performance of their advertising,[3] as well as application developers, for whom Facebook does or has facilitated access to individual consumer user data.[4]

17. Facebook is compensated for its participation in the advertising process.[5]

18. Facebook regularly assembles and/or evaluates consumer information for the purpose of furnishing consumer reports to third parties, and Facebook uses interstate commerce to prepare and/or furnish the reports.    Therefore, Facebook is a "consumer reporting agency" for purposes of 15 U.S.C. § 1681a(f).

19. The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

---

[3]    *See* Facebook, *Measure your ads*, available at https://www.facebook.com/business/learn/facebook-ads-measuring-results (last visited Apr. 10, 2018).

[4] *See* Josh Constine, *Facebook Is Shutting Down Its API For Giving Your Friends' Data To Apps*, Techcrunch, Apr. 28, 2014, available at https://techcrunch.com/2015/04/28/facebook-api-shut-down/ (last visited Apr. 10, 2018).

[5] *See* Form 10-K, at 6.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

20. Under Section 1681b(a)(2), a consumer reporting agency may furnish a consumer report "[i]n accordance with the written instructions of the consumer to whom it relates."[6]

21. Consumers who use Facebook must agree to a set of conditions that satisfy 15 U.S.C. § 1681b(a)(2). Specifically, an account-holder must agree to Facebook's "Terms of Service."[7] These terms explicitly provide that consumers who use Facebook give Facebook permission to use a consumer's "name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us."[8]

22. During April 10, 2018 testimony, Facebook's Chief Operating Officer, Mark Zuckerberg, testified to the U.S. Senate that consumers have the opportunity to review Facebook's policies and consent to them.

23. This testimony is supported by a 2011 consent decree entered into between Facebook and the Federal Trade Commission, which required Facebook to (1) refrain from making misrepresentations about the privacy or security of consumers' personal information, and (2) to obtain consumers' affirmative

---

[6] *See also* Fed. Trade Comm'n, *Big Data: A Tool for Inclusion of Exclusion?*, Jan. 7, 2016, at available at https://www.ftc.gov/system/files/documents/reports/big-data-tool-inclusion-or-exclusion-understanding-issues/160106big-data-rpt.pdf (last visited Apr. 6. 2018).

[7] Facebook Terms of Service, Jan. 30, 2015, available at http://www.facebook.com/terms.php (last visited Apr. 6, 2018) ("Terms of Service"). Facebook's terms of service form the agreement between a consumer and Facebook, Inc. *See id.*

[8] *See* Terms of Service. The Terms of Service incorporate by reference the "Facebook Principles," which include the maxim that "People should own their information," but that consumer privacy controls "are not capable of limiting how those who have received information may use it, particularly outside the Facebook Service." Facebook Principles, https://www.facebook.com/principles.php (last visited Apr. 6, 2018) ("Principles").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

express consent before enacting changes that override their privacy preferences.[9]

24. Consequently, Facebook's transmissions of this consumer data qualify as a consumer report under, *inter alia*, 15 U.S.C. § 1681b(a)(2), as they are reports sent "in accordance with the written instructions of the consumer to whom it relates."

### *Facebook Provides Consumer Disclosures Under 15 U.S.C. § 1681g.*

25. The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request from consumer reporting agencies like Facebook "All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

26. "File," is explicitly defined in the FCRA when applied to consumers, and means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

27. When a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure. 15 U.S.C. § 1681g(a)(1).

28. Information disclosed in the consumer's "file" must include certain, specific details. For example, the information disclosed under Section 1681g of the FCRA must also include the sources of the disclosed information. 15 U.S.C. § 1681g(a)(2).

---

[9] *See In re Facebook, Inc.*, File No. 092-3184, Nov. 29, 2011; *see also* Bloomberg, *Facebook May Have Breached a 2011 Consent Agreement*, Fortune, Mar, 30, 2018, available at http://fortune.com/2018/03/29/cambridge-analytica-facebook-scandal/ (last visited Apr. 10, 2018).

| Case # | 6 of 19 | *Buckles, et al. v. Facebook, Inc.* |

**CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

29. A consumer disclosure must also include an identification of each person (including end-users) who "procured" a consumer report for employment or another purpose. 15 U.S.C. § 1681g(a)(3). The identification of individuals must include both the name and trade name under which such person conducts business. 15 U.S.C. § 1681g(a)(3)(B)(i).

30. Disclosing sufficient information about the sources of information, as well as the identity of third parties, can assist consumers in determining whether their identity has been compromised, or whether a consumer reporting agency has made any disclosures for an impermissible purpose. *See also* 15 U.S.C. § 1681c-1(a)-(b) (permitting consumers to obtain additional copies of their consumer disclosures at no charge in the case of suspected identity theft).

31. Disclosure of this information is especially important for consumer reporting agencies, like Facebook, who provide users with some degree of control over the appropriate privacy level for their data, and whose business is premised in no small part on its ability to deliver targeted advertising content to consenting users.

32. Without full and complete disclosures of the information Facebook acquires and compiles, a consumer is unable to adequately assess whether to adjust their privacy settings to opt out of marketing campaigns, or determine whether false information is being reported about them such that they can correct the information.

33. Since at least October of 2010, Facebook has permitted consumers to download portions of their data from Facebook.[10] The information downloadable from Facebook, aside from Plaintiff's name, address, email addresses, photographs, posts, "likes," and timelines, includes (1) account status history, (2) ads clicked, (3) ad topics, (4) apps they have consented to use, (5) facial recognition data, and (6) IP Addresses.[11]

34. The information Facebook permits users to download constitutes its disclosure of information in a consumer's "file" pursuant to 15 U.S.C. § 1681g.[12]

### Facebook's Consumer Disclosures Violate 15 U.S.C. § 1681g(a)

35. In addition to the information provided to third parties as part of the advertising process, on information and belief since 2013 Facebook has also acquired a voluminous amount of data from third party sources, commonly known as "data brokers," which it integrates into its files.[13]

---

[10] Alexia Tsotsis, *Facebook Now Allows You To 'Download Your Information'*, TechCrunch, Oct. 6, 2010, available at https://techcrunch.com/2010/10/06/facebook-now-allows-you-to-download-your-information/ (last visited Apr. 10, 2018).

[11] *See* Facebook, How can I download a copy of my Facebook data?, available at https://www.facebook.com/help/302796099745838 (last visited Apr. 10, 2018) ("Download FAQ"); Facebook, Where can I find my Facebook data?, available at https://www.facebook.com/help/405183566203254?helpref=faq_content (last visited Apr. 10, 2018) ("Data FAQ"); Facebook, What categories of my Facebook data are available to me? Available at https://www.facebook.com/help/930396167085762?helpref=related (last visited Apr. 10, 2018) ("Categories FAQ").

