BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>FACEBOOK, INC., CONSUMER PRIVACY<br>USER PROFILE LITIGATION | MDL DOCKET NO. 2843 |

**PLAINTIFF DEBRA KOOSER AND MARGARET FRANKIEWICZ'S RESPONSE
IN SUPPORT OF THE MOTIONS FOR TRANSFER OF ACTIONS TO THE
NORTHERN DISTRICT OF CALIFORNIA AND FOR CONSOLIDATION
PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407, Debra Kooser and Margaret Frankiewicz ("Plaintiffs"), Plaintiffs in *Kooser et al. v. Facebook, Inc. et al*, No. 4:18-cv-02009-YGR (N.D. Cal.) ("*Kooser*"), submit this Response in Support of the Motion for Transfer to the Northern District of California, (Dkt. 1), to transfer the twenty-two currently filed consumer cases identified, as well as any tag-along cases subsequently filed, and in Opposition of the Motion and Requests to Transfer to Other Jurisdictions.

The *Kooser* case involves questions of fact, allegations and claims common to the other Pending Actions, all stemming from the massive unauthorized harvesting of Facebook user's personal information by Cambridge and used Facebook's software platform for Facebook and Cambridge's financial benefit. For the reasons set forth below, and set forth in the Motion for Transfer to the Northern District of California (Dkt. 1) and the responses in support of that motion, incorporated herein by reference, Plaintiffs support the transfer and consolidation of the Pending Actions and any subsequently filed related actions to the Northern District of California for coordinated pretrial proceedings.

## ARGUMENT

### I. BACKGROUND

Defendant Facebook allowed Cambridge Analytica LLC ("Cambridge") to use the Facebook platform to collect Facebook users' Personal Information, which Personal Information was owned by users. While this information was represented by Facebook to be protected as private, and used for only expressly disclosed and limited purposes, Defendants, without authorization, or by exceeding whatever limited authorization they or their agents received from the Facebook user, improperly collected the Personal Information of Plaintiffs and Class Members, acknowledged to be around 87 million Facebook users. Facebook knew this improper data aggregation was occurring and failed to stop it, and/or negligently and recklessly chose not to monitor the use of its platform to mine users' Personal Information. Plaintiffs brings these suits to protect their privacy interests and those of the Class Members.

### II. TRANSFER AND CONSOLIDATION OF THE PENDING ACTIONS PURSUANT TO 28 U.S.C. § 1407 IS APPROPRIATE

Transfer and consolidation of the Pending Actions and all tag-along actions for pretrial proceedings under 28 U.S.C. § 1407 is appropriate. Section 1407(a) permits transfer and consolidation or coordination of cases where: (1) the civil actions involve "one or more common questions of fact", (2) transfer will serve "the convenience of parties and witnesses", and (3) transfer "will promote the just and efficient conduct" of the civil actions. *See also In re: Long-Distance Telephone Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (describing requirements). Each of the requirements is met in the matter before the Panel.

28 U.S.C. § 1407 was enacted as a means of conserving judicial resources in situations

where multiple cases involving common questions of fact were filed in different districts. *See Royster v. Food Lion (In re: Food Lion)*, 73 F.3d 528, 531-32 (4th Cir. 1996). Two goals of 42 U.S.C. § 1407 are to promote efficiency and consistency. *See Illinois Municipal Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004). The statute was also meant to assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation and, without it, conflicting pretrial discovery demands for documents and witnesses might disrupt the functions of the federal courts. *See In re: Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006).

### A. The Pending Actions Present Common Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute does not require a complete identity or even a majority of common questions of fact to justify transfer. *See In re: Zyprexa Prods. Liab. Litig.*, 314 F.Supp.2d 1380, 1381 (J.P.M.L. 2004). Here, each of the Pending Actions involves a nucleus of similar factual allegations that will underpin discovery and focus the pretrial proceedings. A sampling of the common questions of fact include:

- Whether Facebook represented that it would safeguard Plaintiffs' and Class Members' Personal Information and not disclose it without consent;

- Whether Cambridge improperly obtained Plaintiffs' and Class members' Personal Information without authorization or in excess of any authorization;

- Whether Facebook was aware of Cambridge's improper collection of Plaintiffs' and Class Members' Personal Information;

- Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

3

- Whether Defendants breached a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

- Whether Class Members' Personal Information was obtained by Cambridge;