[12] This information is coupled with information viewable from a Facebook account's "activity log," which a consumer can view when logging into their Facebook account. *See* Categories FAQ. Additional information, such as credit card numbers and linked accounts provided to Facebook, is available in the "account settings" portion of a consumer's Facebook account. *See id.*

[13] *See* Kalev Leetaru, *The Data Brokers So Powerful Even Facebook Bought Their Data – But They Got Me Wildly Wrong*, Forbes, Apr. 5, 2018, available at https://www.forbes.com/sites/kalevleetaru/2018/04/05/the-data-brokers-so-

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

36. These data brokers, such as Experian and Acxiom, segment information on consumers based on criteria such as purchasing activity and other highly sensitive and invasive behavioral data.   Indeed, one major data broker, Experian, has stated that its "industry leading database, ConsumerView, is now connected to Facebook giving you access to an unparalleled breadth and depth of data."[14]

37. A means by which Facebook collects and shares information with data brokers is its "Partner Categories" program.   Through this program Facebook pairs potential advertisers with third-party data brokers to launch target Facebook marketing campaigns.   The program has been described as: (1) a potential advertiser contacts a data broker requesting information related to specific consumer demographics, (2) the data broker searches its own database for contact information of consumers who meet that demographic, (3) the contact information is sent to Facebook, which places the user into a targeted "segment" and then displays the advertisement to all targeted users.[15]   After the advertising campaign is completed, Facebook then sends a report back to

---

powerful-even-facebook-bought-their-data-but-they-got-me-wildly-wrong/#739e4b483107 (last visited Apr. 8, 2018); Josh Costine, *Facebook Lets Advertisers Tap Purchase Data Partners to Target Customers, Categories Like Car-Buyers*, TechCrunch, Feb. 27, 2013, available at https://beta.techcrunch.com/2013/02/27/facebook-ad-data-providers/?_ga=2.246742147.687259487.1523245102-1825075070.1521347830 (last visited Apr. 8, 2018).

[14] *See* Experian Product Sheet, *Experian and Facebook*, 2016, available at http://www.experian.com/assets/marketing-services/product-sheets/fb-exp-product-sheet-dec-2016.pdf (last visited Apr. 8, 2018).

[15] *See* Alex Senemar, *Facebook Partners With Shadowy 'Data Brokers' To Farm Your Information*, medium.com, Apr. 25, 2016, available at https://medium.com/sherbit-news/facebook-partners-with-shadowy-data-brokers-to-farm-your-information-1129a5878b05 (last visited Apr. 9, 2018).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

advertisers regarding the performance of the advertisement.[16]   Facebook receives some of the revenue from these marketing campaigns upon successful completion.   On information and belief, the specific "Categories" which Facebook utilizes are based on information provided by a select number of Facebook marketing partners.[17]

38.   The Federal Trade Commission has described such otherwise anonymous "categorical" data as information that could constitute a consumer report.[18] Specifically, the Federal Trade Commission stated:

> Suppose a company asks a consumer to provide her zip code and information about her social media and shopping behavior on a credit application, strips the consumer's identifying information, and sends the application to an analytics firm. The firm then analyzes the creditworthiness of people in the same zip code with similar social media and shopping behaviors as the consumer and provides that analysis—be it, for example, in the form of a score, a grade, or a recommendation—to the company, knowing that it is to be used for a credit decision. Because the company is using information about the consumer to generate an analysis of a group that shares some characteristics with the consumer and then is using that analysis to make a decision about the consumer, the Commission would likely regard the analysis to be a consumer report, and FCRA requirements and protections would likely apply.[19]

---

[16]   *See* Senemar, *Facebook Partners With Shadowy 'Data Brokers' To Farm Your Information*.

[17]   *See* Facebook, About Partner Categories, available at https://www.facebook.com/business/help/298717656925097 (last visited Apr. 10 2018) ("Partner Categories FAQ").

[18]   *See* Fed. Trade Comm'n, *Big Data: A Tool for Inclusion or Exclusion?*, at 16-17.

[19]   *Id.* at 16.   In 2015, Facebook secured a patent assessing a consumer's creditworthiness based on his or her social networks, although it later altered its data access policies for third parties.   *See* Kokalitcheva, *Your Facebook friends could be the ticket to your next loan.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

39. On March 28, 2018, Facebook announced that it would be "winding down" partner categories in the next six months, in order to "help improve people's privacy on Facebook."[20]   However, as of the date of this Complaint, the "Partner Categories" links on Facebook are still live.  According to an email sent from Facebook to its advertisers, "Partner Categories" will continue to be available in the United States until October 1, 2018.[21]

40. Another tool Facebook provides to marketers is its "Custom Audiences" program, in which Facebook permits advertisers to upload their own data for use in advertising programs.  Until recently, Facebook had no controls in place to ensure that the data which advertisers uploaded to Facebook was comprised solely of first-party data, and was not instead derived from third party data brokers.[22]

41. Facebook uses a variation of its "custom audiences" program which it calls a "Lookalike Audiences" program.  According to Facebook, this program is "a way to reach new people who are likely to be interested in your business because they're similar to your best existing customers."[23]  Therein, a potential

---

[20] See Facebook, *Shutting Down Partner Categories*, Mar. 28 ,2018, available at https://newsroom.fb.com/news/h/shutting-down-partner-categories/ (last visited Apr. 8. 2018).

[21] See Finy Marvin, *Facebook's removing third-party targeting data: What marketers need to know*, Marketing Land, Mar. 30 2018, available at https://marketingland.com/facebooks-removal-of-third-party-targeting-data-what-we-know-237260 (last visited April 9, 2018).

[22] See Shareen Pathak, *How Facebook's shutdown of third-party data affects advertisers*, Digiday, Mar. 30 2018, available at https://digiday.com/marketing/facebooks-shutdown-third-party-data-affects-brands/ (last visited Apr. 10, 2018).   To the degree Facebook did accept that marketing data, such data would be a "consumer report" and Facebook would be an end-user of that data.

[23] *See* Facebook, About Lookalike Audiences, available at https://www.facebook.com/business/help/164749007013531?helpref=related (last

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

advertiser chooses a "source audience" based either on collaboration with a data partner, or data which Facebook maintains in its own records; after uploading the list of records to Facebook and specifying (1) audience size, (2) target country, and (3) other criteria, Facebook (4) identifies common qualities in the "source audience," (5) identifies additional Facebook users who "look like" the advertiser's list of individuals, so that they can be used in a marketing campaign, and (6) send an advertisement to these "lookalike" individuals.[24]

42. Finally, there has been recent public outcry regarding the exposure of data "scraped" by third party actors who use targeted, consent-based interactive media to procure data from an individual Facebook user, and which consequently permits the third party to procure the information about each Facebook user or the user's "friends."  The most noteworthy example of this practice was the firm of Cambridge Analytica, which purportedly used a list of approximately 300,000 Facebook users who took a "quiz" intended for research purposes to compile a list of approximately 87 million users, which it then used for targeted political campaigning.

43. Although Facebook purportedly changed its application settings in 2014 to prevent the type of clandestine "scraping" used to ultimately create the list of 87 million users in the Cambridge Analytica data breach, Facebook's public search feature – by which a user could enter an email address to find a public profile – remained in place until April 2018.

---

visited Apr. 10, 2018).
[24] *See id.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 72626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

44. Facebook CEO Mark Zuckerberg has commented that "at some point during the last several years, someone has probably accessed your public information this way."[25]

45. Facebook's disclosures contain a list of advertisers who have an individual's contact information.  This list includes nothing more than the names of the advertisers in question, without specifying (1) when they received the information, or (2) whether the name disclosed is a trade name or not, and (3) the purpose for the inquiry.