- Whether Plaintiffs and the Class Members suffered annoyance and interference in the use of their Personal Information;

- Whether Plaintiffs and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

- Whether Plaintiffs and the Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

Thus, the requirement under Section 1407 that the Related Cases present one or more common questions of fact is met in this matter. In addition, all of the Pending Actions rely upon similar legal theories of recovery. While not every cause of action pleaded is asserted in every Related Case, the lawsuits all share related underlying legal theories of liability. The presence of additional or differing legal theories is not significant when the actions still arise from a common factual core. *See In re: Oxycontin Antitrust Litig.*, 542 F.Supp.2d 1359, 1360 (J.P.M.L. 2008). Because numerous common issues of fact exist among the Pending Actions, the pending actions satisfy the first element of the transfer analysis under Section 1407.

### B. The Convenience of Parties and Significant Witnesses Is Facilitated by Transfer and Consolidation

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. § 1407. There are currently twenty-two Pending Actions. Absent transfer and consolidation, the parties to the Pending Actions may be subjected to duplicative discovery requests and inconsistent court orders pertaining to the pretrial proceedings. At present, all of the Pending

Actions are in their infancy, and if the cases were to continue to proceed separately, there would be substantial duplicative discovery because of the many overlapping issues of fact and law. Likewise, without transfer and consolidation, individual witnesses may be subject to multiple depositions, interviews, and other pretrial proceedings. *See, e.g., In re: Pilot Flying J Fuel Rebate Contract Litig.*, 11 F.Supp.3d 1351, 1352 (J.P.M.L. 2014).

Absent transfer, the federal court system will be forced to administer these Pending Actions across venues in numerous states, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each plaintiff would be required to monitor and possibly participate in each of the other similar actions to ensure that Defendants do not provide inconsistent or misleading information.

### C. Transfer and Consolidation Promotes the Just and Efficient Conduct of These Pending Actions

There are multiple factors recognized when determining whether the just and efficient conduct of a litigation will be advanced by transfer, including the following: (1) avoidance of conflicting rulings in various cases; (2) prevention of duplication of discovery on common issues; (3) avoidance of conflicting and duplicative pretrial conferences; (4) advancing judicial economy; and (5) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F.Supp.2d 1369, 1369 (J.P.M.L. 2010).

Absent transfer and consolidation or coordination, there is a significant risk that litigation of the Pending Actions will be anything but just and efficient. In litigating more than 20 different cases involving the same factual and legal allegations, the parties face the prospect of district courts

5

entering inconsistent rulings affecting discovery, class certification, and the ultimate disposition of the disputes. Severe inefficiencies would likewise occur as the parties engage in duplicative discovery and motion practice. Transfer and consolidation or coordination is not only preferable, it is essential to the just and efficient litigation of the parties' disputes. Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. *See, generally, In re: Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F.Supp.2d at 1379, 1380 (J.P.M.L. 2013).

### D.   Alternatives to Centralization Are Not Practical Given the Impact of the Breach

In its March 30, 2018 Order, Dkt. 3, the court asked counsel to address what steps they have taken to pursue alternatives to centralization. Given the number of persons affected by the unauthorized taking of their personal and private information and the effect being felt across all 50 states and all federal districts, alternatives to centralization, including but not limited to engaging in informal coordination of discovery and scheduling is not practical. Seeking Section 1404 transfer of one or more of the subject cases is similarly not practical. The undersigned has considered but not pursued those alternatives to centralization before filing this Consolidated Response because of the very magnitude of this data breach involving 87 million people in this country alone, and the lack of real alternatives given its impact. The shear number of law firms and federal districts involved in the twenty-two cases filed make informal coordination of discovery and scheduling impractical.

### III.   ALL CASES IN THIS ACTION SHOULD BE TRANSFERRED AND COORDINATED IN THE NORTHERN DISTRICT OF CALIFORNIA

When selecting a forum for transfer, the Panel typically considers several factors, including:

(1) whether any defendant is located in the proposed transferee district, (2) whether significant discovery is likely to occur in the transferee district, (3) the geographic convenience of the proposed district for the parties and their counsel, (4) the capacity and resources of the transferee court, (5) the capability and suitability of the judge assigned to the case, and (6) the relative progress of all related pending litigation. *See In re: Nissan North America, Inc., Odometer Litig.*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008); David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* §§ 6:5-6:22 (2015).