46. Facebook fails to indicate the specific purpose each advertiser in question had when it procured the Plaintiff's information for the purpose.

47. Given the granulated structure of Facebook's marketing campaigns, Facebook is in a position to know precisely why any individual advertiser would have procured consumer data, but Facebook fails to describe it, or even clearly disclose whether any advertiser made an inquiry at all.

48. Finally, on information and belief, Facebook also collects the text messaging histories of users of Android phones, as well as cross-device data, including offline data.

49. As a matter of policy, Facebook fails to provide all information in the consumer's "file" pursuant to Section 1681g(a)(1).  Specifically, Facebook fails to disclose to consumers the information it procures from third-party data brokers, including but not limited to the "behavioral data" which it used to develop its "partner categories" program.  Facebook also failed to disclose

---

[25] Kevin Smith, *Facebook: Most users may have had public data 'scraped'*, Orange County Register, Apr. 5, 2018, available at https://www.ocregister.com/2018/04/05/facebook-most-users-may-have-had-public-data-scraped/ (last visited Apr. 8, 2018).

cross-device and offline data, including the text histories in its consumer disclosures.

50. Second, Facebook fails to provide the source of several material items of information in its files, in violation of Section 1681g(a)(2).  Specifically, on information and belief Facebook knew or had reason to know that advertisers with a consumer's contact information procured that data from Facebook's files, or procured it from one of Facebook's data broker "partners."

51. Third, Facebook failed to provide a clear, accurate, and complete list of all individuals who made inquiries, in violation of Section 1681g(a)(3). Specifically, Facebook failed to provide a complete list of entities that it permitted access to Facebook's consumer files, including the data brokers which, like Experian, advertised that their own credit databases were "connected" to Facebook, or a list of application users who "scraped" consumer data.

52. Facebook also failed to disclose material information regarding any third-party inquiries, including the date the inquiries were made, the trade name for each inquiring third-party, or the date or purpose for which each inquiry was made.

53. Facebook's disclosures were unclear (lacking "transparency") because they referred only to a list of advertisers who had an individual's personal information, without also specifying the other types of third-parties, like Experian, who had procured the data, or the specific purposes for which an inquiry was made, including for research purposes.

### *Plaintiff's Allegations*

54. On April 5, 2018, Plaintiff downloaded a copy of his Facebook "file."  His file contained each and every one of the deficiencies outlined above.

55. Thereafter, Plaintiff sent an email to Facebook, expressing concern that his consumer disclosure did not contain a list of any third-party data brokers who

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

had procured his information, and asking why they were not present. Plaintiff asked this question because he wanted to confirm who obtained his personal information. In this communication, Plaintiff also asked if the downloaded information was all of the information Facebook maintained on him. However, as of April 10, 2018, Facebook failed to respond to Plaintiff.

56. Facebook's failures also violated his right to privacy because Facebook deprived him of his opportunity to independently investigate the information in his file for completeness and accuracy, as well as to determine which third parties had obtained information about him. Facebook's failure to include this information caused Plaintiff to suffer a concrete informational injury because he had a right to that information under 15 U.S.C. § 1681g.

57. Facebook's disclosure failures were at least negligent, and entitle Plaintiff to an award of actual damages including, but not limited to, lost time.

58. On information and belief, Facebook's failures were willful, as Facebook had complete control over the information and as a matter of policy would not clearly, completely or accurately disclose to Plaintiff the information in his consumer file at Facebook. Thus, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1681n.

## CLASS ALLEGATIONS

59. Plaintiff brings this action on behalf of a nationwide class of all similarly situated individuals ("Class"), defined as:

> All natural persons in the United States who, for the two-year period preceding the date of this Complaint and continuing until class certification, requested and obtained their Facebook consumer disclosure, wherein Facebook failed to provide:
> (a) all information it maintained in the consumer's file at the time of the request regarding the source of an advertiser's procuring of each consumer's address or other contact information;

(b) a clear, accurate, and complete list of entities which procured data from Facebook's records or obtained data therefrom; and/or

(c) a complete list of inquiries from users, which disclosed the dates and purposes of each inquiry.

60. Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

61. At this time the Plaintiff does not know the size of the Class because the information is exclusively in the possession of Facebook, but believes that the potential number of Class members is so numerous that joinder would be impracticable. Facebook has nearly 2 billion users worldwide, including over 200 million in the United States alone. The number of Class members can be determined through discovery, particularly investigation of Facebook's internal records of the number of downloads made of an individual's file.

62. All members of the Class have been subject to and affected by a uniform course of conduct in that the defects listed above will be present for all Class members. These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class members include, but are not limited to:

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Case 4:18-cv-02843-KAW   Document 1-31   Filed 04/16/18   Page 228 of 220

a. Whether Defendant failed to provide consumers with clear, accurate, and complete disclosures of the information in their file when requested;

b. Whether Defendant omitted statutorily required information in those disclosures;

c. Whether Plaintiff and Class members suffered damages as a result of Defendant's failure to comply with FCRA based on the failure to disclose information;

d. Whether Plaintiff and Class members are entitled to statutory damages; and

e. Whether Plaintiff and Class members are entitled to punitive damages.

63. Plaintiff's claims are typical of the Class, as Plaintiff requested information in his Facebook file and received an incomplete consumer disclosure. All claims are based on the same legal and factual issues.

64. Plaintiff will adequately represent the interests of the Class and does not have an adverse interest to the Class. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigating consumer class actions.

65. Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Class as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. 1681 *et seq.*

66. Plaintiff restates all allegations contained above as if fully rewritten herein.

67. This Count is brought on behalf of the nationwide Class.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Case 4:18-cv-02843-KAW Document 1-1 Filed 04/02/18 Page 23 of 20

68. Facebook failed to make clear, accurate, and complete disclosures, violating 15 § U.S.C. 1681g.

69. As a result of each and every willful violation of FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

70. As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant Facebook:

- For an award of actual damages against Defendant pursuant to 15 U.S.C. § 1681o;

- For an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- For an award of punitive damages against Defendant as this Court may allow pursuant to 15 U.S.C. 1681n(a)(2);

- For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. 1681n(a)(3) and 15 U.S.C. 1681(o)(1)(1) against Defendant for each incident of noncompliance of FCRA; and

- For all other relief this Court may deem just and proper.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## JURY DEMAND

Plaintiff hereby request a trial by jury on all issues so triable.

Dated: April 12, 2018                                      Respectfully submitted,


                                              KAZEROUNI LAW GROUP, APC


                                         By:    /s/ Abbas Kazerounian
                                                ABBAS KAZEROUNIAN, ESQ.
                                                ATTORNEY FOR PLAINTIFF

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

| Case # | 19 of 19 | *Buckles, et al. v. Facebook, Inc.* |
| --- | --- | --- |

CLASS ACTION COMPLAINT

# EXHIBIT B

ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:18-cv-02201-MEJ

Gerena v. Facebook, Inc.
Assigned to: Magistrate Judge Maria-Elena James
Cause: 28:1132 E.R.I.S.A.