### A. The Northern District of California Is The Proper Forum for the MDL Proceeding

Given its dominant nexus to the facts of these cases, the Northern District of California is the proper transferee forum. Interrelated multi-district litigation is regularly transferred to the district where a defendant is headquartered, largely due to the proximity of documents and witnesses relevant to the litigation. *See e.g. Dabon v. GlaxoSmithKline, Inc. (In re Avandia Mktg.)*, 528 F. Supp. 2d 1339, 1341 (J.P.M.L. 2007); *In re Schnuck Mkts., Inc.*, 978 F. Supp. 2d 1379, 1281 (J.P.M.L. 2013); *In re Home Depot, Inc.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014). Also relevant is where the events giving rise to the alleged claims primarily occurred. *In re Telexfree Sec Litig.*, 54 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014); *In re Franck's Lab, Inc.*, 959 F. Supp. 2d 1367, 1368 (J.P.M.L. 2013) (transferring litigation to the "locus of events and witnesses"). Multidistrict litigation should be transferred to the center of discovery, where key events occurred. *In re Air Crash Disaster at Las Vegas*, 336 F. Supp. 414, 415 (J.P.M.L. 1972) (despite an airplane crash occurring in Nevada, because the modification at issue was designed and installed in Texas, the Texas district was the proper venue as the focus of discovery would be there). The Northern

District of California is where the critical events giving rise to the alleged claims occurred, and will be at the center of discovery in these cases.

### B. The Relevant Facts and Associated Discovery Support That The Northern District of California Is The Proper Forum As Discovery Will Be Concentrated There

Facebook's headquarters are located in Menlo Park, California in the Northern District of California and were located there at the relevant time period of Cambridge's conduct. Previously Facebook was located in Palo Alto, California, also in the Northern District. All of Facebook's Management team, including Mark Zuckerberg, Sheryl Sandberg, Dave Wehner, Mike Schroepfer and Chris Cox reside in the Northern District. Other of Facebook's critical management is located and has been located in the Northern District. Facebook's platform development, platform monitoring and platform security were set up in the Northern District of California. Facebook's witnesses and documents will be located in the Northern District of California, as well as access to Facebook's computer system and analytics. Discovery, including expert discovery, will occur in this District, making it convenient to the judge assigned to oversee any discovery issues.

The relevant decisions and omissions occurred in the Northern District of California. The critical decision-making processes that allowed the harvesting of Plaintiffs' personal data by Cambridge occurred in Northern District of California, and the witnesses to those decisions are in California. Facebook's decisions to magnify the use of Facebook through the level of connections of users, which was the platform through which Cambridge data harvesting occurred, were made in California.

Facebook's Terms of Service are also a factor the court can consider in transfer to the Northern District of California. The Terms of Service state that users will resolve any claims in the

U.S. District Court for the Northern District of California, and that the laws of California govern claims against Facebook.[1]

As evidence of the importance of the locus of California to this matter, on April 9, 2018 Facebook began notifying all of the approximate 87 million uses that were affected by Cambridge's use of their personal information. Thus, the decision to use the Facebook platform to identify the members of the class occurred in California. The analysis to determine the Facebook users who were affected occurred in California and the decision on the substance of the notification occurred in California.

In addition, the defendants with ties to the United Kingdom support transfer to the Northern District of California. *See* CA and SCL Defendants' Response in Support of Plaintiffs' Motion to Transfer Related Cases. Dkt. 73. The decisions, omissions and relevant conduct outlined above occurred at the company's Menlo Park Headquarters, all factors reinforcing that the Northern District of California is the locus of this action, and where the majority of discovery will occur in this case.

### C.   A Plurality of the Cases Have Been Filed in the Northern District of California

Fourteen of the twenty-two consumer cases have been filed in the Northern District of California. As most of the cases are already pending in the Northern District, it supports transfer to the Northern District. *In re Treasury Secs. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015).

### D.   The Northern District of California Has The Experience and Judges Capable of Managing This Case

---

[1] https://www.facebook.com/legal/terms. Last accessed April 20, 2018.