Date Filed: 04/12/2018
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Lucy Gerena**
*on behalf of herself and all others
similarly situated*

represented by **Alyssa M Williams**
Casey Gerry Schenk Francavilla Blatt
and Penfield LLP
110 Laurel St
San Diego, CA 92101
619-238-1811
Email: awilliams@cglaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Angela Jae Chun**
Casey Gerry Schenk Francavilla Blatt
and Penfield LLP
110 Laurel Street
San Diego, CA 92101
619-238-1811
Fax: 619-544-9232
Email: ajc@cglaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**David S. Casey , Jr.**
Casey Gerry Schenk Francavilla Blatt
and Penfield LLP
110 Laurel Street
San Diego, CA 92101
619-238-1811
Fax: 619-544-9232
Email: dcasey@cglaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Jeremy Keith Robinson**
Casey Gerry Schenk Francavilla Blatt
and Penfield

110 Laurel Street
San Diego, CA 92101-1419
(619) 238-1811
Fax: (619) 544-9232
Email: jrobinson@cglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gayle Meryl Blatt**
Casey Gerry Schenk Francavilla Blatt
& Penfield LLP
110 Laurel Street
San Diego, CA 92101
619-238-1811
Fax: 619-544-9232
Email: gmb@cglaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Facebook, Inc.**
*a Delaware Corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2018 | 1 | COMPLAINT against Facebook, Inc. ( Filing fee $ 400, receipt number 0971-12268583.). Filed byLucy Gerena. (Attachments: # 1 Civil Cover Sheet)(Blatt, Gayle) (Filed on 4/12/2018) (Entered: 04/12/2018) |
| 04/12/2018 | 2 | Proposed Summons. (Blatt, Gayle) (Filed on 4/12/2018) (Entered: 04/12/2018) |
| 04/13/2018 | 3 | Case assigned to Magistrate Judge Maria-Elena James. <br><br> Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. <br><br> Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 4/27/2018. (jmlS, COURT STAFF) (Filed on 4/13/2018) (Entered: 04/13/2018) |
| 04/13/2018 | 4 | |

| | | Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 7/5/2018. Initial Case Management Conference set for 7/12/2018 10:00 AM. (hdjS, COURT STAFF) (Filed on 4/13/2018) (Entered: 04/16/2018) |
|---|---|---|
| 04/16/2018 | 5 | Summons Issued as to Facebook, Inc. (hdjS, COURT STAFF) (Filed on 4/16/2018) (Entered: 04/16/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/16/2018 11:40:51 | | | |
| **PACER Login:** | gi000234:2554876:4036719 | **Client Code:** | 30993-00116 |
| **Description:** | Docket Report | **Search Criteria:** | 3:18-cv-02201-MEJ |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

David S. Casey, Jr. (SBN 060768)
*dcasey@cglaw.com*
Gayle M. Blatt (SBN 122048)
*gmb@cglaw.com*
Jeremy Robinson (SBN 188325)
*jrobinson@cglaw.com*
Angela Jae Chun (SBN 248571)
*ajc@cglaw.com*
Alyssa Williams (SBN 310987)
*awilliams@cglaw.com*
**Casey Gerry Schenk**
**Francavilla Blatt & Penfield, LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Attorneys for Plaintiff and
the proposed Class

## United States District Court

## Northern District of California

## Oakland Division

| | |
|---|---|
| **Lucy Gerena**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Facebook, Inc.**, a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**Class Action Complaint and Complaint for Damages**<br><br>Demand for Jury Trial |

CLASS ACTION COMPLAINT

Plaintiff Lucy Gerena, on behalf of herself and all others similarly situated, allege the following against Defendant Facebook, Inc. ("Facebook"), based on personal knowledge as to Plaintiff and Plaintiff's own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's undersigned counsel:

**SUMMARY**

1.      Facebook — the social network — is in reality an advertising behemoth. While it markets itself as being driven by connecting as many people as possible, it has made a fortune off of the personal information of its users. Last year, Facebook reaped "more than one in five US digital ad dollars," and it controls more than a quarter of the US mobile ad market.[1] As the saying goes, "[i]f you are not paying for it, you're not the customer; you're the product being sold."[2]

2.      While Facebook claims it does not sell user information directly to advertisers — and cannot, under a 2011 FTC consent decree[3] — it has routinely provided such information to app developers, with little or no oversight.[4] Until recently, anyone with a computer was encouraged to develop an app on Facebook. More apps mean more user engagement, which increases the value of its ad network. True to its old motto of "move fast and break things," Facebook gave developers carte blanche access to user data for many years. According to one developer, "Facebook rammed their data down our throats. On the whole, none of us asked for your data. But we have it anyway, and forever."[5]

---

[1] "Google and Facebook Tighten Grip on US Digital Ad Market," EMARKETER (Sept. 21, 2017), https://www.emarketer.com/Article/Google-Facebook-Tighten-Grip-on-US-Digital-Ad-Market/1016494.
[2] Ian Bogost, "My Cow Game Extracted Your Facebook Data," THE ATLANTIC (2018), https://www.theatlantic.com/technology/archive/2018/03/my-cow-game-extracted-your-facebook-data/556214/?utm_source=feed.
[3] Press Release, "Facebook Settles FTC Charges That It Deceived Consumers By Failing To Keep Privacy Promises," FEDERAL TRADE COMMISSION (Nov. 29, 2011), https://www.ftc.gov/news-events/press-releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep.
[4] Bogost, *supra* note 2.
[5] *Id.*

CLASS ACTION COMPLAINT

3. These features of Facebook's business model landed it in hot water with users, regulators, and the general public when, on March 17, 2018, the New York Times and the Observer reported that Cambridge Analytica, a data firm retained to help the Trump election campaign, had accessed and retained 50 million Facebook user profiles without their permission and informed consent. Since then, Facebook has confirmed that approximately 87 million Facebook users have been affected.

4. The Cambridge Analytica scandal may be of particular interest today, but this is not the first time that Facebook has allowed third party apps to steal personal information without permission or informed consent.

5. Other companies such as Cubeyou and Aggregate IQ have been collecting this data and selling it for years. These companies have been operating on Facebook for many years and boast on their websites about how much data they have collected from people.[6] Only recently has Facebook acted by suspending these companies. However, the improperly obtained data is gone and the damage has already been done. Even when companies had no use for the data, Facebook sent it to them. Facebook was aware of this problem and did nothing about the problem until it was caught red handed. As a result, Plaintiff and members of the proposed Class have suffered harm including a higher risk of identity theft because their personal information was taken.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class Members, a majority of Class Members are citizens of states that are diverse from Facebook, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

7. This Court has personal jurisdiction over Facebook because Facebook maintains its principal place of business in this District, is registered to conduct business in

---

[6] Michelle Castillo, "Facebook suspends another data analytics firm after CNBC discovers tactics like Cambridge Analytica" CNBC (2018), https://www.cnbc.com/2018/04/08/Cubeyou-cambridge-like-app-collected-data-on-millions-from-facebook.html.

1    California, and has sufficient minimum contacts with California, including by employing

2    more than 10,000 California residents.

3         8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because

4    Facebook resides in this District and a substantial part of the events or omissions giving

5    rise to Plaintiff's claims occurred in this District.

6                     **INTRADISTRICT ASSIGNMENT**

7         9.      Pursuant to Northern District of California Local Rule 3-2(c) and 3-2(d),

8    assignment to the Oakland Division of this District is proper because a substantial part of

9    the events or omissions giving rise to Plaintiff's and the proposed Class's claims originated

10    from Facebook's headquarters, located in one of the counties served by the Oakland

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Division.