9

The Northern District of California is well suited to manage this national litigation. The District has a long history of managing complex cases, and many of the judges, including Judge Chhabria to whom the *Kooser* case is assigned, have substantial experience. In addition, the Northern District has significant experience in data breach matters, including prior cases involving Facebook.[2]

### E. The Objections to Motions to Transfer to the Northern District of California Do Not Support Transfer to Another District

#### 1. *Lodowski* Plaintiffs' Motion to Transfer to the Southern District of Texas, Dkt. 5

*Lodowski* Plaintiffs' Motion does not support transfer to the Southern District of Texas. The motion identifies no factual nexus between the claims in these cases and Texas. No discovery is identified that will occur there. No key witnesses are located there. Given these considerations, the forum is wholly inconvenient for discovery, lay witnesses, experts and counsel. The Southern District of Texas' location well away from the operative facts underlying this case means that it is much less convenient for all parties. While the *Lodowski* Plaintiffs claim Facebook's presence there, it is clearly less significant than California. None of the key decision making with regard to Facebook's platform growth, security and monitoring occurred in Texas. No critical witnesses are there.

#### 2. *Redmond* Plaintiffs' Opposition and Request to Transfer to the District of Delaware

*Redmond* Plaintiffs' Opposition does not support transfer to the District of Delaware.

---

[2]*See e.g. In re Anthem Data Breach Litig.*, 15-MD-02617-LHK (N.D. Cal.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK (N.D. Cal.); *Campbell v. Facebook, Inc.*, No. 13-cv-05996 (N.D. Cal.)

10

*Redmond* Plaintiffs' primary basis for transfer to the District of Delaware is the State of Incorporation of certain Defendants. State of incorporation is of limited value if the Defendants' headquarters are not there, the locus of decision making is not there and witnesses and documents or electronic media are not there. Such is the case with the Delaware. The *Redmond* Plaintiffs do not identify witnesses, facts or documents located in Delaware. As a result, Delaware is not a central location to this case, as there is no evidence located there. When the parties have to travel to London to depose certain witnesses, it makes little difference that the U.S. participants board a plane in Delaware or California, particularly when the platform at issue was developed in California and key Facebook witnesses and data are located in California.

While the Court does consider the docket of the transferee court, that the Northern District of California currently has multiple multidistrict cases does not mean that it is overburdened. Rather, it points to the number of qualified jurists that can manage litigation of this type. As this not a patent matter, the District of Delaware's experience in that regard is not relevant.

### 3. *O'Hara* Plaintiffs' Opposition and Request to Transfer to the Central District of California

While correctly stating that California is th epicenter of these cases, the O'Hara Plaintiffs' Opposition does not support transfer to the Central District of California. Given the Northern District's substantial experience with data breach cases, transfer to the Central District is not supported. That there are more Plaintiffs' lawyers from Souther California should not be a consideration, or merely by population every multidistrict proceeding would be placed there.

### 4. *Comforte* Plaintiffs' Opposition and Request to Transfer to the Northern District of Illinois

The *Comforte* Plaintiffs' Response does not support transfer to the Northern District of

Illinois. The factor of centralized location, given included international travel, is not a consideration where there is no factual basis for travel to that District in the first instance. This argument would suggest a number of other centralized locations in this country that have equally limited factual nexus to the facts in this case. Speculation about other potential entities should not be supportive when given all the actions filed, non have identified a defendant with a location in the Northern District of Illinois. When a plethora of discovery will occur in the Northern District of California, there is no basis to place the litigation elsewhere unless a significant amount of discovery occurred there. Where that only other location is London, England, based on the development of the harvesting application by Cambridge Analytica, the marketing scheme, and the scheme to harvest the data occurred in England, the Northern District of Illinois does not provide that alternative locus for this litigation.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs Kooser and Frankiewicz respectfully request the consolidation and transfer of Pending Actions and any subsequent related actions to the Northern District of California for coordinated pretrial proceedings pursuant to 28. U.S.C. § 1407.

DATED: April 20, 2018

/s/ *Kevin S. Hannon*
Kevin S. Hannon
Colorado Bar No. 16015
**The Hannon Law Firm, LLC**
1641 Downing Street
Denver, Colorado 80218
Tel: (303) 861-8800
FAX: (303) 861-8855
khannon@hannonlaw.com

---

[3] https://www.theguardian.com/technology/2018/mar/17/facebook-cambridge-analytica-kogan-data-algorithm

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
Joshua H. Watson
California SBN 238058
Email: jwatson@justice4you.com
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

*Attorney for Plaintiffs Debra Kooser and*
*Margaret Frankiewicz and the Class*