## PARTIES

10.     Plaintiff Lucy Gerena is a resident of Lemon Grove, California. She has been a Facebook user since approximately August 2008. She uses the platform to connect with friends and share content, including personal photos. She also uses the "check in" feature, sharing her visits to certain locations with Facebook.

11.     Plaintiff Gerena never consented to her information being shared with the app called "This Is Your Digital Life" — and never heard of the app prior to this year. Nonetheless, Facebook's website indicated that her information was shared with the app because one of her Facebook friends used the app:

12.     Defendant Facebook is a business incorporated under the laws of the State of Delaware. Its principal place of business is located in Menlo Park, California.

## FACTUAL ALLEGATIONS

### Facebook's business model: mining user information to sell targeted ads

13.     Facebook's 40 billion dollar a year business model is built on its users' personal information, which it uses to target advertisements. Without the users' personal information, the company's flagship platform — as well as the other social media platforms it has acquired, like Instagram — would be worthless.

14.     This has been true since the founding of Facebook. As a free-to-use social network, the only way it was going to be profitable was through advertisements. However,

CLASS ACTION COMPLAINT

the real value of Facebook is that it uses personal information to target ads.[7] A targeted advertisement using personal information can be more effective than an advertisement that is not targeted.[8]

15.     Users' personal information is the backbone for Facebook's entire business model. Despite this, Facebook still allowed companies to violate their terms of service and steal personal information from unsuspecting users.

**The world learns about Facebook's practices through the Cambridge Analytica scandal**

16.     This breach was first reported December 4, 2015, when the Guardian published an article detailing how this stolen data had been used in support of Ted Cruz's Presidential campaign.[9] However, this scandal did not gain worldwide attention until the Observer published an in-depth article several years later, on March 17, 2018.

17.     Cambridge Analytica's parent company, SCL Elections, was founded by Steve Bannon and Robert Mercer to influence elections.

18.     Cambridge Analytica's purpose is to create a data driven targeting system to influence voters. It hired Christopher Wylie in 2013, an up and coming data scientist who was interested in figuring out why people voted for certain parties.

19.     SCL and Robert Mercer promised Wylie that they would allow him to "come and test out all [his] crazy ideas."[10]

20.     In order for Christopher Wylie to begin his project he needed data—a lot of it. The data he ended up using was taken via a Facebook app called "This Is Your Digital Life," a personality quiz that collected personal information from users and their friends.

---

[7] "Facebook's business model" BUSINESS INSIDER (2012), http://www.businessinsider.com/facebooks-business-model-2012-5.
[8] Rebecca Walker Reczek et. al, "Targeted Ads Don't Just Make You More Likely to Buy - They Can Change How You Think About Yourself" HARVARD BUSINESS REVIEW (2016), https://hbr.org/2016/04/targeted-ads-dont-just-make-you-more-likely-to-buy-they-can-change-how-you-think-about-yourself.
[9] Harry Davies, "Ted Cruz campaign using firm that harvested data on millions of unwitting Facebook users" THE GUARDIAN (2015), https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data.
[10] Carole Cadwalladr, "I made Steve Bannon's psychological warfare tool': meet the data war whistleblower" THE GUARDIAN (2018), https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.

21.     Cambridge Analytica first contacted Michal Kosinski, a researcher with access to the data from the *This Is Your Digital Life* app. Michal Kosinski was asking $500,000 for the stolen data. However, the negotiations fell through and Cambridge Analytica contacted Aleksandr Kogan, who had helped create *This Is Your Digital Life*.

22.     *This Is Your Digital Life* had about 320,000 users who signed up to use it. However, because Facebook allowed it, the application collected data on the friends of these users who did not consent to—or even necessarily know about—the app. This led to the data of at least 87 million Facebook users' information being misappropriated by Cambridge Analytica.

23.     The friends of the app users did not consent to the application taking their data and using it. Nor were they even aware of it, until this scandal broke. And, even if the app users knew what of their own information they were giving this for-profit company, they did not know that their friends' data would also be taken.

24.     While Cambridge Analytica had obtained the data, it did not have the infrastructure to turn that data into a useable system.

25.     Cambridge Analytica turned to Aggregate IQ, a company owned by SCL Elections and based in Canada. Aggregate IQ provided support and created the code that allowed Facebook's data to be turned into a powerful cyberwarfare tool.

26.     Facebook has recently suspended Aggregate IQ from its platform, well after Facebook should have known that Aggregate IQ conspired with Cambridge Analytica to steal personal information.

27.     Facebook initially denied that this problem was occurring. Since then, it has only responded by banning companies that are mentioned in the reporting. Facebook does not have the infrastructure to monitor these companies or the data they are taking.

**As more of Facebook's apps are investigated, more problems come to light**

28.     The Cambridge Analytica breach was far from the first time that Facebook had allowed a company to steal personal information from its users and their friends. As an example, Cubeyou has been taking this information from users and their friends for

CLASS ACTION COMPLAINT

many years and was only recently banned, after Cubeyou's actions were publicized by CNBC.

29. Cubeyou is a company that specializes in "Fast, Easy & Accurate Consumer Insights". It's business model relies on misappropriating Facebook's users' data in order to gain consumer insights. It uses personality tests similar to Cambridge Analytica. Cubeyou had two primary sources for their data: an app called "You are what you like" and another titled "Apply Magic Sauce."

30. Cubeyou told Facebook and their users that the applications were for "non-profit academic research." However, it did not intend to use this data for an academic purpose and instead sold it to marketers. Facebook had and has no process to ensure that its data is being used for an academic purpose, nor any mechanism to claw back the data if it suspects misuse.

31. On a version of Cubeyou's homepage dated March 19, 2018, it boasts that it has data such as age, gender, location, work, education, family, and relationship information. It also has likes, follows, shares, posts, likes to posts, comments to posts, check-ins and mentions of brands/celebrities in a post. Interactions with companies are tracked back to 2012 and are updated weekly, according to Cubeyou's site.[11]

32. Cubeyou's site currently boasts that it has data on first names, last names, emails, phone numbers, IP addresses, mobile IDs, and browser fingerprints.[12]

33. Facebook apparently became aware of this misappropriation only because it was reported by CNBC. Facebook has banned the company and claims that it will audit the company; however, there is no way to know where the data has been sent or who is in possession of it now.

**Facebook's API has routinely given away personal information without request or**

---

[11] Michelle Castillo, "Facebook suspends another data analytics firm after CNBC discovers tactics like Cambridge Analytica" CNBC (Apr. 8, 2018), https://www.cnbc.com/2018/04/08/Cubeyou-cambridge-like-app-collected-data-on-millions-from-facebook.html.
[12] Id.

CLASS ACTION COMPLAINT

<u>verification</u>

34.     Facebook launched its Graph API (application programming interface) in April 2010. The API was a developer interface that allowed third parties to collect personal information from users through the Friends Data Scrape Feature, whether or not their profile was private.

35.     Facebook encourage the development of apps as it would lead to more engagement with the platform, therefore generating more advertising revenue. Further, they could use the apps that users were engaged with to further target Facebook's advertisements.

36.     Facebook's API v.1, which was in effect from April 2010 to April 2015, gave third party applications the access necessary to gather personal information on the friends and family of people who signed up for their application.

CLASS ACTION COMPLAINT

37.     The graphic at right shows how Facebook allows the data to be pulled from their platform and then stored on third party servers. Facebook has no control over the data once it is put on a third party server.[13]



38.     Facebook's API allowed the collection of users' friends' data without their permission. The API sent the following data to the third party applications servers[14]:

| Basic Info (default) | Extended Profile Properties (xpP) | | Extended Permissions (xP) |
|---|---|---|---|
| | User Data | Friends Data | |
| uid | user_about_me | friends_about_me | ads_management |
| name | user_actions.books | friends_actions.books | ads_read |
| first_name | user_actions.music | friends_actions.music | create_event |
| last_name | user_actions.news | friends_actions.news | create_note |
| link | user_actions.video | friends_actions.video | email |
| username | user_activities | friends_activities | export_stream |
| gender | user_birthday | friends_birthday | manage_friendlists |
| locale | user_checkins | friends_checkins | manage_notifications |
| age_range | user_education_history | friends_education_history | manage_pages |
| | user_events | friends_events | photo_upload |
| | user_friends | friends_games_activity | publish_actions |
| | user_games_activity | friends_groups | publish_checkins |
| | user_groups | friends_hometown | publish_stream |
| | user_hometown | friends_interests | read_friendlists |
| | user_interests | friends_likes | read_insights |
| | user_likes | friends_location | read_mailbox |
| | user_location | friends_notes | read_page_mailboxes |
| | user_notes | friends_online_presence | read_requests |
| | user_online_presence | friends_photo_video_tags | read_stream |
| | user_photo_video_tags | friends_photos | rsvp_event |
| | user_photos | friends_questions | share_item |
| | user_questions | friends_relationship_details | sms |
| | user_relationship_details | friends_relationships | status_update |
| | user_relationships | friends_religion_politics | video_upload |
| | user_religion_politics | friends_status | xmpp_login |
| | user_status | friends_subscriptions | |
| | user_videos | friends_website | |
| | user_website | friends_work_history | |
| | user_work_history | | |

---

[13] Iraklis Symeonidis, et al., "Collateral damage of Facebook Apps", https://eprint.iacr.org/2015/456.pdf.
[14] Id.

Case 3:18-cv-02843-MEJ   Document 1-1   Filed 04/16/18   Page 51 of 224

**The scope of the misappropriation of user data facilitated by Facebook is not yet known**

39.     An example of the cavalier attitude Facebook has demonstrated towards its users' data comes from the social game "Cow Clicker," created for the Facebook platform in 2010. Annoyed by Farmville and similar apps, the developer wrote the whole game in three days, describing the process as "just a strange man making a strange game on a lark."[15]

40.     According to the developer, "if you played Cow Clicker, even just once, I got enough of your personal data that, for years, I could have assembled a reasonably sophisticated profile of your interests and behavior."[16]

41.     Apps were given access to data such as your true Facebook ID, which could be used to track your profile indefinitely, and your networks such as your work and school.

42.     Cow Clicker never requested any of this data; the developer noticed that it was just being sent to him and he decided to store it. Facebook asked developers not to store more data than necessary. Facebook never inquired about where the data was going or what was actually necessary. Many apps have saved user data; in some cases, going back years. Further, Facebook does not typically contact developers to inquire about what data they possess.

43.     Jason Keobler, a writer for Motherboard aptly described the problem: "If your data has already been taken, Facebook has no mechanism and no power to make people delete it. If your data was taken it has very likely been sold, laundered, and put back into Facebook."[17]

---

[15] Jason Tanz, "The Curse of Cow Clicker: How a Cheeky Satire Became a Videogame Hit" WIRED (2011), https://www.wired.com/2011/12/ff_cowclicker.
[16] Bogost, *supra* note 2.
[17] *Id.*

**Congress demands answers from Facebook as Facebook tries to save face**

44.     Mark Zuckerberg, Facebook's founder and CEO, testified before Congress to answer for this breach the same week this Complaint was filed.[18] He acknowledged that his company had "responsibility" that it had shirked, and emphatically stated the users, not Facebook, were the victims in this.

45.     Further, Mark Zuckerberg acknowledges in his opening remarks that Facebook owes a duty to do more and protect their customers, stating:

> It's not enough to just connect people, we have to make sure those connections are positive. It's not enough to just give people a voice, we have to make sure people aren't using it to hurt people or spread misinformation. It's not enough to give people control of their information, we have to make sure developers they've given it to are protecting it too. Across the board, we have a responsibility to not just build tools, but to make sure those tools are used for good.[19]

46.     During his testimony in front of Congress, Mark Zuckerberg said that he believed that "we rolled out this developer platform and that we explained to people how it worked and they did consent to it."[20] However, earlier in the hearing, he stated that he thought most users did not read and did not understand their term of service.[21] Further, if any disclosures were provided at all they were buried deep within the terms of service, while Facebook knew that their users were not likely to read it.

47.     Facebook further tries to distance itself from the companies operating on its platform and paints Cambridge Analytica as a bad apple. However, it is clear, as evidenced

---

[18] Sara Salinas, "Congress Releases Mark Zuckerberg's Prepared Testimony Ahead Of Wednesday's Hearing," CNBC (2018), https://www.cnbc.com/2018/04/09/congress-released-mark-zuckerbergs-prepared-testimony-ahead-of-wednesdays-hearing.html.
[19] Sara Salinas, "Congress Releases Mark Zuckerberg's Prepared Testimony Ahead of Wednesday's hearing," CNBC (2018), https://www.cnbc.com/2018/04/09/congress-released-mark-zuckerbergs-prepared-testimony-ahead-of-wednesdays-hearing.html.
[20] Rob Price, "LIVE: Facebook CEO Mark Zuckerberg testifies to Congress about Cambridge Analytica and Russia," BUSINESS INSIDER (Apr. 10, 2018, 1:32 p.m.), http://www.businessinsider.com/mark-zuckerberg-testifies-to-congress-watch-live-facebook-2018-4#450-pm-et-recap-10; Sheera Frenkel and Linda Qiu, "Fact Check: What Mark Zuckerberg Said About Facebook, Privacy and Russia," THE NEW YORK TIMES (Apr. 10, 2018), https://mobile.nytimes.com/2018/04/10/technology/zuckerberg-elections-russia-data-privacy.html.
[21] Frenkel & Qui, *supra* note 20.

CLASS ACTION COMPLAINT

by the Cow Clicker application and Cubeyou's actions, that this problem is not isolated. Facebook allowed nearly a decade's long raid on its users' data with no oversight or user notifications.

48.    Facebook users will never be able to get back the information they have lost. As mentioned above, once the information has been taken Facebook has no way to get it back. Users will continue to worry about how their information has been used or misused. They will be more at risk for identity theft now, as their profiles contain a treasure trove of personal information, including information that can be used answer security questions.

**CLASS ACTION ALLEGATIONS**

49.    Plaintiff brings this case on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

**Nationwide Class**

All U.S. residents whose Facebook data was accessed by and/or transmitted to a third party app developer without their consent.

50.    Plaintiff also brings claims on behalf of the following subclass:

**California Class**

All California residents whose Facebook data was accessed by and/or transmitted to a third party app developer without their consent.

51.    Except where expressly distinguished, the Nationwide Class and California Class are collectively referred to as the "Class." Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

52.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same

claims.

53.     <u>Numerosity.</u>  The members of the Class are so numerous that joinder of all Class members would be impracticable. Class members number in the tens of millions based on current public information.

54.     <u>Commonality and Predominance.</u> Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law and fact include:

a.) Whether Facebook violated the Stored Communications Act by knowingly divulging Plaintiff's and Class members' Facebook communications to third parties;

b.) Whether Facebook's disclosure of Plaintiff's and the other Class members' Facebook data constituted a violation of their right to privacy;

c.) Whether Facebook failed to use reasonable care and commercially reasonable methods to secure and safeguard Plaintiff's and Class members' Facebook data;

d.)  Whether Facebook properly implemented its purported security measures to protect Plaintiff's and Class members' Facebook data from unauthorized capture, dissemination, and misuse;

e.) Whether Facebook violated Plaintiff's and Class members' right to privacy under the California Constitution;

f.) Whether Facebook violated the Invasion of Privacy Act by intercepting, accessing, and acquiring Plaintiff's and Class members' location and movement information without authorization; and

g.) Whether Plaintiff and Class members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

55.     Facebook engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate in this action.

56.     <u>Typicality.</u> Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured

1   through Facebook's uniform misconduct described above. Further, there are no defenses

2   available to Facebook that are unique to Plaintiff.

3         57.    **Adequacy of Representation.** Plaintiff is an adequate Class representatives

4   because her interests do not conflict with the interests of the other Class members she seeks

5   to represent, she has retained counsel competent and experienced in complex class action

6   litigation, and Plaintiff will prosecute this action vigorously. The Class's interests will be

7   fairly and adequately protected by Plaintiff and her counsel.

8         58.    **Superiority.** A class action is superior to any other available means for the

9   fair and efficient adjudication of this controversy, and no unusual difficulties are likely to

10  be encountered in the management of this class action. The damages or other financial

11  detriment suffered by Plaintiff and Class members are relatively small compared to the

12  burden and expense that would be required to individually litigate claims against

13  Facebook, so it would be impracticable for Class members to individually seek redress for

14  Facebook's wrongful conduct. Even if Class members could afford individual litigation, the

15  court system could not. Individualized litigation creates a potential for inconsistent or

16  contradictory judgments, and increases the delay and expense to all parties and the court

17  system. By contrast, the class action device presents far fewer management difficulties and

18  provides the benefits of single adjudication, economy of scale, and comprehensive

19  supervision by a single court.

**FIRST CAUSE OF ACTION**

**Violation of Stored Communications Act**

**18 U.S.C. § 2702, *et seq.***

**(On behalf of the Nationwide Class)**

24        59.    Plaintiff realleges and incorporates by reference the allegations contained in

25  the paragraphs above as if fully set forth herein.

26        60.    Defendant Facebook is liable under the Stored Communications Act ("SCA")

27  (18 U.S.C. § 2702(a)) for unlawfully divulging the contents of Plaintiff's and Class members'

28

communications to third parties.

61.     The SCA prohibits a "person or entity providing an electronic communication service to the public" from "knowingly divulging to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a).

62.     Facebook is a "person" within the meaning of the SCA.[22] It provides an "electronic communication service" as that term is defined in the code.[23] The user information stored by Facebook and compromised by Cambridge Analytica through the *This Is Your Digital Life* app and by other app developers is encompassed within the definition of "electronic storage" under the SCA.

63.     Facebook's transmission of user data to Cambridge Analytica, Cubeyou, Aggregate IQ, and other app developers exceeded any authorization by Plaintiff or Class members. Facebook was aware it divulged these communications as evidenced by its acknowledgment of the 2015 breach by Cambridge Analytica in response to questioning from Senator Ted Cruz. After Facebook had knowledge of the 2015 breach, it failed to ban Cambridge Analytica, Aggregate IQ or any entity from its platform, in violation of its own policy. Mark Zuckerberg stated before Congress that Facebook missed an earlier opportunity to ban Cambridge Analytica and related entities. Facebook did not ban Cambridge Analytica until after the story appeared in the Observer on March 17, 2018.

64.     As a result of Facebook's actions, Plaintiff and the Class are entitled to statutory damages of $1,000 per violation and preliminary and equitable relief from Facebook for violating Plaintiff's and Class members' privacy rights under the SCA, as well as costs and attorneys' fees pursuant to 18 U.S.C. § 2707.

---

[22] "Person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18. U.S.C. § 2510(6).
[23] "Electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications 18 U.S.C. § 2510.

1

## SECOND CAUSE OF ACTION

2

### Negligence

3

### (On behalf of the Nationwide Class)

4       65.     Plaintiff realleges and incorporates by reference the allegations contained in

5   the paragraphs above as if fully set forth herein.

6       66.     Facebook provided services to Plaintiff and the Class. By being entrusted by

7   Plaintiff and the Class to safeguard their user information, Facebook had a special

8   relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's

9   services and agreed to provide their information with the understanding that Facebook

10  would take appropriate measures to protect it and would inform Plaintiff and the Class of

11  any breaches or other security concerns that might call for action by Plaintiff and the Class.

12  But, Facebook did not. Instead, Facebook routinely provided user information to third

13  party developers without user consent. Facebook is morally culpable for its utter disregard

14  for Plaintiff's and the Class's right to privacy. Worse, there is no way to undo the harm

15  caused by Facebook's neglect—Plaintiff's and the Class's information cannot be clawed

16  back.

17      67.     Facebook owed a duty to Plaintiff and the other Class members to maintain

18  reasonable safeguards and procedures to protect their data and to monitor the status and

19  disposition of Plaintiff's and Class members' data. Facebook has acknowledged these

20  duties as described herein. Facebook has stated that it has a responsibility to protect and

21  secure user data, and that users reasonably expect them to adequately safeguard their data.

22      68.     Facebook violated these duties and failed to reasonably safeguard Plaintiff's

23  and Class members' data. Facebook knowingly disclosed their information and

24  communications to third-party apps in massive quantities without their consent.

25      69.     Facebook's violation of its duty caused Plaintiff and the other Class members

26  actual harm and damages. Plaintiff's and the other Class members' actual damages include

27  but are not limited to: (i) an increased risk of identity theft and identity fraud; (ii) improper

28  disclosure of their private information, which is now in the hands of unknown app

developers; and (iii) the deprivation of the value of their personal information, for which there is a fair market value.

**THIRD CAUSE OF ACTION**

**Unfair and Unlawful Business Acts and Practices**

**Cal. Bus. & Prof. Code § 17200,** *et seq.*

**(On behalf of the Nationwide Class, or, in the alternative, the California Class)**

70.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

71.     Defendant's acts and practices, as alleged in this Complaint, constitute unfair and unlawful business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

72.     Facebook permitting companies to collect and distribute personal information from its users without their consent constitutes an unfair business act or practice.

73.     Facebook's conduct further constitutes "unfair" business acts and practices because the practices are "likely to cause substantial injury" to Plaintiff and Class members, which are not reasonably avoidable by Plaintiff and the Class and the injury is not outweighed by the practice's benefits to Plaintiff and the Class. Such conduct is ongoing and continues to this date.

74.     Facebook's acts, omissions, and misrepresentations as alleged herein also constitution a violation of the unlawful prong of the UCL as they failed to comport with a reasonable standard of care and public policy as reflected in statutes such as Cal. Pen Code § 637.7; California Civil Code § 1798.81(5)(b); the Stored Communications Act; and the California Customer Records Act.

75.     As a result of Defendant's unfair and unlawful business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## FOURTH CAUSE OF ACTION

### Violation of the California Customer Records Act

### Cal. Civ. Code § 1798.80, *et seq.*

### (On behalf of the California Class)

76. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

77. Plaintiff brings this cause of action on behalf of the California Class whose personal user information is maintained by Facebook and which was compromised.

78. "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b).

79. Facebook is a "business" within the meaning of Civil Code § 1798.80(a).

80. Plaintiff and members of the class are "individual[s]" within the meaning of the Civil Code § 1798.80(d). Pursuant to Civil Code § 1798.80(e), the user information is "personal information," which includes, but is not limited to, an individual's name, physical characteristics or description, address, telephone number, education, employment, employment history, and medical information.

81. The breach of the personal information of tens of millions of Facebook users constituted a "breach of the security system" of Facebook pursuant to Civil Code § 1798.82(g).

82. By failing to implement reasonable measures to protect its users' information, Facebook violated Civil Code § 1798.81.5.

83. In addition, by failing to promptly notify all affected California residents that their personal information had been acquired (or was reasonably believed to have been

acquired) by unauthorized persons, including Cambridge Analytica, among other companies, Facebook violated Civil Code § 1798.82. Facebook's failure to timely and adequately notify users of the breach leaves Class members vulnerable to continued misuse of their personal information and prevents Class members from taking adequate steps to protect their identities.

84.     Accordingly, Plaintiff requests that the Court enter an injunction requiring Facebook to implement and maintain reasonable security procedures to protect its users' personal information in compliance with the California Customer Records Act. Plaintiff requests that the Court require Facebook to identify and notify all members of the Class who have not yet been informed of the breach.

85.     As a result of Facebook's violations of California Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class have and will incur economic damages relating to time and money spend remedying the breach, such as monitoring their online presence to ensure that their identity has not been stolen or coopted for an illicit purpose.

86.     Plaintiff, for herself and on behalf of the members of the Class, seek all remedies available under California Civil Code § 1798.84, including, but not limited to damages suffered by members of the Class and equitable relief.

87.     Plaintiff, for herself and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure §1021.5 and Federal Rule of Civil Procedure 23.

**FIFTH CAUSE OF ACTION**

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 637.7, *et seq.***

**(On behalf of the California Class)**

88.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

89.     Defendants used in California an electronic tracking device to determine the location or movement of Plaintiff and the other Class members by intercepting, accessing,

and acquiring location data on Plaintiff and the other Class members' Facebook profiles without authorization or consent.

90.     Plaintiff and the other Class members' Facebook profiles contained certain location data, including check-ins and friends' location data.

91.     Plaintiff and the other Class members' smartphones and other computers contain electronic tracking devices. Location and movement information of Plaintiff and the other Class members was contained on their Facebook profiles and which was divulged by Facebook in violation of Cal. Penal Code § 637.7.

92.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and the other Class members are persons injured by Defendants' violation of § 637.7. Plaintiff and the other Class members are entitled to monetary damages in the amount of either $5,000 or three times the amount of actual damages, if any; and an injunction on Defendants' violations of § 637.7.

### SIXTH CAUSE OF ACTION

#### Violation of the Right to Privacy

#### Cal. Const., Art. I, Sec. I

#### (On behalf of the California Class)

93.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

94.     Plaintiff and Class members have a specific, legally protected interest in the expectations of privacy their Personal information.

95.     Facebook intentionally intruded upon Plaintiff's and Class members' seclusion and publicly disclosed private facts to unknown third parties without authorization or consent, as alleged herein.

96.     Facebook's invasion of privacy was highly offensive to a reasonable person. The sheer amount of information disclosed and the indiscriminate nature of the disclosure, as alleged herein, was highly offensive to a reasonable person. A reasonable person would be embarrassed and offended by the extent of the disclosure of such information to

1   unknown third parties.

2   97.    Plaintiff and the other Class members were harmed by Facebook's invasions

3   of privacy. As a result of Facebook's unlawful conduct, Plaintiff and the other Class

4   members suffered actual damages including, but not limited to: (i) an increased risk of

5   identity theft and identity fraud; (ii) improper disclosure of their private information,

6   which is now in the hands of unknown app developers; and (iii) the deprivation of the

7   value of their personal information, for which there is a fair market value.

8   98.    Plaintiff and the other Class members are entitled to actual damages and

9   nominal damages in an amount to be determined at trial.

10   <u>SEVENTH CAUSE OF ACTION</u>

11   **Unjust Enrichment**

12   **(On behalf of the California Class)**

13   99.    Plaintiff realleges and incorporates by reference the allegations contained in

14   the paragraphs above as if fully set forth herein.

15   100.    As a direct, proximate, and foreseeable result of Facebook's acts and

16   otherwise wrongful conduct, Plaintiff and Class Members suffered damages. Facebook

17   profited and benefitted from the unjust use of Plaintiff's and Class members' personal

18   information, which caused Plaintiff and Class members to incur losses and damages.

19   101.    Facebook has voluntarily accepted and retained these profits and benefits,

20   derived from its users' information, including Plaintiff and Class members, with full

21   knowledge and awareness that retention of such profits and benefits is wrong and

22   unlawful.

23   102.    By virtue of the conscious wrongdoing alleged in this Complaint, Facebook

24   has been unjustly enriched at the expense of Plaintiff and Class members, who are entitled

25   to, and hereby seek, the disgorgement and restitution of Facebook's wrongful profits,

26   revenue, and benefits, to the extent and in the amount, deemed appropriate by the Court,

27   and such other relief as the Court deems just and proper to remedy Facebook's unjust

28   enrichment.

103.    Unless successful on the other legal claims in this Complaint, Plaintiff and the Class have no adequate remedy at law.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

a.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b.    Ordering Facebook to pay actual damages to Plaintiff and the Class members;

c.    Ordering Facebook to pay statutory damages and nominal damages, as allowable by law to Plaintiff and the other members of the Classes;

d.    Ordering the following injunctive relief:

    i.    Enjoin Facebook from using any opt-out privacy settings (all data shared must be affirmatively consented to by the user);

    ii.    Facebook to implement and maintain reasonable security procedures to protect its users' personal information in compliance with the California Customer Records Act; and

    iii.    Facebook to provide corrective notice to all users explaining, in plain English, Facebook's data sharing practices;

e.    Ordering Facebook to pay attorneys' fees and litigation costs to Plaintiff;

f.    Ordering Facebook to pay both pre- and post-judgment interest on any amounts awarded; and

g.    Ordering such other and further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Dated:  April 12, 2018

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP


By:   /s/ Gayle M. Blatt
        GAYLE M. BLATT
        *gmb@cglaw.com*

Attorneys for Plaintiff